UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

STEPHAN COWANS,

      Plaintiff,

    v.

CITY OF BOSTON; BOSTON POLICE
DEPARTMENT; DONALD L. DEVINE,
Deputy Superintendent of the Bureau of
Investigative Services of the Boston Police
Department, in his individual capacity;
ROBERT FOILB, Supervisor of the Boston
Police Department Identification Unit, in his
individual capacity; GREGORY D.
GALLAGHER, in his individual capacity;
DENNIS LEBLANC, in his individual capacity;
JOHN H. MCCARTHY, in his individual
capacity; PAUL T. MCDONOUGH, in his
individual capacity; ROSEMARY
MCLAUGHLIN, in her individual capacity;
HERBERT L. SPELLMAN, in his individual
capacity; and DOES 1–10;

      Defendants.

Case No.

MAGISTRATE JUDGE

RECEIPT #
AMOUNT $
SUMMONS ISSUED
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
BY DPTY. CLK.
DATE

## COMPLAINT AND JURY DEMAND

### INTRODUCTION

1

1.     On June 30, 1998, based largely on fingerprint evidence collected, analyzed and offered into evidence at trial by various members of the Boston Police Department, Stephan Cowans was convicted of numerous crimes (including armed assault with intent to murder Police Sergeant Gregory Gallagher) and sentenced to 35–50 years in a maximum security prison. On February 2, 2004, after spending over six and a half years in prison, Mr. Cowans was exonerated, his conviction was vacated and his indictment was dismissed on the ground of actual innocence based on DNA evidence that conclusively proved that Mr. Cowans had not committed any of the crimes of which he had been convicted. The District Attorney also revealed at that time that the fingerprint evidence that had been used to convict Mr. Cowans was false, and did not in fact implicate Mr. Cowans in any crimes.

2.     As a result of his wrongful conviction, Mr. Cowans was forced to endure the deprivation of his liberty, was forced to forgo the basic enjoyments of freedom, was incarcerated in a maximum security prison and was denied basic protections granted to all citizens. Moreover, less than six months prior to his exoneration, Ophelia Cowans, Mr. Cowans' mother, died of heart failure without ever seeing her son's innocence proved. As a result of his incarceration, Mr. Cowans was prevented from caring for and regularly visiting his mother during her protracted illness and even from attending her funeral.

3.     Following Mr. Cowans' exoneration and release from prison, the Boston Police Department shut down its Latent Print Unit, which had been responsible for the collection, analysis and presentation of the fingerprint evidence used to convict Mr. Cowans, and commissioned an assessment of that unit to determine the cause of the egregious and clear

2

misidentification of Mr. Cowans' fingerprints. The assessment was performed by four renowned experts in latent fingerprint identification, each with more than twenty-five years of experience in the field.

4.     This team of experts produced a report on March 8, 2004, which concluded (among other things) that: (1) Boston Police Department personnel were aware of or discovered the erroneous nature of the identification of Mr. Cowans' fingerprints prior to his conviction, but concealed that misidentification through trial and Mr. Cowans' subsequent conviction and sentencing; (2) the procedures used in identifying and analyzing the fingerprints in question at Mr. Cowans' trial were inappropriate and failed to follow basic, established professional standards; (3) the identification of prints from the crime scene as belonging to Mr. Cowans was clearly and plainly erroneous, and that any competent fingerprint expert would have recognized this error; and (4) the Boston Police had failed to use basic investigatory tools at their disposal which should have eliminated Mr. Cowans as a suspect based on the fingerprint evidence that was ultimately used to convict him.

5.     Mr. Cowans' wrongful arrest, conviction and incarceration were the result of unconstitutional and tortious acts by the defendant police officers, including members of the Identification Unit and the Homicide Division, and their respective supervisors.

6.     Acting under color of law, the defendants failed to properly investigate the crime in question; failed to follow reasonable fingerprinting procedures; made an unreasonable and erroneous identification of Mr. Cowans' fingerprint as that of the perpetrator; covered up this error at all levels of the investigation and allowed Mr. Cowans to proceed to trial; failed to

3

investigate other leads implicating a different defendant; and failed to take into account other exculpatory evidence.

7.     Beyond compensating Mr. Cowans for the six and a half years of his life that have been taken from him and for his continuing injuries, this action seeks to redress the unlawful municipal policies and practices pursuant to which the defendants, acting under color of law, violated his clearly established rights as guaranteed by the Fourth, Fifth, Sixth, Eighth, Ninth, and Fourteenth Amendments to the United States Constitution.

## JURISDICTION

8.     Title 28 U.S.C. § 1331 provides federal question jurisdiction, and 28 U.S.C. § 1367 provides supplemental jurisdiction over the state law claims.

## VENUE

9.     Pursuant to 28 U.S.C. § 1391(b), venue is proper in the District of Massachusetts, the judicial district in which the claims arose and in which, upon information and belief, all defendants reside or conduct business.

## PARTIES

10.     Plaintiff STEPHAN COWANS is, and at all times relevant herein was, an individual residing in Roxbury, Massachusetts.

11.     Defendant CITY OF BOSTON is a duly organized municipal corporation under the laws of the Commonwealth of Massachusetts.

12.     At all times relevant to this action, defendant BOSTON POLICE DEPARTMENT, including its Identification Unit, was a department within the City of Boston.

4

13.    Defendant DONALD L. DEVINE, at all times relevant to this action, was a member of the Boston Police Department and Deputy Superintendent of the Bureau of Investigative Services. He had supervisory responsibility over the Latent Print Unit that collected, analyzed and provided fingerprint evidence at trial used to convict Mr. Cowans. His actions alleged in this Complaint were taken under color of the laws of the Commonwealth of Massachusetts and the City of Boston. He is sued in his individual capacity.

14.    Defendant ROBERT FOILB, at all times relevant to this action, was a member of the Boston Police Department and was the sergeant in charge of the Latent Print Room. He had supervisory responsibility over the Latent Print Unit that collected, analyzed and provided fingerprint evidence at trial used to convict Mr. Cowans. His actions alleged in this Complaint were taken under color of the laws of the Commonwealth of Massachusetts and the City of Boston. He is sued in his individual capacity.

15.    Defendant GREGORY D. GALLAGHER, at all times relevant to this action, was a member of the Boston Police Department and was the sergeant detective who misidentified Cowans as the Perpetrator who shot and wounded him. He had the responsibility of providing truthful evidence and aiding in the investigation into the identity of the perpetrator of the shooting. His actions alleged in this Complaint were taken under color of the laws of the Commonwealth of Massachusetts and the City of Boston. He is sued in his individual capacity.

16.    Defendant DENNIS LEBLANC, at all times relevant to this action, was a member of the Boston Police Department working in the Identification Unit. He was directly involved in the collection, analysis and provision of evidence regarding the latent fingerprints collected at the

5

crime scene and used at trial to convict Mr. Cowans. His actions alleged in this Complaint were taken under color of the laws of the Commonwealth of Massachusetts and the City of Boston. He is sued in his individual capacity.

17.     Defendant JOHN H. MCCARTHY, at all times relevant to this action, was a member of the Boston Police Department working in the Homicide Division. He was one of the detectives with primary responsibility over the investigation and was directly involved in the collection, analysis and provision of evidence and testimony at trial used to convict Mr. Cowans. His actions alleged in this Complaint were taken under color of the laws of the Commonwealth of Massachusetts and the City of Boston. He is sued in his individual capacity.

18.     Defendant PAUL T. MCDONOUGH, at all times relevant to this action, was a member of the Boston Police Department working in the Homicide Division. He was one of the detectives with primary responsibility over the investigation and was directly involved in the collection, analysis and provision of evidence and testimony at trial used to convict Mr. Cowans. His actions alleged in this Complaint were taken under color of the laws of the Commonwealth of Massachusetts and the City of Boston. He is sued in his individual capacity.

19.     Defendant ROSEMARY MCLAUGHLIN, at all times relevant to this action, was a member of the Boston Police Department working in the Identification Unit. She was directly involved in the collection, analysis, provision and verification of evidence regarding the latent fingerprints collected at the crime scene and used to convict Mr. Cowans. Her actions alleged in this Complaint were taken under color of the laws of the Commonwealth of Massachusetts and the City of Boston. She is sued in her individual capacity.

6

20.     Defendant HERBERT L. SPELLMAN, at all times relevant to this action, was a

member of the Boston Police Department. He had supervisory responsibility over the Homicide

Division investigation and oversaw the detectives who collected, analyzed and provided evidence

and testimony at trial that was used to convict Mr. Cowans. His actions alleged in this

Complaint were taken under color of the laws of the Commonwealth of Massachusetts and the

City of Boston. He is sued in his individual capacity.

21.     Defendants DOES 1–10 are, at this time, unidentified members of the Boston Police

Department and/or other government departments or agencies who participated in the collection,

analysis, provision and verification of evidence regarding the latent fingerprints collected at the

crime scene and used to convict Mr. Cowans and/or participated in the investigation into the

Gallagher shooting and the collection, analysis and provision of testimony associated with that

investigation which was provided at trial and used to convict Mr. Cowans. Their actions alleged

in this Complaint were taken under color of the laws of the Commonwealth of Massachusetts,

the City of Boston and/or other government departments or agencies. They are sued in their

individual capacities.

## JURY TRIAL DEMAND

22.     Mr. Cowans hereby demands a trial by jury on all issues so triable.

## FACTS

### The Crime

23.     According to police reports, on the evening of May 30, 1997, Sergeant Gregory

Gallagher was on duty as a patrol supervisor for the Boston Police Department ("BPD").

7

24.     According to police reports, at approximately 5:00 p.m., while driving in the area of Columbus Avenue and School Street Place in Jamaica Plain, Gallagher observed a man (hereinafter "the Perpetrator") allegedly staring at two young girls sitting on the steps of a home.

25.     According to police reports, Gallagher got out of his police cruiser, at which time the Perpetrator walked away and Sergeant Gallagher followed. Ultimately, the Perpetrator ran and Gallagher gave chase.

26.     According to police reports, Gallagher followed the Perpetrator into the backyard of one of the surrounding homes and confronted him. As Gallagher attempted to frisk the Perpetrator for weapons, a struggle ensued. During the struggle, the baseball cap that the Perpetrator was wearing fell off. There was a pause in the struggle, during which time Gallagher pulled his radio and called for back-up. Gallagher and the Perpetrator then continued to struggle, and the Perpetrator wrestled Gallagher's firearm away from him and shot Gallagher two times, once in the back and once in the buttocks.

27.     According to police reports, during the confrontation, Benjamin Pitre, a resident of 7 School Street Place, the home where Gallagher and the Perpetrator struggled in the backyard, came to his window. Upon seeing Pitre, the Perpetrator fired several shots toward Pitre and his home.

28.     According to police reports, upon fleeing the scene, the Perpetrator forced his way into the home of Bonnie Lacy and her two children, Bryant McEwen and Jacqueline McEwen.

8

29.     According to police reports and eyewitness accounts, the Perpetrator remained in the Lacy home and in the same room with Ms. Lacy and her children for approximately ten minutes. During this time, Bonnie Lacy, Bryant McEwen and Jacqueline McEwen were in close proximity to the Perpetrator and had the best opportunity to observe the Perpetrator for purposes of identification.

30.     While in the Lacy home, the Perpetrator removed his sweatshirt and used it to wipe his fingerprints from Gallagher's firearm.

31.     According to police reports and eyewitness accounts, also while the Perpetrator was in the Lacy home, Bryant McEwen provided the Perpetrator with a clear glass mug filled with water. The Perpetrator drank from the glass mug and left it in the Lacy home.

32.     According to police reports, the Perpetrator then escaped from the Lacy home, leaving his sweatshirt and Gallagher's firearm behind. To date, the Perpetrator has not been identified.

33.     According to police reports and trial testimony, in the initial interviews following the shooting, the Perpetrator was described by at least Lacy, Bryant McEwen and Jacqueline McEwen as a black male, skinny, and in his late teens or early twenties. On the day of the shooting, Gallagher identified the Perpetrator as in this same age range. Additionally, Pitre identified the Perpetrator as a tall, skinny, black male.

34.     At the time of the shooting, Stephan Cowans was twenty-six years old, five feet nine inches tall and weighed 170 pounds, and thus did not match the description given by Lacy, her children and Pitre.

9

## The False Identification as Stephan Cowans' Fingerprint

35.     According to police reports, the Boston Police Department's Identification Unit gathered fingerprints from the crime scene. There were two latent fingerprints found on the glass mug from which the Perpetrator drank. Officer Dennis LeBlanc of the Latent Print Unit determined that the first latent print belonged to Bonnie Lacy. The second latent fingerprint was the only viable fingerprint found at the crime scene that allegedly belonged to the Perpetrator.

36.     According to police reports, Officers Rosemary McLaughlin, Dennis LeBlanc and Doe Defendants, working under the supervision of Sergeant Robert Foilb and Doe Defendants, collected the fingerprints at the crime scene, including those on the glass mug.

37.     According to police reports, Officer John F. Callahan collected elimination fingerprints from the members of the Lacy household. Elimination fingerprints are used to rule out the fingerprints of non-suspects who would have touched the objects in question.

38.     According to police reports and trial testimony, LeBlanc searched the Automated Fingerprint Identification System ("A.F.I.S.") fingerprint database for a match to the allegedly unknown second latent fingerprint on the glass mug. The search revealed no match to any prints in the A.F.I.S. database.

39.     At the time of this search, Mr. Cowans' fingerprints were in the A.F.I.S. database and had been in the A.F.I.S. system since at least 1990. As a result, had Mr. Cowans' fingerprints actually matched those taken from the mug retrieved from the Lacy residence, a match should have been identified by the A.F.I.S. database.

10

40.     According to trial testimony, in mid-June 1997, the name "Stephan Cowans" was
provided to the Latent Print Unit, including Officers LeBlanc and McLaughlin, as the name of a
possible suspect in the shooting of Sergeant Gallagher. Trial testimony and police reports
provide no indication of who provided Mr. Cowans' name to the Latent Print Unit. Cowans'
name was provided based on, at best, a third-party statement responding to a physical description
given by the investigating officers that did not match the description provided by Bonnie Lacy,
Bryant McEwen and Jacqueline McEwen, and also did not match the description initially
provided by Pitre.

41.     According to police reports, after Mr. Cowans had been suggested as a possible
suspect, Officer LeBlanc compared inked impression fingerprints of Stephan Cowans to that of
the second latent fingerprint on the glass mug. In spite of the fact that the fingerprints did not
match, Officer LeBlanc falsely, intentionally and/or recklessly indicated that the fingerprint on
the glass mug matched that of Stephan Cowans. To make this identification, LeBlanc asserted
that he had compared the latent print from the glass mug to a known inked impression fingerprint
of Mr. Cowans, one that had been taken during a prior arrest using black ink and a light-colored
card to record the impression. McLaughlin verified this false identification.

11

42.     According to police reports, Detectives John McCarthy, Paul McDonough, Doe

Defendants and Sergeant Detective Herbert L. Spellman of the Homicide Division conducted and

oversaw the entire investigation into the shooting of Sergeant Gallagher. Nevertheless, despite

their responsibilities, they failed to discover the intentionally and/or recklessly false evidence

introduced against Mr. Cowans, and/or failed to disclose such false evidence once discovered. In

addition, they failed to investigate properly, failed to follow leads and intentionally and/or

recklessly proceeded against Mr. Cowans despite evidence that exculpated him of the crimes in

question.

43.     As part of the investigation into the shooting of Sergeant Gallagher, Sergeant

Detective Kevin E. Waggett and others interviewed witnesses including Gallagher, Lacy and

Bryant McEwen.

44.     According to police reports, on June 17, 1997, Detectives McCarthy and McDonough

showed eyewitnesses, including Gallagher, Lacy, Bryant McEwen, Jacqueline McEwan and

Pitre, a photo array which contained the picture of Mr. Cowans. None of these witnesses

positively identified Mr. Cowans as the Perpetrator based on this photo array. At best, Gallagher

stated that, of the photos provided, No. 7 (Mr. Cowans) "most resemble[d]" the Perpetrator.

45.     According to police reports, during the course of the investigation, Detective Paul

Farrahar received a tip that an individual other than Stephan Cowans was responsible for the

shooting of Gallagher.

46.     On information and belief, this tip was not investigated.

12

47.     According to police reports, on July 2, 1997, Detective McCarthy oversaw the line-up in which Mr. Cowans was placed. Neither Bonnie Lacy, Bryant McEwen nor Jacqueline McEwan, who had each spent approximately ten minutes with the Perpetrator, identified anyone in the line-up as the Perpetrator. Gallagher falsely identified Mr. Cowans as the Perpetrator.

48.     LeBlanc testified during Mr. Cowans' trial that the second latent print on the glass mug belonged to Stephan Cowans.

49.     On information and belief, LeBlanc, McLaughlin, McCarthy, McDonough and others actively concealed the fact that the fingerprint identified as belonging to Stephan Cowans did not, in fact, belong to Mr. Cowans and presented false evidence to the contrary at trial.

50.     On June 30, 1998, Mr. Cowans was convicted of armed assault with intent to murder, home invasion, assault by means of a dangerous weapon, assault and battery of a police officer and unlicensed possession of a firearm, and was sentenced to 35–50 years in a maximum security prison.

51.     Mr. Cowans was incarcerated in Souza Baronowski Correctional Center, the Massachusetts Correctional Institution located in Shirley, Massachusetts. During that time, Mr. Cowans was infected with Hepatitis C as a result of his duties on bio-hazard clean-up.

## Mr. Cowans' Exoneration

52.     Knowing his innocence, Mr. Cowans worked diligently to learn the law and the fingerprint identification process. Mr. Cowans' mother assisted him in his fight and saw it as her mission to have her son freed from prison. Mr. Cowans contacted the New England Innocence Project, who helped him obtain legal representation.

13

53.     In August 2003, Mr. Cowans mother, Ophelia, was hospitalized for her chronic heart problems and lapsed into a coma shortly after she was admitted. Mr. Cowans was in custody at this time and was forced to choose whether to visit his mother's bedside or attend her funeral. Rather see his mother still alive, Mr. Cowans was permitted a mere five-minute visit. No other family members were allowed in the hospital during this time. In early September 2003, Ophelia Cowans died of heart failure. Mr. Cowans was prohibited from attending her funeral.

54.     In 2003, after several times refusing to relinquish the evidence that contained the Perpetrator's DNA, the Suffolk County District Attorney finally consented to the request of the lawyers associated with the New England Innocence Project for post-conviction DNA testing on the baseball cap, sweatshirt and glass mug found at the crime scene.

55.     DNA testing conducted in December 2003 and early 2004 revealed that the DNA on the Perpetrator's baseball cap and sweatshirt, as well as DNA from the glass mug that the Perpetrator drank from at the Lacy house *did not* match the DNA of Stephan Cowans, but instead all matched a single unidentifiable person. It was thus scientifically proven that Stephan Cowans did not shoot Gallagher and did not invade the Lacy home. Following the discovery of the DNA evidence, the District Attorney's office investigated the fingerprint that was identified as that of Mr. Cowans and found that the fingerprint actually belonged to Bryant McEwan and not Stephan Cowans.

56.     On January 23, 2004, Mr. Cowans was released from prison, just over four months after his mother had passed away. On February 2, 2004, Mr. Cowans' conviction was vacated

14

and the indictment dismissed on the ground of actual innocence. Mr. Cowans had spent nearly seven years in prison for crimes he did not commit.

**The Internal Investigation of the Boston Police Department Identification Unit**

57.     According to police reports, after Mr. Cowans' exoneration, James Hussey, acting Commissioner of the Boston Police Department, and William Casey, Deputy Superintendent of the Information Technology Division of the Boston Police Department, commissioned a complete technical and administrative assessment of the Latent Print Unit of the Boston Police Department to determine how such an egregious and clear misidentification could have occurred in the false identification of the second latent print. To that end, the Boston Police Department hired Ron Smith & Associates, Inc. to conduct an internal investigation.

58.     Ron Smith, President of Ron Smith & Associates, Inc. and a Certified Latent Print Examiner with over twenty-five years of experience, lead the investigation.

59.     On March 8, 2004, Mr. Smith presented a report of his findings (the "Smith Report") to the BPD.

60.     The Smith Report concluded that the testimony indicating that the fingerprints on the Lacys' mug matched Mr. Cowans' fingerprints was unquestionably false, and detailed significant irregularities in the testimony and processes used.

61.     According to the Smith Report, for example, latent prints on a glass surface are processed using a method involving superglue which reveals the print as white ridges that are then placed against a dark background. As is customary in the fingerprint identification profession, as well as within the BPD, when the print is photographed for enlargement, the color

15

is reversed so the print appears as black ridges on a light background. The color reversal allows the details of the latent fingerprint to be the same color as the known comparison print taken from an inked fingerprint card. This in turn allows the jury to see clearly the correlation of matching characteristics when pointed out by the fingerprint expert.

62.    According to the Smith Report, LeBlanc took Mr. Cowans' known print from an inked fingerprint card, which reflected black ridges on a light background. LeBlanc did not reverse the colors on the latent fingerprint taken from the glass mug — which revealed white ridges on a dark background — to match the coloring of the fingerprint card when analyzing and making enlargements of the Perpetrator's alleged print. Therefore, in the enlargements, the second latent print appeared as white on a dark background, while Cowans' comparison print was black on a light background. LeBlanc, however, did do the appropriate color reversal when identifying Bonnie Lacy's print as the first latent print present on the glass mug.

63.    Furthermore, according to the Smith Report, there were a set of handwritten instructions on the back of the enlargement of the second latent print explaining the sixteen points of comparison to make the matching identification between that print and the known print of Stephan Cowans. Mr. Smith noted that such instructions are unnecessary when a fingerprint expert testifies truthfully because the expert views the enlargements while testifying and comparison points should be obvious.

64.    The Smith Report concluded that there is "no doubt" that the identification of the second print on the glass mug as belonging to Mr. Cowans was clearly erroneous. Mr. Smith further concluded that there were multiple points of identification marked on the enlargement of

16

the inked fingerprint that in no way coincided with the same area on the latent print. "To a trained latent print expert, these differences [were] not difficult to see."

65.     According to the Smith Report, the BPD determined that the latent print originally identified as belonging to Mr. Cowans, in fact, belonged to Bryant McEwen, Bonnie Lacy's son who had retrieved the glass mug for the Perpetrator.

66.     According to the Smith Report, Bryant McEwen's inked elimination fingerprints, taken by Callahan, were known and available to LeBlanc prior to when he made his "identification" of Mr. Cowans' fingerprint, and were known and available to McLaughlin when she verified this identification.

67.     The Smith Report also concluded that LeBlanc's testimony at trial and the information in his report were in direct conflict with the fingerprint evidence available. By way of example, LeBlanc testified at trial that he could not use Stephan Cowans' A.F.I.S. fingerprints (the fingerprints stored in the national and Boston fingerprint databases) as the known fingerprint for comparison because it was a "poor" set of prints. The Smith Report concluded that Mr. Cowans' A.F.I.S prints were "very clear indeed, with no smudging or distortion of any kind." Additionally, LeBlanc did not retrieve Mr. Cowans' A.F.I.S. print until the day before he testified at Mr. Cowans' trial and only upon the request of the prosecutor.

68.     The Smith Report went on to conclude that LeBlanc understood the latent print process and should have been able to make a proper identification in this case.

69.     According to the Smith Report, the investigatory team that examined the Latent Print Unit consisted of four individuals who are experts in the field of latent identification: James E.

17

Bush of the Mississippi Crime Laboratory, Hilbert J. Mullins of the Palm Beach County Sheriff's

Office, Charles Richardson formerly of the Drug Enforcement Agency (retired) and Mr. Smith.

Each of these individuals had over twenty-five years of experience in the field of forensic

identification and served on the Latent Print Certification Board of the International Association

for Identification.

70.    After an exhaustive inquiry, this team of experts unanimously concluded that, at some

point after the erroneous identification of the latent print as that of Mr. Cowans, LeBlanc

discovered his misidentification and actively concealed it throughout the trial.

71.    According to the Smith Report, McLaughlin confirmed this erroneous identification.

Foilb oversaw the identification process.

## Damages

72.    As a direct result of the defendants' unconstitutional actions, Mr. Cowans sustained

the following injuries and damages: personal injuries; pain and suffering; severe mental anguish;

emotional distress; loss of income; infliction of physical illness; post-traumatic stress; Hepatitis

C; sleeplessness; inadequate medical care; humiliation, indignities and embarrassment;

degradation; injury to reputation; permanent loss of natural psychological development; and

restrictions on all forms of personal freedom, such as diet, sleep, personal contact, educational

opportunity, vocational opportunity, athletic opportunity, personal fulfillment, sexual activity,

family relations, reading, television, movies, travel, enjoyment and expression.

18

## CLAIMS

### Count I—42 U.S.C. § 1983
**Due Process Claims against Defendants LeBlanc, McLaughlin, Foilb, McCarthy, McDonough, Spellman, Gallagher and Doe Defendants for Failing to Disclose Evidence; Due Process Claims against Defendants LeBlanc, McLaughlin, Foilb, Gallagher and Doe Defendants for Fabricating Evidence; and Due Process Claims Against Defendants McCarthy, McDonough, Spellman and Doe Defendants for Failure to Investigate.**

73.    Plaintiff Cowans hereby incorporates fully all of the foregoing as if set forth herein and further alleges as follows:

**A.    Fourteenth Amendment Brady Claims**

74.    LeBlanc, McLaughlin, Foilb and Doe Defendants, who were members of the Latent Print Unit and/or other government departments or agencies and composed the team that was responsible for processing all prints found at the crime scene, failed to disclose to the prosecutor and the defense attorney material information that was favorable to Mr. Cowans. This undisclosed information included the fact that the second latent fingerprint taken from the water glass did not, in fact, belong to Mr. Cowans.

75.    On information and belief, McCarthy, McDonough, Spellman and Doe Defendants, who were members of the Homicide Division and/or other government departments or agencies that conducted and oversaw the investigation into Gallagher's shooting, also failed to disclose to the prosecutor material information that was favorable to Mr. Cowans. This undisclosed information included information that an anonymous tip named someone other than Mr. Cowans as the person who shot Gallagher.

76.     On information and belief, Gallagher failed to disclose material information that was favorable to Mr. Cowans. This undisclosed information included the fact that Gallagher falsely identified Mr. Cowans as the Perpetrator.

77.     Acting with deliberate indifference by withholding this material exculpatory and impeachment evidence prior to trial, LeBlanc, McLaughlin, Foilb, McCarthy, McDonough, Spellman, Gallagher and Doe Defendants violated Mr. Cowans' clearly established Fourteenth Amendment right to due process of law as interpreted by the United States Supreme Court in Brady v. Maryland and its progeny which entitles every citizen, when charged with a crime, not to have evidence favorable to him suppressed. The suppression of evidence in this case directly and proximately caused Mr. Cowans to be wrongfully convicted and to suffer the injuries and damages described above.

## B.      Fabricating False Inculpatory Evidence

78.     On information and belief, LeBlanc, McLaughlin, Foilb and Doe Defendants, who were members of the Latent Print Unit and/or other government departments or agencies and composed the team responsible for processing all prints found at the crime scene, fabricated the claim that the second latent fingerprint on the glass mug came from Mr. Cowans.

79.     On information and belief, Gallagher fabricated inculpatory evidence by knowingly or recklessly identifying Mr. Cowans as the Perpetrator, when, on information and belief, he knew or should have known that this was not the case.

80.     As a direct and proximate result of this fabrication of inculpatory evidence by LeBlanc, McLaughlin, Foilb, Gallagher and Doe Defendants (violating Mr. Cowans' clearly

20

established Fourteenth Amendment due process rights including the right to a fair trial and his Fourth Amendment right to be free from unreasonable seizures), Mr. Cowans was wrongfully convicted and suffered the injuries and damages described above.

## C.     Failure to Investigate

81.     McCarthy, McDonough, Spellman and Doe Defendants, members of the BPD Homicide Division and/or other government departments or agencies, who were charged with investigating Gallagher's shooting, deliberately and/or recklessly failed to investigate adequately, as any minimally competent officer would have, whether there was any truth to the anonymous tip regarding the Gallagher shooting. Moreover, they prematurely ended their investigation even though all eyewitnesses failed to identify Mr. Cowans in the initial photo array, and those witnesses who spent the most time with Mr. Cowans (Bonnie Lacy, Bryant McEwen and Jacqueline McEwan) failed to identify Cowans as the Perpetrator in the line-up. As a direct and proximate result of the failure to investigate by McCarthy, McDonough, Spellman and Doe Defendants, in violation of his clearly established Fourteenth Amendment rights, Mr. Cowans was wrongfully convicted and suffered the injuries and damages set forth above.

## Count II—42 U.S.C. § 1983
### Claims against Defendants LeBlanc, McLaughlin, Foilb, McCarthy, McDonough, Spellman, Gallagher and Doe Defendants for Malicious Prosecution

82.     Plaintiff Cowans hereby incorporates fully all of the foregoing as if set forth herein and further alleges as follows:

83.     When Mr. Cowans was arrested, the only inculpatory evidence was the fingerprint that had been falsely identified as belonging to Mr. Cowans. None of the witnesses shown the

21

photo array, which included Mr. Cowans, could identify with certainty any of the men in the array as the Perpetrator. The alleged fingerprint identification did not provide probable cause to arrest Mr. Cowans.

84.     Defendants LeBlanc, McLaughlin, McCarthy, McDonough, Spellman, Gallagher and Doe Defendants, all key players in the investigation into Gallagher's shooting and all state actors acting under the color of law, commenced or caused to be commenced a criminal prosecution, instituted with malice and without probable cause, against Mr. Cowans. They falsely identified the key piece of evidence as a fingerprint belonging to Mr. Cowans and covered up this misidentification. They then failed to disclose material exculpatory evidence including that the identification was false and the fingerprint attributed to Mr. Cowans instead actually belonged to Bryant McEwen (contrary to the fabricated evidence presented to the prosecution). Gallagher also falsely identified Mr. Cowans as the Perpetrator and the defendants covered up this misidentification. Furthermore, defendants failed to follow up on or disclose the identification of another individual as being the Perpetrator. The defendants acted to secure a conviction of Mr. Cowans regardless of the evidence. They ignored, failed to disclose, or misrepresented the evidence that indicated Mr. Cowans' innocence.

85.     The criminal action ultimately terminated in Mr. Cowans' favor on February 2, 2004, when his conviction was vacated on the ground of his actual innocence, due to the conclusive scientific evidence that the Perpetrator's DNA did not match that of Mr. Cowans.

22

86.     On March 8, 2004, Ron Smith & Associates, Inc. determined that the

identification of the second latent fingerprint on the water mug as belonging to Mr. Cowans was

a clear misidentification.

87.     The defendants' conduct violated Mr. Cowans' clearly established rights under the

Fourth Amendment and the procedural due process component of the Fourteenth Amendment.

88.     As a proximate result of the defendants' conduct, Mr. Cowans was arrested, was

prosecuted, was forced to endure an unfair trial and wrongful conviction, and was wrongly

imprisoned for nearly seven years. He suffered and continues to suffer the injuries and damages

set forth above.

## Count III—42 U.S.C. § 1983
## Monell Claim against the City of Boston and the Boston Police Department

89.     Plaintiff Cowans hereby incorporates fully all of the foregoing as if set forth

herein and further alleges as follows:

90.     By May 1997, the defendants City of Boston and the Boston Police Department

had a policy, custom, or practice of failing to properly discipline, supervise and train Boston

police officers including the individuals named in this case. The City of Boston and the BPD

failed to ensure that its police officers would conduct constitutionally adequate identification

procedures; obtain probable cause to ensure that suspects would not be falsely arrested and

maliciously prosecuted; disclose to prosecutors material information favorable to criminal

defendants; follow the duties imposed by Brady v. Maryland; and never fabricate inculpatory

evidence.

23

91.     These policies, customs and practices led Boston police officers to believe that

misconduct would be tolerated and that allegations of abuse of constitutional rights would not be

investigated. They made it foreseeable that officers would violate people's constitutional rights.

92.     The policies, customs and practices of the City of Boston and the Boston Police

Department described in this Complaint were the moving force behind Mr. Cowans' arrest,

prosecution and incarceration.

## Count IV—42 U.S.C. § 1983
## Supervisory Liability Claims against defendants Foilb, Spellman and Doe Defendants, Supervisors in the Boston Police Department

93.     Plaintiff Stephan Cowans hereby incorporates fully all of the foregoing as if set

forth herein and further alleges as follows:

94.     Defendant supervisors Foilb, supervisor of the Latent Print Unit, Donald L.

Devine, supervisor of the Bureau of Investigative Services (including the Latent Print Unit),

Herbert L. Spellman, supervisor of the Homicide Division investigation, and Doe Defendants

acting under color of law with deliberate indifference to the rights of criminal suspects, failed to

train and supervise adequately defendants LeBlanc, McLaughlin and Doe Defendants of the

Latent Print Unit, and McCarthy, McDonough and Doe Defendants of the Homicide Division. In

so doing, Foilb, Spellman, Devine and Doe Defendants tacitly acquiesced in, condoned, or

encouraged the individual defendants' engaging in unconstitutional misconduct, including the

clearly erroneous identification of Mr. Cowans as the source of the second latent fingerprint, the

fabrication of evidence, and the suppression of exculpatory material evidence from the

prosecutor.

24

95.     The failure of these defendants to supervise and train the named individual

defendants amounted to deliberate indifference, or intentional misconduct, which proximately

and directly caused Mr. Cowans to suffer all of the injuries and damages set forth above.

## Count V—42 U.S.C. § 1983
### Conspiracy Claims against defendants LeBlanc, McLaughlin, Foilb, McCarthy, McDonough, Spellman, Gallagher and Doe Defendants

96.     Plaintiff Stephan Cowans hereby incorporates fully all of the foregoing as if set

forth herein and further alleges as follows:

97.     Defendants LeBlanc, McLaughlin, Foilb, McCarthy, McDonough, Spellman,

Gallagher and Doe Defendants acted in consort with and between the Latent Print and Homicide

Units to deprive Mr. Cowans of his constitutional due process rights by failing to disclose

exculpatory evidence, fabricating inculpatory evidence and failing to properly investigate the

claims against Mr. Cowans.

98.     Upon information and belief, defendants LeBlanc, McLaughlin, Foilb, McCarthy,

McDonough, Spellman, Gallagher and Doe Defendants affirmatively agreed to act together to

conceal the misidentification of the second latent fingerprint as belonging to Mr. Cowans, in

failing to investigate other exculpatory leads and in misidentifying Mr. Cowans as the

Perpetrator. By doing so, defendants agreed to deprive Mr. Cowans of his clearly established

rights under the Fourth Amendment and the procedural due process component of the Fourteenth

Amendment.

99.     Upon information and belief, in furtherance of the conspiracy, defendants

undertook overt acts, including without limitation the following:

25

      A.     defendants agreed and acted intentionally to misidentify and conceal the misidentification of the second latent fingerprint as belonging to Mr. Cowans;

      B.     defendants agreed and acted intentionally to withhold and conceal information from the prosecutor so that it would not be disclosed to Mr. Cowans, including that another individual had been identified in an anonymous tip as being the Perpetrator;

      C.     defendants agreed and acted intentionally to misidentify Mr. Cowans in the line-up as the Perpetrator.

100.     Defendants' conspiracy directly caused the constitutional deprivations suffered by Mr. Cowans' false arrest, malicious prosecution, unfair trial, wrongful conviction and unlawful confinement, and all the other grievous permanent damages and injuries set forth above.

## Count VI—State Tort Law
## Claims against Defendants LeBlanc, McLaughlin, Foilb, McCarthy, McDonough, Spellman, Gallagher and Doe Defendants for Malicious Prosecution and Abuse of Process

101.     Plaintiff Cowans hereby incorporates fully all of the foregoing as if set forth herein and further alleges as follows:

102.     Defendants LeBlanc, McLaughlin, Foilb and Doe Defendants, who were in charge of the latent print identification, and McCarthy, McDonough, Spellman and Doe Defendants, who were in charge of the Homicide Division investigation, and Gallagher, who provided evidence regarding the identify of the shooter, all state actors acting under the color of law, commenced or caused to be commenced a criminal prosecution, instituted with malice and

26

without probable cause, against Mr. Cowans. The Latent Print Unit falsely identified the key piece of evidence as a fingerprint belonging to Mr. Cowans and defendants covered up this misidentification. Defendants then failed to disclose material exculpatory evidence including that the identification was false and the fingerprint in question belonged to Bryant McEwen (contrary to the fabricated evidence presented to the prosecution). Gallagher also falsely identified Mr. Cowans in a line-up as the Perpetrator and defendants covered up this misidentification. Furthermore, the Homicide Division failed to follow up on or disclose the identification of another individual as being the Perpetrator.

103.    The criminal action ultimately terminated in Mr. Cowans' favor on February 2, 2004 when his conviction was vacated on the ground of actual innocence, due to the conclusive scientific evidence that the Perpetrator's DNA did not match that of Mr. Cowans.

104.    On March 8, 2004, Ron Smith & Associates, Inc. determined that the identification of the second latent fingerprint on the glass mug as belonging to Mr. Cowans was clearly erroneous.

105.    As a proximate result of the defendants' conduct, Mr. Cowans was arrested, prosecuted, forced to endure an unfair trial and wrongful conviction, and wrongly imprisoned for nearly seven years. He suffered and continues to suffer the injuries and damages set forth above.

## Count VIII—State Tort Law
### Claims against Defendants LeBlanc, McLaughlin, Foilb, McCarthy, McDonough, Spellman, Gallagher and Doe Defendants for Negligent Infliction of Emotional Distress

106.    Plaintiff Cowans hereby incorporates fully all of the foregoing as if set forth herein and further alleges as follows:

107.     LeBlanc, McLaughlin, Foilb, McCarthy, McDonough, Spellman, Gallagher and Doe Defendants, as members of the team responsible for investigating Gallagher's shooting, had a duty to Mr. Cowans to properly investigate crimes put before them and refrain from fabricating evidence against Mr. Cowans.

108.     LeBlanc, McLaughlin, Foilb and Doe Defendants breached this duty by misidentifying the second latent print and, along with defendants McCarthy, McDonough, Spellman and Doe Defendants further breached this duty by concealing the misidentification.

109.     McCarthy, McDonough, Spellman and Doe Defendants further breached this duty by failing to follow up on leads indicating that another individual shot Gallagher.

110.     Gallagher breached this duty by falsely identifying Mr. Cowans as the Perpetrator and concealing the misidentification.

111.     This breach of duty inflicted great emotional distress on Mr. Cowans as a result of his imprisonment for nearly seven years with the knowledge that he had not committed the crime in question.

112.     Because of this emotional distress, Mr. Cowans has suffered numerous debilitating physical, mental and emotional conditions including sleeplessness, paranoia and post-traumatic stress.

113.     A reasonable person in Mr. Cowans' situation, having suffered wrongful arrest, prosecution and conviction would have experienced severe emotional distress as Mr. Cowans has.

28

## Count IX—State Tort Law
### Claims against Defendants LeBlanc, McLaughlin, Foilb, McCarthy, McDonough, Spellman, Gallagher and Doe Defendants for Intentional Infliction of Emotional Distress

114.     Plaintiff Cowans hereby incorporates fully all of the foregoing as if set forth herein and further alleges as follows:

115.     LeBlanc, McLaughlin, Foilb, McCarthy, McDonough, Spellman and Doe Defendants intended to inflict emotional distress or should have known that emotional distress would have resulted from the falsification of evidence against Mr. Cowans and the wrongful arrest, prosecution and conviction resulting from that falsification.

116.     Defendants' conduct in falsifying evidence, failing to reveal exculpatory evidence and failing to investigate was beyond all possible bounds of decency.

117.     Defendants' conduct inflicted great emotional distress on Mr. Cowans by causing him to be imprisoned for nearly seven years, knowing that he had not committed the crimes in question.

118.     Because of this emotional distress, Mr. Cowans has suffered numerous debilitating physical, mental and emotional conditions including sleeplessness, paranoia and post-traumatic stress.

119.     A reasonable person in Mr. Cowans' situation, having suffered wrongful arrest, prosecution and conviction would have experienced emotional distress and Mr. Cowans has.

29

## Count X—State Tort Law
### Claims against Defendants LeBlanc, McLaughlin, Foilb, McCarthy, McDonough, Spellman, Gallagher, Doe Defendants, the City of Boston and the Boston Police Department for False Imprisonment

120.     Plaintiff Cowans hereby incorporates fully all of the foregoing as if set forth

herein and further alleges as follows:

121.     Defendants LeBlanc, McLaughlin, Foilb, McCarthy, McDonough, Spellman,

Gallagher, Doe Defendants, the City of Boston and the BPD intentionally caused Mr. Cowans to

be wrongfully and unjustifiably imprisoned.

122.     As a proximate result of the defendants' conduct, Mr. Cowans was arrested,

prosecuted, forced to endure an unfair trial and wrongful conviction, and wrongly imprisoned for

nearly seven years.  He suffered the injuries and damages set forth above.

## Count XI—State Tort Law
### Claims against Defendant City of Boston and the Boston Police Department for Negligent Training and Supervision

123.     Plaintiff Cowans hereby incorporates fully all of the foregoing as if set forth

herein and further alleges as follows:

124.     Defendants City of Boston and the Boston Police Department had a duty to Mr.

Cowans to train and supervise its officers in proper law enforcement techniques.

125.     Defendants breached this duty by failing to train and supervise its officers

adequately with regard to conducting proper investigations of crime, disclosing exculpatory and

impeachment information to the prosecutor, and not fabricating evidence to support a

prosecution.

30

126.     Defendants' negligent training and supervision of defendants LeBlanc,

McLaughlin, Foilb, McCarthy, McDonough, Spellman, Gallagher and Doe Defendants caused

those individual defendants to fabricate evidence, fail to investigate properly the case before

them and engage in the other affirmative acts and omissions set forth above, and therefore was

the direct and proximate cause of Mr. Cowans' wrongful arrest, prosecution, conviction, false

imprisonment and wrongful conviction. All of these events and circumstances caused Mr.

Cowans to suffer the physical, emotional and pecuniary damages set forth above.

## CLAIMS FOR DAMAGES

127.     The defendants' actions deprived Mr. Cowans of his civil rights under the Fourth,

Fifth, Sixth, Eighth, Ninth and Fourteenth Amendments to the United States Constitution and

under the laws of the Commonwealth of Massachusetts.

128.     The defendants' unlawful, intentional, willful, purposeful, deliberately indifferent,

reckless, bad-faith and malicious acts, misdeeds and omissions caused Mr. Cowans to be falsely

arrested, maliciously prosecuted, unfairly tried, wrongfully convicted and wrongfully imprisoned

for nearly seven years, together with all of the other injuries and damages set forth above.

129.     All the alleged acts, misdeeds and omissions committed by the defendants

described herein for which liability is claimed were done intentionally, willfully, purposefully,

knowingly, unlawfully, maliciously, wantonly, recklessly, or with bad faith. The proscribed

conduct of the individual defendants meets all of the standards for imposition of punitive

damages.

31

**WHEREFORE,** Stephan Cowans respectfully prays as follows:

A.   That the Court enter judgment in favor of Mr. Cowans and against the defendants on all Counts of the Complaint;

B.   That the Court award compensatory damages to Mr. Cowans and against the defendants, jointly and severally, in an amount to be determined at trial;

C.   That the Court award punitive damages to Mr. Cowans and against the non-municipal defendants, jointly and severally, in an amount to be determined at trial, in order that such an award will deter similar proscribed conduct in the future;

D.   That the Court award to Mr. Cowans and against the defendants, jointly and severally, pre-judgment and post-judgment interest on all sums awarded him in this action;

E.   That the Court award to Mr. Cowans and against the defendants, jointly and severally, recovery of his costs concerning this action, including reasonable attorneys' fees pursuant to 42 U.S.C. § 1988; and

F.   That the Court grant Mr. Cowans any such other relief to which he may be entitled.

32

RESPECTFULLY SUBMITTED,

STEPHAN COWANS

By his attorneys,

Joseph Savage (BBO# 443030)
R. David Hosp (BBO# 634091)
Erin N. Jackson (BBO# 647375)
Sheryl A. Koval (BBO# 657795)
Goodwin | Procter LLP
Exchange Place
53 State Street
Boston, MA 02109
(617) 570-1000

Robert N. Feldman (BBO# 630734)
Melissa M. Longo (BBO# 647649)
Birnbaum & Godkin, LLP
280 Summer Street
Boston, MA 02210
(617) 307-6100

Dated: July 27, 2005

LIBA/1554399.3

33

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

1. Title of case (name of first party on each side only)___ Stephan Cowans v. City of Boston, et. al._____

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See local rule 40.1(a)(2)).

   ☐  I.  160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

   ☒  II.  195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730,                Also complete AO 120 or AO 121
            740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.                  for patent, trademark or copyright cases

   ☐  III.  110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
            315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
            380, 385, 450, 891.

   ☐  IV.  220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
            690, 810, 861-865, 870, 871, 875, 900.

   ☐  V.  150, 152, 153.

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court
   None._____

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?

                                                                    YES ☐       NO ☒

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest? (See 28 USC § 2403)

                                                                    YES ☐       NO ☒

   If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

                                                                    YES ☐       NO ☐

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

                                                                    YES ☐       NO ☒

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? – (See Local Rule 40.1(d)).

                                                                    YES ☒       NO ☐
   A.  If yes, in which division do all of the non-governmental parties reside?

       Eastern Division  ☒          Central Division  ☐          Western Division  ☐

   B.  If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?

       Eastern Division  ☐          Central Division  ☐          Western Division  ☐

8. If filing a Notice of Removal – are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)
                  See attachment.                                  YES ☒       NO ☐

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME_____ ___ Joseph Savage, Esq._____
ADDRESS_____ Goodwin Procter LLP, Exchange Place, Boston, MA 02109_____
TELEPHONE NO._____ (617)-570-1000_____
(Cover sheet local.wpd - 10/17/02)
LIBA/1568222.1

JS 44 (Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judical Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Stephan Cowans | City of Boston; Boston Police Department; Donald L. Devine; Robert Foilb; Gregory Gallagher; Dennis LeBlanc; John McCarthy; P. McDonough; Rosemary McLaughlin; and Herbert J. Spellman |

**(b)** County of Residence of First Listed Plaintiff____Suffolk____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASEES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Joseph Savage
Goodwin | Procter LLP
Exchange Place
Boston, MA 02109 (617) 307-6100

Attorneys (If Known)

---

**II. BASIS OF JURISDICTION** (Place and "X" in One Box Only)

☐ 1  U.S. Government Plaintiff

☒ 3  Federal Question
( U.S. Government Not a Party)

☐ 2  U.S. Government Defendant

☐ 4  Diversity
(Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**(Place an "X" in One Box for (For Diversity Cases Only) and One Box for Defendant)

|  | | DEF | | | | | DEF |
|---|---|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | | | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | | | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | | | ☐ 6 | ☐ 6 |

---

**IV. NATURE OF SUIT** (Place and "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury—Med. | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | Malpractice | ☐ 625 Drug Related Seizure of Property 21 USC | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 365 Personal Injury— | | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Over-payment & Enforce-ment of Judgment | ☐ 320 Assault, Libel & Slander | Product Liability | ☐ 630 Liquor Laws | ☐ 820 Copyrights | |
| | ☐ 368 Asbestos Personal Inury Product Liability | ☐ 640 R.R. & Truck | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | ☐ 650 Airline Regs. | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organization |
| | **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | | |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine | ☐ 370 Other Fraud | | | |
| | ☐ 345 Marine Product Liability | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpay-ment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal Property Damage | | | ☐ 490 Cable/Sat TV |
| | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | | ☐ 710 Fair Labor Standards Act | | ☐ 850 Securities/Commod-ities/Exchange |
| ☐ 190 Other Contract | | | ☐ 720 Labor/M.gmt. Relations | ☐ 861 HIA (13 95 ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Lia-bility | | | ☐ 730 Labor/Mgment. Reporting & Disclosure Act | ☐ 862 Black Lung (923) | |
| | | | ☐ 863 DIW C/DIW W (405 (g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAXSUITS** | |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentences | ☐ 791 Empl. Ret. Inc. Security Act | | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accom-modtions | **Habeas Corpus:** | | | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 900 Appeal of Fee Deter-mination |
| ☐ 245 Tort Product Liability | | ☐ 535 Death Penalty | | | |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities – Employment | ☐ 540 Mandamus & Other | | | Under Equal Access to Justice |
| | ☐ 446 Aer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☒ 440 Other Civil Rights | ☐ 535 Prison Condition | | | |

---

**V. ORIGIN** (PLACE AN "X" IN ONE BOX ONLY)

☒ 1  Original Proceeding

☐ 2  Removed from State Court

☐ 3  Remanded from Appellate Court

☐ 4  Reinstated or Reopened

☐ 5  Transferred from another district (specify)

☐ 6  Multidistrict Litigation

Appeal to District

☐ 7  Judge from Magistrate Judgment

---

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which  you are filing (Do not cite jurisdictional statutes unless diversity):
42 U.S.C. § 1983

Brief description of cause:   See attached sheet

---

**VII. REQUESTED IN COMPLAINT**

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

**DEMAND$**

CHECK YES only if demanded in complaint
JURY DEMAND:   ☒ Yes   ☐ No

---

**VIII. RELATED CASE(S) IF ANY**

(See instructions):

JUDGE

DOCKET NUMBER

DATE  7/27/05

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT #_____  AMOUNT_____  APPLYING IFP_____  JUDGE_____  MAG. JUDGE_____

## **Attachment**

Plaintiff Stephan Cowans ("Cowans") brings this action against defendants for, among other things: (i) violations of Cowans' civil and constitutional rights; (ii) malicious prosecution and abuse of process; (iii) negligent infliction of emotional distress; (iv) intentional infliction of emotional distress; and (v) false imprisonment. For his complaint, Cowans seeks compensatory and punitive damages, interest on all sums awarded Cowans, attorneys' fees, costs of bringing this action, and such other relief to which he may be entitled.