**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| STEPHAN COWANS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No: 05-11574 (RGS) |
| ) | |
| CITY OF BOSTON; BOSTON POLICE ) | |
| DEPARTMENT; DONALD L. DEVINE, Deputy ) | |
| Superintendent of the Bureau of Investigative ) | |
| Services of the Boston Police Department, in his ) | |
| individual capacity; ROBERT FOILB, Supervisor ) | |
| of the Boston Police Department Identification ) | |
| Unit, in his individual capacity; GREGORY D. ) | |
| GALLAGHER, in his individual capacity; DENNIS ) | |
| LEBLANC, in his individual capacity; JOHN H. ) | |
| MCCARTHY, in his individual capacity; PAUL T. ) | |
| MCDONOUGH, in his individual capacity; ) | |
| ROSEMARY MCLAUGHLIN, in her individual ) | |
| capacity; HERBERT L. SPELLMAN, in his ) | |
| individual capacity; and DOES 1–10; ) | |
| ) | |
| Defendants. ) | |
| ) | |

## PLAINTIFF'S MOTION TO COMPEL DOCUMENTS CONTAINING MEDICAL INFORMATION OF DEFENDANT DENNIS LEBLANC

Plaintiff Stephan Cowans ("Mr. Cowans") asks this Court to compel defendants the City of Boston ("the City") and Dennis LeBlanc ("Officer LeBlanc) to produce to Mr. Cowans documents directly bearing on his claims in this case that were withheld by the City on the basis of "personal and private medical information." Because Officer LeBlanc's medical records relating to his alcohol problem and arrest are relevant to Mr. Cowans § 1983 claims against both the City and Officer LeBlanc and because there is no physician-patient privilege recognized under federal or Massachusetts law, Mr. Cowans asks that this Court compel the production of these documents.

## <u>PRELIMINARY STATEMENT</u>

Mr. Cowans sued the City and Officer LeBlanc, among others, for his wrongful conviction based on a fraudulent fingerprint identification. In 1998, Mr. Cowans was wrongfully convicted of shooting Boston Police Department ("BPD") Sergeant Gregory Gallagher. The primary evidence against Mr. Cowans was a fingerprint allegedly left behind at the scene of the crime by the perpetrator. This fingerprint was identified by Officer LeBlanc as belonging to Mr. Cowans. In 2004, when my Cowans was exonerated based on his actual innocence, which was determined by DNA testing, the BPD reviewed the fingerprint evidence. Based on this review, the BPD conclusively determined that the fingerprint found at the scene did not match that of Mr. Cowans. Independent fingerprint experts hired by the City of Boston audited the Latent Print Unit of the BPD and the fingerprint identification that resulted in Mr. Cowans conviction. As a result of this audit, the experts retained determined that Officer LeBlanc's identification was clearly erroneous, known to be erroneous and this error was intentionally concealed throughout Mr. Cowans trial and conviction. Mr. Cowans spent nearly seven years in prison as a result of this fraudulent misidentification.

Furthermore, during the course of Mr. Cowans' investigation it has been discovered that Officer LeBlanc had a problem with alcohol while working in the fingerprint identification unit. Reports of co-workers indicate that Officer LeBlanc had shown up to work visibly intoxicated at times. Additionally, newspaper reports reveal that Officer LeBlanc was arrested at least once for public intoxication. (See News Article attached hereto as Exhibit A). Officer LeBlanc reportedly underwent treatment for his alcoholism. What remains unclear at this time is the extent of Officer LeBlanc's drinking problem and the years during which he was suffering from this problem.

## FACTUAL BACKGROUND

On October, 2005, Mr. Cowans served discovery requests on the City. The City provided documents responsive to his requests on January 12, 2006. Along with the documents provided, the City produced a privilege log of documents that were withheld from production and a "reason for non-disclosure" for each document. The privilege log is attached hereto as Exhibit B. As part of this log, the City indicated it was withholding documents related to Officer LeBlanc's medical treatment on the basis that it is "personal and private medical information." During a teleconference with the City, counsel for Mr. Cowans was informed that the City would produce these documents if Officer LeBlanc would agree to their production. In correspondence dated April 11, 2006, the City confirmed that it has no objection to this motion to compel, but understood that Officer LeBlanc may be asserting personal objections. (Letter of April 11, 2006 attached hereto as Exhibit C). During a teleconference with counsel for Officer LeBlanc, counsel for Mr. Cowans was informed that Officer LeBlanc would not consent to disclosure of these documents. This position was confirmed by counsel for Officer LeBlanc during a teleconference on April 7, 2006.

## ARGUMENT

Because Officer LeBlanc's medical records relating to his drinking problem and arrest are relevant to Mr. Cowans § 1983 claims against both the City and Officer LeBlanc and because there is no physician-patient privilege recognized in Massachusetts, this Court should compel the City and/or Officer LeBlanc to produce these records.

### I.    Officer LeBlanc's Medical Records Are Relevant to Mr. Cowans Case

Officer LeBlanc's medical records are directly relevant to Mr. Cowans case against Officer LeBlanc and the City of Boston. Mr. Cowans is entitled to discovery "regarding any

matter, not privileged, that is relevant to" her claims.  Fed. R. Civ. P. 26(b)(1).  Even if the evidence may not be admissible at trial, discovery must be had as long as it "appears reasonably calculated to lead to the discovery of admissible evidence."  *Id*.  "Relevancy is to be <u>broadly construed</u> at the discovery stage of litigation and a request for discovery should be considered relevant if there is <u>any possibility</u> that the information sought may be relevant to the subject matter of the action."  *Church of Scientology of Boston v. I.R.S.*, 138 F.R.D. 9, 10 (D. Mass. 1990) (emphasis added).

Officer LeBlanc's alcohol problems are directly relevant to Mr. Cowans §1983 claim because they relate to competency as a fingerprint examiner and his intent in wrongfully identifying the fingerprint of the perpetrator as belonging to Mr. Cowans.  Furthermore, the City's knowledge of and records regarding Officer LeBlanc's alcohol problems are directly relevant to the City's failure to supervise its Latent Print Unit and Mr. Cowan's *Monnell* claim against the City for such failures.  As such, Mr. Cowans is entitled to discovery of these materials.

## II.    There Is No Basis for Withholding Officer LeBlanc's Medical Records as There Is No Physician-Patient Privilege Recognized in Massachusetts.

There is no physician-patient privilege recognized by federal statute, Massachusetts statute or common law.  *See United States v. Zygarowski*, 724 F. Supp. 1052, 1060 (D. Mass. 1989) (citing *Whalen v. Roe*, 429 U.S. 589 (1977)); *Gretsky v. Basso*, 136 F. Supp. 640, 641 (D. Mass. 1955).  Because there is no physician-patient privilege protection available, the City and Officer LeBlanc have no basis for withholding these documents.  Relevant information cannot be withheld simply because it is "personal and private."  *Oliver v. Committee for Re-Election of President*, 66 F.R.D. 553, 557 (D. D.C. 1975) (holding that relevant information that does not "fall within the confines of privileged communications is discoverable, since the interest which

men have in keeping their affairs private is outweighed by society's interest in the search for truth through the judicial process"). Furthermore, defendant LeBlanc's records are already in possession of a third-party, the City. Any privilege that may have existed is deemed waived. *See In re Lupron Marketing and Sales Practices Litigation*, 313 F. Supp. 2d 8, 10 (D. Mass. 2004) (in attorney-client privilege context, waiver results when there is voluntary disclosure to a third-party); *Carrion v. City of New York*, 2002 U.S. Dist. LEXIS 23461, *6 (S.D.N.Y. Dec. 6, 2002) (voluntary disclosure of documents protected under a physician-patient privilege to third parties waived the privilege); *Farrow v. Allen*, 194 A.D.2d 40, 44 (N.Y. App. 1993) (holding that "once a patient puts the [medical] information into the hands of a third party who is completely unconnected to his or her treatment and who is not subject to any privilege, it can no longer be considered a confidence and the privilege must be deemed to have been waived as to that information"). Therefore, because there is no accepted basis for withholding Officer LeBlanc's medical records, these documents must be produced.

## **CONCLUSION**

Because there is no physician-patient privilege recognized in Massachusetts and the City and Officer have no basis for withholding Officer LeBlanc's medical records, Mr. Cowans respectfully requests that this Court order production of Officer LeBlanc's medical information documented in the City's privilege log.

RESPECTFULLY SUBMITTED,

STEPHAN COWANS

By his attorneys,


   /s/ Sheryl A. Koval
Joseph Savage (BBO# 443030)
R. David Hosp (BBO# 634091)
Sheryl A. Koval (BBO# 657795)
Goodwin | Procter LLP
Exchange Place
53 State Street
Boston, MA 02109
(617) 570-1000

Robert N. Feldman (BBO# 630734)
Melissa M. Longo (BBO# 647649)
Birnbaum & Godkin, LLP
280 Summer Street
Boston, MA 02210
(617) 307-6100

Dated: April 11, 2006


## CERTIFICATION PURSUANT TO
## LOCAL RULE 7.1(A)(2) AND FED. R. CIV. P. 37.1

I certify that I conferred with counsel for the defendants in a good faith attempt to resolve or narrow the issues presented by this motion through several teleconferences over the past month with counsel for the City and counsel for Officer LeBlanc. The City has indicated that it does not object to this motion to compel, but understands that Officer LeBlanc is asserting personal objections to disclosure.

I further certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on April 13, 2006.


/s/ Sheryl A. Koval
Sheryl A. Koval

LIBA/1688504.1

# EXHIBIT A

FOCUS - 9 of 24 DOCUMENTS

Copyright 2004 **Boston** Herald Inc.
The **Boston** Herald

May 7, 2004 Friday
ALL EDITIONS

**SECTION:** NEWS; Pg. 002

**LENGTH:** 1013 words

**HEADLINE:** SPECIAL REPORT: JUSTICE DENIED;
UNFIT COPS PUT IN KEY EVIDENCE UNIT;
 **Fingerprint** handlers were all thumbs

**BYLINE:** By Maggie Mulvihill and Franci Richardson

**BODY:**

The **Boston** Police Identification Unit has for decades been a **"dumping ground"** for troubled cops who were responsible for handling critical evidence used to put suspected rapists and killers behind bars, according to police sources and department records.

Some police officers deemed unfit for street duty were regularly exiled by former commissioners Paul F. Evans and Francis "Mickey" Roache to the eight-member unit, police sources said.

"It's the land of misfit toys," said one high-ranking officer who called the unit a **"dumping ground** for people the commissioner didn't like."

Some members of the unit are facing scrutiny in a criminal probe by Attorney General Tom Reilly. The unit has never been certified and has been manned by some officers who have a history of drug and alcohol abuse, theft and general incompetence, according to department officials.

For decades, the ID unit was housed in Back Bay station's unventilated basement. It's now on the first floor of police headquarters.

"It was in a cinderblock, windowless room and that is why no one wanted to work there. There wasn't any ventilation," said one police official, explaining how those sent to the ID unit viewed it as punishment duty.

"Evans used it. Roache used it. Historically it has been done that way," the official said.

The handling of **fingerprint** evidence – among other tasks carried out by those in the ID unit – is crucial to the successful prosecution of defendants. Questions about the ID unit surfaced during a Herald/Fox 25 investigation into the wrongful convictions of 22 innocent men over the last 22 years.

Among those who have been "reassigned" to the ID unit after embarrassing public incidents:

 – Sgt. Thomas R. Matheson who failed to report the seizure of $10,000 from a suspected drug dealer during a 1988 Dorchester raid.

Matheson, a 14-year-veteran of the drug unit, was suspended for two weeks without pay, stripped of his detective rating and assigned to the ID unit in 1991. He retired two years ago, a department spokeswoman said.

 – Sgt. Daniel Dovidio began serving a 45-day suspension in 2001 after an internal investigation showed he allowed officers to lie in their reports about the 1995 beating of Sgt. Michael Cox.

 – Sgt. Detective Leonard W. Marquardt, who for years was the direct supervisor in Area E-5 of two veteran detectives later imprisoned for stealing at least $250,000 in cash and other property from suspected drug dealers.

Walter F. Robinson Jr. and Kenneth Acerra both served three years in prison following their 1997 guilty pleas in U.S.

SPECIAL REPORT: JUSTICE DENIED; UNFIT COPS PUT IN KEY EVIDENCE UNIT; F

District Court in **Boston.**

After their pleas, Marquardt resigned from the department, a police spokeswoman confirmed.

In 1972, Marquardt was suspended for six months after charges that he beat a suspect who stabbed another officer were sustained.

In 1989, Marquardt and another detective were ordered by a federal jury to pay $25,000 in punitive damages to Michael Needham after finding the officers guilty of falsely arresting Needham in a 1979 confrontation in a Jamaica Plain tavern.

- Officer Thomas Traynor, who was sent to the ID unit from Area A-1 in December 1996 after a federal drug informant claimed he drank beer with Traynor and his partner in their cruiser outside a downtown after-hours police club just before he got into a fatal accident on Route 128. Both officers were on-duty.

The convicted drug dealer, Ramin Mojabi,pleaded guilty to motor vehicle homicide in February, 1998 and was sentenced to seven-to 12-years in prison for the death of 25-year-old Juan Chavez, killed on his way to work at 6:40 a.m.

A year before Evans transferred him to ID, Traynor beat the second of two drunk driving arrests, records show. He retired in 2000, a police spokeswoman said.

Other BPD employees who worked in the ID unit were fired for stealing, including Whitney "Wade" Williams, a civilian worker, who was fired in 1995 from his clerk's post after eight years with the ID unit.

That came after police discovered he used weapons, ammunition and BPD gear such as caps and windbreakers with the department logo to pull off armed robberies.

Technicians in the ID unit - including officer Dennis LeBlanc - are now part of a probe by Reilly's office into how they used another person's **fingerprint** to convict Stephan Cowans' of the shooting of a **Boston** cop in 1997.

LeBlanc, who was first assigned to the ID unit in 1985, was suspended for 10 days in 1992 after he was caught pantless and drunk while off-duty on the banks of the Charles River, police sources confirmed.

Cowans was freed from prison in January after 6 1/2 years behind bars following his wrongful conviction for shooting Sgt. Detective Gregory Gallagher in the buttocks with Gallagher's own gun.

LeBlanc, a key witness at trial, testified the **fingerprint** belonged to Cowans.

Newly appointed BPD Commissioner Kathleen O'Toole said she is revamping the entire ID unit, including moving to have it certified, and adding three officers and more supervisors. She asked Reilly to investigate the ID unit immediately after Cowans was exonerated.

"There have been some very competent people who have worked in that unit as well, so I'd hate to paint with a broad brush," said O'Toole.

"I can say this. On my watch, the ID section will not be a **dumping ground.** No unit in this department should be used as a **dumping ground.** If we have discipinary problems we need to address them head on and deal with them without transferring a problem from one unit to another."

According to police sources, officers deemed unfit for street duty were regularly exiled by former commissioners Paul F. Evans and Francis "Mickey" Roache to the eight-member **Boston** Police identification unit.

The **Boston** Herald/Fox 25 investigation found officers assigned there who:

Had a history of drug and alcohol abuse

Had a history of theft

Served a suspensions after internal police probe showed he allowed officers to lie on their reports

Was suspended for beating suspect who stabbed another cop

Was drinking with federal drug informant just before the man killed a driver in a DWI crash.

**GRAPHIC:** The Land of Misfit Toys

SPECIAL REPORT: JUSTICE DENIED; UNFIT COPS PUT IN KEY EVIDENCE UNIT; F

WASTED YEARS: Stephan Cowans spent more than six years in prison when another man's **fingerprints** were used to convict him in the shooting of a Hub cop. Herald file photo

**LOAD-DATE:** May 7, 2004

# EXHIBIT C

# MORGAN, BROWN & JOY LLP

### ATTORNEYS AT LAW
### 200 STATE STREET
### BOSTON, MASSACHUSETTS 02109-2605
### TELEPHONE (617) 523-6666
### FACSIMILE (617) 367-3125

MARY JO HARRIS

April 11, 2006

DIRECT DIAL (617) 788-5011
mharris@morganbrown.com

Sheryl A. Koval, Esq.
Goodwin Procter LLP
Exchange Place
Boston, MA 02109

> **Re:    Stephan Cowans v. City of Boston, et al.,**
> **U.S.D.C. Civil Action No. 05-11574-RGS**

Dear Ms. Koval:

It was a pleasure to meet you and your colleagues at the mediation before Judge Dein yesterday. I am sorry that the meeting was not more productive.

I write in response to your deposition notices, received on Friday, April 7, 2006. Your cover letter references a 30(b)(6) notice for the City, but I am not in receipt of same. Please send the notice and schedule so that I may begin the process of designating the appropriate person(s). I am in the process of contacting our clients and will advise of any scheduling conflicts as soon as possible. I am already scheduled in another case on May 17 (Superintendent Devine), but will hold off on providing additional dates until I have checked with his availability.

I also respond to your letter of April 7 with regard to the documents provided by the City on January 12, 2006. I will confer with the Police Department regarding the status of the investigation, and if production will not interfere with their investigatory efforts, I will produce the file in unredacted form immediately (subject, as you note, to the Confidentiality Agreement in place). If any claim of protection is made, I will provide the explicit basis for same.

Finally, I confirm that the City has no objection to your motion to compel the production of any medical files regarding Dennis LeBlanc that it may have in its possession, custody or control. I do understand from Mr. Anderson that LeBlanc may wish to assert personal objections.

Sincerely,

Mary Jo Harris

Mary Jo Harris

cc:    Thomas Donoghue, Esq.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-11574-RGS

STEPHAN COWANS,
    Plaintiff,

v.

CITY OF BOSTON et al.,
    Defendants.

## PRIVILEGE LOG OF DEFENDANTS CITY OF BOSTON, BOSTON POLICE DEPARTMENT, DONALD L. DEVINE, ROBERT FOILB, GREGORY D. GALLAGHER, JOHN H. MCCARTHY, PAUL T. MCDONOUGH AND HERBERT L. SPELLMAN

The following documents have not been produced:



| BATES NUMBERS | DOCUMENT DESCRIPTION | REASON FOR NON-DISCLOSURE |
|---|---|---|
| 7-12 | IAD Investigation/Finding and Confidential IAD Assessment | Mental impressions, conclusions, opinions or legal theories of a representative of the City, meriting protection from disclosure. Disclosure of these documents would impair the functioning of the Boston Police Department's Internal Affairs unit, since investigators would be reluctant to assess evidence against other police officers were their opinions to be revealed outside of the department. |
| 1301-1303 | CORI information | See M.G.L. c. 6 § 172 |
| 1306-1307 | CORI information | See M.G.L. c. 6 § 172 |
| 1479-1482 | CORI information | See M.G.L. c. 6 § 172 |
| 1489 | Social Search | Social Security Information |
| 1490-1492 | CORI information | See M.G.L. c. 6 § 172 |
| 1873-1874 | CORI information | See M.G.L. c. 6 § 172 |
| 2708-2709 | CORI information | See M.G.L. c. 6 § 172 |
| 2713 | CORI information | See M.G.L. c. 6 § 172 |
| 2726 | CORI information | See M.G.L. c. 6 § 172 |
| 2736 | CORI information | See M.G.L. c. 6 § 172 |
| 2738 | CORI information | See M.G.L. c. 6 § 172 |
| 2744 | CORI information | See M.G.L. c. 6 § 172 |
| 2748 | CORI information | See M.G.L. c. 6 § 172 |

1

| 2770-2771 | CORI information | See M.G.L. c. 6 § 172 |
|---|---|---|
| 2786 | CORI information | See M.G.L. c. 6 § 172 |
| 2803 | CORI information | See M.G.L. c. 6 § 172 |
| 2812-2884 | Jamaica Plain Warrant List/ CORI information | See M.G.L. c. 6 § 172 |
| 2984 | Cover page Dennis LeBlanc ("LeBlanc") Medical Records | Personal and Private Medical Record |
| 2985 | 2/22/79 Medical Exam record - LeBlanc | Personal and Private Medical Information |
| 2986 | Police Physical Exam record - LeBlanc | Personal and Private Medical Information |
| 2998 | 2/15/81 Medical Exam record - LeBlanc | Personal and Private Medical Information |
| 3021 | 12/24/97 Unprotected Exposure Trip Form - LeBlanc | Personal and Private Medical Information |
| 3022-3023 | 2/14/79 Medical Exam record - LeBlanc | Personal and Private Medical Information |
| 3025 | 8/19/93 Correspondence re pre-sentencing report – LeBlanc | Personal and Private Medical Information and CORI Information |
| 3026 | 10/27/93 Correspondence re medical records - LeBlanc | Personal and Private Medical Information |
| 3027 | 11/22/93 Correspondence re medical treatment - LeBlanc | Personal and Private Medical Information and CORI Information |
| 3028 | 11/12/39 Memo re Suspension of Dennis LeBlanc and Assignment to Administrative Duty | Confidential and Personal Information |
| 3029 | 7/1/94 Correspondence re LeBlanc's Confidential Agreement and medical treatment | Confidential and Personal Information |
| 3030-3036 | '92 -'93 Medical records - LeBlanc | Personal and Private Medical Records |
| 3037 | 7/1/94 Correspondence re LeBlanc's Confidential Agreement and medical treatment | Confidential and Medical Information |
| 3038 | 7/17/94 Medical record - LeBlanc | Personal and Private Medical Information |
| 3039-3044 | 7/28/94 Correspondence re LeBlanc's medical treatment | Personal and Private Medical Information |
| 3045-3053 | 8/19/93 Independent Pre-Sentence Report | Personal and Private Medical Records and Information and CORI Information |
| 3054 | 8/25/94 Memo re Confidential Settlement Agreement | Personal and Private Medical Records and Information and CORI Information |
| 3059-3106 | Personal and Private Medial Records - LeBlanc | Personal and Private Medial Information |
| 3107 | 10/27/93 Correspondence re LeBlanc's medical records and treatment | Personal and Private Medial Information |
| 3108-3109 | 10/29/93 Medical Records - LeBlanc | Personal and Private Medial Records of LeBlanc |
| 3110-3110 | 11/93 Correspondence re LeBlanc's medical treatment | Personal and Private Medial Information |
| 3112-3113 | 11/12/93 Memo re Suspension of Dennis LeBlanc and Assignment to Administrative Duty | Confidential and Personal Information |
| 3114 | 11/12/93 Correspondence re Confidential | Personal and Private Information |

| | Agreement | |
|---|---|---|
| 3115 | 7/1/94 Correspondence re LeBlanc's Confidential Agreement and medical treatment | Confidential and Medical Information |
| 3116-3119 | 11/4/93 Confidential Agreement | Personal and Private Medial Information |
| 3120-3126 | '92 -'93 Medical records - LeBlanc | Personal and Private Medical Information |
| 3127 | 7/1/94 Correspondence re LeBlanc's Confidential Agreement and medical treatment | Confidential and Medical Information |
| 3128 | 7/17/94 Medical record - LeBlanc | Personal and Private Medical Information |
| 3129-3134 | 7/28/94 Correspondence re LeBlanc's medical treatment | Personal and Private Medical Information |
| 3135-3143 | 8/19/93 Independent Pre-Sentence Report - LeBlanc | Personal and Private Medical Records and Information and CORI Information |
| 3144 | 8/25/94 Memo re Confidential Settlement Agreement | Personal and Private Medical Records and Information and CORI Information |
| 3148-3162, 3164, 3170, 3206, 3208 | Medical records - Rosemary McLaughlin | Personal and Private Medical Information |

DEFENDANTS CITY OF BOSTON,
BOSTON POLICE DEPARTMENT,
DONALD L. DEVINE, ROBERT FOILB,
GREGORY D. GALLAGHER, JOHN H.
MCCARTHY, PAUL T. MCDONOUGH,
HERBERT L. SPELLMAN,
Merita A. Hopkins
Corporation Counsel
By their attorneys,

Thomas R. Donohue - BBO# 643483
Stephen G. Cox  - BBO# 566943
Assistant Corporation Counsel
City of Boston Law Department
Room 615, City Hall
Boston, MA 02201
(617) 635-4039 – Donohue
(617) 635-4064  - Cox

## CERTIFICATE OF SERVICE

I, Thomas R. Donohue, hereby certify that on this date I served a copy of the foregoing document to the attorneys for all parties:

David Hosp
Goodwin Procter LLP
Exchange Place
53 State Street
Boston, MA  02109
rhosp@goodwinprocter.com

*By Hand*


Leonard Kesten
Brody, Hardoon, Perkins & Kesten
One Exeter Plaza
12th Floor
Boston MA 02116
lkesten@bhpklaw.com

*Via first class, postage prepaid, U.S. Mail*


Kenneth Anderson
Finneran, Byrne, Drechsler LLP
50 Redfield Street
Boston MA 02122
kanderson@fbdlegal.com

*Via first class, postage prepaid, U.S. Mail*


1/12/06                     Thomas R. Donohue

Date                        Thomas R. Donohue

4

# EXHIBIT B