## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STEPHAN COWANS,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF BOSTON; BOSTON POLICE DEPARTMENT; DONALD L. DEVINE, Deputy Superintendent of the Bureau of Investigative Services of the Boston Police Department, in his individual capacity; ROBERT FOILB, Supervisor of the Boston Police Department Identification Unit, in his individual capacity; GREGORY D. GALLAGHER, in his individual capacity; DENNIS LEBLANC, in his individual capacity; JOHN H. MCCARTHY, in his individual capacity; PAUL T. MCDONOUGH, in his individual capacity; ROSEMARY MCLAUGHLIN, in her individual capacity; HERBERT L. SPELLMAN, in his individual capacity; and DOES 1–10;<br><br>Defendants. | Civil Action No: 05-11574 (RGS) |

## PLAINTIFF'S MOTION TO HAVE PARAGRAPHS OF THE CITY OF BOSTON'S ANSWER DEEMED ADMITTED

Plaintiff Stephan Cowans ("Mr. Cowans") moves this Court to deem as admitted paragraphs 23-33, 35, 38-42, 44-45, 47-48, 57, and 60-71 of Defendant City of Boston and Boston Police Department's (the "City") Amended Answer to the Plaintiff's Complaint with Affirmative Defenses and Jury Demand (the "Answer"). Mr. Cowans also seeks costs, including attorneys' fees, associated with the filing of this Motion. In response to each of the allegations in the paragraphs listed above the City has stated the documents referenced in those allegations – police reports and reports created by its own expert – "speak for themselves." Stating that the records "speak for themselves" is not an acceptable answer under Fed. R. Civ. 8(b). This

response is yet another attempt by the City to side-step admitting allegations that it cannot in

good faith deny and are harmful to its defense. As such, the City has failed to live up to its

obligations to provide a good faith answer after reasonable inquiry and therefore paragraphs 23-

33, 35, 38-42, 44-45, 47-48, 51, and 60-71 of the Answer should be deemed admitted for

evidentiary and summary judgment purposes.[1]

## BACKGROUND

Mr. Cowans sued the City and individual police officers for his wrongful conviction

based on a fraudulent fingerprint identification. In 1998, Mr. Cowans was wrongfully convicted

of shooting Boston Police Department ("BPD") Sergeant Gregory Gallagher. The primary

evidence against Mr. Cowans was a fingerprint allegedly left behind at the scene of the crime by

the perpetrator. This fingerprint was identified by members of the Latent Print Unit of the BPD

as belonging to Mr. Cowans. In 2004, when Mr. Cowans was exonerated based on his actual

innocence, which was determined by DNA testing, the BPD reviewed the fingerprint evidence.

Based on this review, the BPD conclusively determined that the fingerprint found at the scene

did not match that of Mr. Cowans. Independent fingerprint experts hired by the City of Boston

audited the Latent Print Unit of the BPD and the fingerprint identification that resulted in Mr.

Cowans' conviction. As a result of this audit, those experts concluded that no competent

fingerprint examiner could have matched Mr. Cowans' fingerprints with those found at the

scene, that one of the Fingerprint Unit officers discovered the mistake prior to trial and may have

---

[1]     Additionally, the City's answer to paragraph 39, to which it states it without knowledge or information so as to
form a belief as to the truth of the allegations, should also be deemed admitted. The allegation relates to
whether Mr. Cowan's fingerprints were in the AFIS system at the time of his arrest. Such a response is
untenable in light of the fact that the allegations were based upon records within the control of the City and
provided to Mr. Cowans by the City and does not meet the good faith standards of Rule 8(b). *See, e.g.,
Harvey Aluminum, Inc. v. NLRB*, 335 F.2d 749, 758 (9th Cir. 1964); *American Photocopy Equipment Co. v.
Rovico, Inc.*, 359 F.2d 745, 746-47 (7th Cir. 1966).

deliberately concealed the mistake, and that the officers in the Unit were untrained and unsupervised. The reports that resulted from this investigation were provided to Mr. Cowans by the City.

As a result of the expert reports, the Latent Fingerprint Unit was closed in 2004 and remains closed today. Additionally, an internal affairs investigation was conducted and a grand jury was convened to assess the wrongdoing that had occurred.

## FACTS

Prior to Mr. Cowans filing his lawsuit in this action, the City provided documents in response to requests for information that were sent to the Attorney General and the BPD Commissioner Kathleen O'Toole. (See Public Records Act Request attached hereto as Exhibit A.) Based almost entirely on the information contained in those documents, Mr. Cowans filed this lawsuit on July 27, 2005 alleging violations of his civil rights under § 1983. (See Complaint, attached hereto as Exhibit B). The City filed its answer on September 22, 2005, after requesting and receiving two extensions for the time in which to file. (See Answer, attached hereto as Exhibit C).

Upon reviewing the City's Answer, counsel for Mr. Cowans sent a letter to counsel for the City stating that the Answer is deficient and requesting that it be supplemented to either admit or deny the allegations contained in fifty-four (54) paragraphs of the Answer, in which the City had stated that it was without knowledge or information sufficient to form a belief as to the truth of the allegation. (See Letter to Mr. Donahue dated October 21, 2005, attached as Exhibit D). The factual allegations of Mr. Cowans' Complaint comprise seventy-two (72) paragraphs. A brief summary of the allegations the City failed to admit is as follows:

- In the description of the Parties, the City stated it is without knowledge or information sufficient to form a belief as to the truth of allegations concerning the job

titles, duties and responsibilities of eight of its employees during the investigation of the shooting of Sergeant Gallagher in 1997 and the trial of Mr. Cowans for that crime. (Complaint, ¶ 13-20; Answer, ¶ 13-20).

- The City stated it is without knowledge or information sufficient to form a belief as to the truth of allegations concerning the circumstances surrounding the shooting of Sergeant Gallagher. (Complaint, ¶ 23-33; Answer, ¶ 23-33). These facts were taken directly from documents provided by the City to Mr. Cowans, including police reports and trial testimony. Furthermore, the City was responsible for the investigation into the shooting and Sergeant Gallagher is still an officer of the BPD.

- The City stated that it is without knowledge or information sufficient to form a belief as to the truth of allegations concerning the identification of the perpetrator's fingerprint as belonging to Mr. Cowans and that Mr. Cowans was determined by the BPD to be the individual who shot Sergeant Gallagher. (Complaint, ¶ 35-44,46-49; Answer, ¶ 35-44, 46-49). Again, these facts were taken directly from documents provided by the City to Mr. Cowans, including police reports and trial testimony. Furthermore, the City was responsible for the fingerprint identification and its officers testified regarding the identification during Mr. Cowans criminal trial. The City was also responsible for the Homicide Investigation, line-ups and photo arrays which were used in the investigation.

- The City stated that it is without knowledge or information sufficient to form a belief as to the truth of allegations concerning whether or not an anonymous tip was investigated during the course of the investigation into the shooting of Sergeant Gallagher. (Complaint, ¶ 45; Answer, ¶ 45). Even if the City was not immediately aware of the truth or falsity of this statement, all documents relating to the investigation and people involved in the investigation are in its control and any minor inquiry would reveal whether this allegation is true.

- The City stated that it is without knowledge or information sufficient to form a belief as to the truth of allegations concerning Mr. Cowans conviction and sentence. (Complaint, ¶ 50-51; Answer, ¶ 50-51). The City is responsible for the conviction of Mr. Cowans, and was present at his trial and sentencing and at his release.

- The City stated that it is without knowledge or information sufficient to form a belief as to the truth of allegations concerning the DNA testing that was done on the evidence gathered during the investigation into the shooting of Sergeant Gallagher. (Complaint, ¶ 54-56; Answer, ¶ 54-56). The City was in control of this evidence and provided it for DNA testing. The DNA testing results were provided to the City. Mr. Cowans was released by the City based on this evidence.

- The City stated that it is without knowledge or information sufficient to form a belief as to the truth of allegations concerning the audit conducted by the City and the BPD of the Latent Print Unit of the BPD. (Complaint, ¶ 57-71; Answer, ¶ 57-71). These facts are taken directly from the City's own expert, Ron Smith & Associates, that conducted the audit of the Latent Print Unit and provided his report to the City.

-4-

These reports were provided by the City to Mr. Cowans. The City <u>shut down the</u> <u>Latent Print Unit based on these reports.</u>

Counsel for the City responded via email on November 3, 2005 to the letter regarding these deficiencies. In that email, counsel for the City stated that they "agree that the City's answer should be amended." (See Email, attached hereto as Exhibit E). However, because the City stated it needed time to review its documents before amending its answer, the City stated it would amend its answer when it responded to Mr. Cowans' discovery. On January 12, 2006, the City produced documents to Mr. Cowans. Finally, after numerous requests, the City filed an amended answer on May 10, 2006 – six months after it had promised to do so. However, that "answer" is equally deficient. This time, instead of attempting to claim it is without knowledge or information for the above paragraphs, the City states the documents "speak for themselves". (See Amended Answer, attached hereto as Exhibit F). This is merely another attempt to side-step providing a good faith answer.

At the outset, Mr. Cowans was willing to allow the City time amend its Answer in light of a mediation scheduled for April, 2006, specifically in light of the City's representations that it needed time to prepare for the mediation because this is a "multi-million dollar" case. The City, however, has taken advantage of Mr. Cowans' allowances, in failing to amend its answer for an extended period, in failing to provide a good faith amendment, and in failing to enter into mediation in good faith. Because of this delay, Mr. Cowans has no choice but to seek to have the paragraphs delineated above deemed admitted and also seek costs, including attorneys' fees, for having to file this Motion.

## **ARGUMENT**

Under Fed. R. Civ. P. 8(b), a party answering a complaint has three options with regard to each allegation – admit, deny, or state they are without knowledge sufficient to determine the

truth of the matter asserted. There is also a good faith requirement under Rule 8(b). While this jurisdiction has not yet addressed the effect of a statement that the record or document relied on in the allegation "speaks for itself," other jurisdictions have found that such an answer is unacceptable under Rule 8(b) and have deemed the allegations admitted.

At least one court has acknowledged that documents and records do not speak for themselves, and instead Rule 8(b) requires the responding party to either admit, deny or state it is without knowledge or information. These are the only three acceptable options. *See Morse v. U.S. Fire Ins. Co.*, 1993 WL 451431 (N.D. Ill. 1993), *IBM Credit Corp. v. Block*, 1997 WL769553 (N.D. Ill. 1997) (deeming allegations admitted where it stated the documents speak for themselves). This position is logical under the clear language of Rule 8(b). Allowing a defendant to avoid its obligation to directly answer the allegations against it will merely lead to unnecessary discovery and waste the resources of both the plaintiff and this Court. Assumedly, if the City could deny the allegations, it would have done so. Instead, it is attempting to avoid answering under Rule 8(b) by stating the records "speak for themselves." This does not comport with the good faith requirement of Rule 8(b).

In the case at hand, the City's assertion that the records "speak for themselves" is an obvious attempt to side-step providing an acceptable and proper answer under Rule 8(b). Mr. Cowans' allegations are based directly on facts taken from those documents created and supplied by the City. The City cannot, in good faith, attempt to simply point to those documents and not respond to the allegations. The City's attempt to do so demonstrates yet another attempt to delay this litigation. Furthermore, such an answer is particularly unfair because these documents are uniquely within the control of the City. The City alone has the knowledge regarding when, how, why and by whom these documents were created and maintained. This is not, for example, a

-6-

case involving a contract where parties have had equal access and control over the contract.

Thus, in this case, only the City can attest to the veracity of its records and reports. If the City

has any reason to doubt the truth or accuracy of any of the information in its documents it must

do so. The City cannot avoid its obligation to raise any discrepancies between the facts of this

case and what its documents say by merely stating that the documents speak for themselves. As

this is a completely inadequate response, these answers should be deemed admitted. Aside from

the unfairness and inappropriateness of such an answer, allowing the City to rest on a statement

that the documents speak for themselves will waste the resources of this court in raising

additional unnecessary issues and the resources of the parties in having to conduct additional

extensive (and unnecessary) discovery.

By way of example only, the following illustrates the claims that the City has attempted

to avoid admitting by first stating it was without sufficient knowledge or information to form a

belief with regard to Mr. Cowans' allegations, and now stating that the City's records "speak for

themselves."

> (1)     The City claims that the documents containing information on or about the
> responsibilities of its officers on an investigation into the attempted murder of a police
> officer "speak for themselves." Yet if the information within the Ciy's own documents is
> in some way inaccurate, it is incumbent on the City to so indicate. If the information is
> accurate, by contrast, it should be forced to admit the allegations.

> (2)     The City claims that the documents containing information about the allegations
> concerning the basic circumstances surrounding the shooting of Sergeant Gallagher,
> "speak for themselves." However, this information was compiled by the BPD and
> obtained by Mr. Cowans directly from BPD police reports. The City should not be
> permitted to avoid either admitting the allegations or identifying any inaccuracies
> contained in the documents by claiming it cannot comment on its own records.

> (3)     The City claims that the documents containing information about the
> identification of Mr. Cowans' fingerprint as that of the perpetrator "speak for
> themselves." The City conducted this analysis and investigation, and yet the City refuses
> to admit that Mr. Cowans was identified as the source of the fingerprint on the glass mug,
> that witnesses were interviewed or what Mr. Cowans' sentence was and where he was

incarcerated. Nor is the City willing to identify any inaccuracies in its own documents regarding its own investigations.

(4)    The City states that the documents concerning the circumstances of Mr. Cowans' exoneration "speak for themselves." These allegations are based on findings contained in the March 8, 2004 and June 22, 2004 reports of Ron Smith & Associates – reports which were created for the City and were the result of investigations commenced at the direction of the BPD. The notion that the City admits it received this report, but cannot "form a belief" as to its contents, is entirely inconsistent with the reality that the City and the BPD shut down the Identification and Latent Print Units of the BPD as a result of Ron Smith & Associates findings. For the City now to assert that is somehow unable to admit the truth of the reports or, in the alternative, identify any untrue content is simply unreasonable.

The City's averments that the records in question "speak for themselves" is a blatant attempt to avoid admitting these allegations. In its original answer, the City took the untenable position that it was "without knowledge or information" sufficient to determine the truth of these allegations. This position was completely unreasonable in light of the fact that the City was in possession and control of extensive information relevant to the Gallagher investigation, the identification of the perpetrator's fingerprint and the investigation by Ron Smith & Associates. Furthermore, even if these facts were not readily available to the City, the City had an obligation to conduct a reasonable inquiry before providing its Answer. Any reasonable inquiry would have allowed the City to either admit or deny the allegations in Mr. Cowans' Complaint, as all of the information needed to do so is readily accessible and easily available given even a minor effort to obtain it. The City was well aware and in control of the sources of the information needed to provide an acceptable response to Mr. Cowans' allegations.

When the City was pressed to amend its answer realizing these failings, it again simply attempted to side-step actually answering Mr. Cowans' Complaint. The City's inability to admit these allegations is an unfounded attempt to shield itself from admitting allegations that will harm its case. The City, however, cannot in good faith do anything but admit the allegations

-8-

based on its own documents. Therefore, because the City has twice failed to do so, this Court

should deem these allegations admitted.

## CONCLUSION

Because the City's answers that the records and documents referenced in Mr. Cowans'

Complaint "speak for themselves" are not acceptable under Rule 8(b), an obvious sham,

unreasonable, and because the City created and produced the documents to Mr. Cowans that are

the basis for these allegations, the allegations in paragraphs 23-33, 35, 38-42, 44-45, 47-48, 57,

and 60-71 of Mr. Cowans' Complaint should be deemed admitted by the City and the costs

associated with filing this motion, including attorneys' fees, should be awarded to Mr. Cowans.

RESPECTFULLY SUBMITTED,


STEPHAN COWANS

By his attorneys,


/s/ Sheryl A. Koval
Joseph Savage (BBO# 443030)
R. David Hosp (BBO# 634091)
Sheryl A. Koval (BBO# 657795)
Goodwin | Procter LLP
Exchange Place / 53 State Street
Boston, MA 02109
(617) 570-1000

Robert N. Feldman (BBO# 630734)
Melissa M. Longo (BBO# 647649)
Birnbaum & Godkin, LLP
280 Summer Street
Boston, MA 02210
Dated: June 23, 2006                    (617) 307-6100

LIBA/1694245.1

## CERTIFICATION PURSUANT TO
## LOCAL RULE 7.1(A)(2) AND FED. R. CIV. P. 37.1

I certify that I have attempted to confer with counsel for the City in a good faith attempt to resolve or narrow the issues presented by this motion through a conference on June 22, 2006.

I further certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on June 23, 2006.

/s/ Sheryl A. Koval
Sheryl A. Koval

-10-

# EXHIBIT A

# TESTA, HURWITZ & THIBEAULT, LLP

ATTORNEYS AT LAW

125 HIGH STREET
BOSTON, MASSACHUSETTS 02110-2704

OFFICE (617) 248-7000
Direct Dial (617) 248-7295

FAX (617) 248-7100
E-Mail godkin@tht.com

July 27, 2004

**VIA CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Ms. Kathleen O'Toole
Boston Police Commissioner
Boston Police Headquarters
One Schroeder Plaza
Boston, MA  02120

RE:     *Public Records Act Request of Stephan Cowans*

Dear Commissioner O'Toole:

Pursuant to Mass. Gen. Laws ch. 66, § 10(a)-(b), Stephan Cowans, through his attorneys, hereby requests to be furnished, within ten days following receipt of this request, with copies of any and all records in the possession of the Boston Police Department related to Stephan Cowans.

The records shall be furnished regardless of physical form or characteristics, including but not limited to, all books, papers, electronic documents, electronic mail messages, instant mail messages, maps, photographs, diagrams, chalks, recorded tapes, negatives or other documentary material or evidence.

In particular, the records sought on behalf of Stephan Cowans include, but are not limited to, the following:

1.      All reports, findings, conclusions, interview notes, memoranda, or other documents relating to any internal investigation(s) concerning the Cowans matter conducted by or with the cooperation of the Boston Police Department.

2.      All reports, findings, conclusions, notes, memoranda or other documents relating to the work of any forensic consultants, including but not limited to Ron Smith, of the Meridian, Mississippi-based Ron Smith and Associates, Inc., hired to examine the fingerprint identification unit's practices and procedures.

3.      All reports, findings, conclusions, interview notes, memoranda or other documents relating to the Boston Police Department Internal Affairs Division's February/March 2004 investigations into the Cowans matter.

TESTA, HURWITZ & THIBEAULT, LLP

Commissioner Kathleen O'Toole
July 26, 2004
Page 2

4.  All physical and/or documentary evidence regarding the latent fingerprints located on the glass mug, Stephan Cowans' inked fingerprints and any elimination fingerprints.

5.  All physical and/or documentary evidence entered in evidence at trial related to the fingerprints located on the glass mug, Stephan Cowans' inked fingerprints, and any elimination fingerprints. This includes, but is not limited to photographs, enlarged photographs, negatives, diagrams and records related to these fingerprints.

6.  All physical and/or documentary evidence not entered in evidence at trial related to the fingerprints located on the glass mug, Stephan Cowans' inked fingerprints, and any elimination fingerprints. This includes, but is not limited to photographs, enlarged photographs, negatives, diagrams and records related to these fingerprints.

7.  All notes, memoranda, letters, files, drafts, charts, diagrams, reports, photographs and/or other documents generated by Officer Dennis E. LeBlanc related to the fingerprints located on the glass mug, their comparison to Stephan Cowans' inked fingerprints and any elimination fingerprints.

8.  All notes, memoranda, letters, files, drafts, charts, diagrams, reports, photographs and/or other documents generated by Officer Rosemary McLaughlin related to the fingerprints located on the glass mug, their comparison to Stephan Cowans' inked fingerprints and any elimination fingerprints.

9.  All notes, memoranda, letters, files, drafts, charts, diagrams, reports, photographs and/or other documents generated by Sergeant Folib related to the fingerprints located on the glass mug, their comparison to Stephan Cowans' inked fingerprints and any elimination fingerprints.

10. Complete files relating to any and all disciplinary complaints against all individuals who participated in the crime scene investigation at 29 School Street, collection and maintenance of the fingerprints located on the glass mug, collection and maintenance of Stephan Cowans' inked fingerprints, and collection and maintenance of the fingerprints of any member of the Lacy family. This includes, but is not limited to, Officers Gregory Gallagher, Dennis E. LeBlanc, Rosemary McLaughlin, and Sergeant Folib.

11. All official policies governing the search for and handling of crime scene evidence, including fingerprint evidence.

TESTA, HURWITZ & THIBEAULT, LLP

Commissioner Kathleen O'Toole
July 26, 2004
Page 3

12.    All correspondence, memoranda, notes of communications to, from, between and/or among officers and employees of the Boston Police Department concerning Stephan Cowans.

13.    All correspondence, memoranda, notes of communications between officers and employees of the Boston Police Department and the Suffolk County District Attorney's Office, the Massachusetts Attorney General's Office, the Massachusetts State Police and the Office of the U.S. Attorney for the District of Massachusetts concerning Stephan Cowans.

Thank you for your attention to this request.

Very truly yours,

David S. Godkin

DSG/cam
cc:  Mr. Stephan Cowans
     Robert N. Feldman, Esq.

GODKIN\10246\1.3098775_1

**Certified Article Number**

7160 3901 9844 1013 7055

**SENDERS RECORD**

2. Article Number

7160 3901 9844 1013 7055

3. Service Type    CERTIFIED MAIL

4. Restricted Delivery? (Extra Fee)    ☐ Yes

1. Article Addressed to:
Kathleen O'Toole
Boston Police Commissioner
Boston Police Headquarters
One Schroeder Plaza
Boston, MA  02120

COMPLETE THIS SECTION ON DELIVERY

A. Received by (Please Print Clearly)    B. Date of Delivery

C. Signature

X                                        ☐ Agent
                                         ☐ Addressee

D. Is delivery address different from Item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

ROXBURY MA
JUL 29 2004
02119
USPS

10426/1
PS Form 3811, July 2001        Domestic Return Receipt

David S. Godkin, Esq.

# TESTA, HURWITZ & THIBEAULT, LLP

### ATTORNEYS AT LAW

125 HIGH STREET
BOSTON, MASSACHUSETTS 02110-2704

OFFICE (617) 248-7000

FAX (617) 248-7100

E-Mail godkin@tht.com

Direct Dial (617) 248-7295

September 16, 2004

Kathleen O'Toole
Boston Police Commissioner
Boston Police Headquarters
One Schroeder Plaza
Boston, MA 02120-2014

RE:    *Commonwealth v. Cowans - NO. 97-11231*

Dear Commissioner O'Toole:

I write to follow up on a Stephan Cowans' Public Records Request, which was sent to you on July 27, 2004. A copy of that Request is enclosed for your reference. Pursuant to Mass. Gen. Laws ch. 66, § 10(b), you were required to comply with that Request within 10 days. To date, we have not received a response. Please respond immediately.

I look forward to hearing from you.

Very truly yours,

David S. Godkin, Esq.

Enclosure
cc:  Mr. Stephan Cowans
     Robert N. Feldman, Esq.
     Karen L. Folster-Lesperance, Esq.

3119361

# TESTA, HURWITZ & THIBEAULT, LLP

### ATTORNEYS AT LAW

125 HIGH STREET
BOSTON, MASSACHUSETTS 02110-2704

OFFICE (617) 248-7000
Direct Dial (617) 248-7295

FAX (617) 248-7100
E-Mail godkin@tht.com

July 27, 2004

VIA CERTIFIED MAIL
RETURN RECEIPT REQUESTED

Ms. Kathleen O'Toole
Boston Police Commissioner
Boston Police Headquarters
One Schroeder Plaza
Boston, MA 02120

RE:    *Public Records Act Request of Stephan Cowans*

Dear Commissioner O'Toole:

Pursuant to Mass. Gen. Laws ch. 66, § 10(a)-(b), Stephan Cowans, through his attorneys, hereby requests to be furnished, within ten days following receipt of this request, with copies of any and all records in the possession of the Boston Police Department related to Stephan Cowans.

The records shall be furnished regardless of physical form or characteristics, including but not limited to, all books, papers, electronic documents, electronic mail messages, instant mail messages, maps, photographs, diagrams, chalks, recorded tapes, negatives or other documentary material or evidence.

In particular, the records sought on behalf of Stephan Cowans include, but are not limited to, the following:

1.    All reports, findings, conclusions, interview notes, memoranda, or other documents relating to any internal investigation(s) concerning the Cowans matter conducted by or with the cooperation of the Boston Police Department.

2.    All reports, findings, conclusions, notes, memoranda or other documents relating to the work of any forensic consultants, including but not limited to Ron Smith, of the Meridian, Mississippi-based Ron Smith and Associates, Inc., hired to examine the fingerprint identification unit's practices and procedures.

3.    All reports, findings, conclusions, interview notes, memoranda or other documents relating to the Boston Police Department Internal Affairs Division's February/March 2004 investigations into the Cowans matter.

TESTA, HURWITZ & THIBEAULT, LLP

Commissioner Kathleen O'Toole
July 26, 2004
Page 2

4.   All physical and/or documentary evidence regarding the latent fingerprints
     located on the glass mug, Stephan Cowans' inked fingerprints and any
     elimination fingerprints.

5.   All physical and/or documentary evidence entered in evidence at trial
     related to the fingerprints located on the glass mug, Stephan Cowans'
     inked fingerprints, and any elimination fingerprints. This includes, but is
     not limited to photographs, enlarged photographs, negatives, diagrams and
     records related to these fingerprints.

6.   All physical and/or documentary evidence not entered in evidence at trial
     related to the fingerprints located on the glass mug, Stephan Cowans'
     inked fingerprints, and any elimination fingerprints. This includes, but is
     not limited to photographs, enlarged photographs, negatives, diagrams and
     records related to these fingerprints.

7.   All notes, memoranda, letters, files, drafts, charts, diagrams, reports,
     photographs and/or other documents generated by Officer Dennis E.
     LeBlanc related to the fingerprints located on the glass mug, their
     comparison to Stephan Cowans' inked fingerprints and any elimination
     fingerprints.

8.   All notes, memoranda, letters, files, drafts, charts, diagrams, reports,
     photographs and/or other documents generated by Officer Rosemary
     McLaughlin related to the fingerprints located on the glass mug, their
     comparison to Stephan Cowans' inked fingerprints and any elimination
     fingerprints.

9.   All notes, memoranda, letters, files, drafts, charts, diagrams, reports,
     photographs and/or other documents generated by Sergeant Folib related
     to the fingerprints located on the glass mug, their comparison to Stephan
     Cowans' inked fingerprints and any elimination fingerprints.

10.  Complete files relating to any and all disciplinary complaints against all
     individuals who participated in the crime scene investigation at 29 School
     Street, collection and maintenance of the fingerprints located on the glass
     mug, collection and maintenance of Stephan Cowans' inked fingerprints,
     and collection and maintenance of the fingerprints of any member of the
     Lacy family. This includes, but is not limited to, Officers Gregory
     Gallagher, Dennis E. LeBlanc, Rosemary McLaughlin, and Sergeant
     Folib.

11.  All official policies governing the search for and handling of crime scene
     evidence, including fingerprint evidence.

TESTA, HURWITZ & THIBEAULT, LLP

Commissioner Kathleen O'Toole
July 26, 2004
Page 3

12.  All correspondence, memoranda, notes of communications to, from, between and/or among officers and employees of the Boston Police Department concerning Stephan Cowans.

13.  All correspondence, memoranda, notes of communications between officers and employees of the Boston Police Department and the Suffolk County District Attorney's Office, the Massachusetts Attorney General's Office, the Massachusetts State Police and the Office of the U.S. Attorney for the District of Massachusetts concerning Stephan Cowans.

Thank you for your attention to this request.

Very truly yours,

David S. Godkin

DSG/cam
cc:  Mr. Stephan Cowans
     Robert N. Feldman, Esq.

GODKIN\10246\1.3098775_1

**Certified Article Number**

7160 3901 9844 1013 7055

**SENDERS RECORD**

# TESTA, HURWITZ & THIBEAULT, LLP

### ATTORNEYS AT LAW

125 HIGH STREET

OFFICE (617) 248-7000                    BOSTON, MASSACHUSETTS 02110-2704                    FAX (617) 248-7100

Direct Dial (617) 248-7295                                                            E-Mail godkin@tht.com

November 29, 2004

Mary Jo Harris, Esq.
Legal Advisor
Boston Police Department
Boston Police Headquarters
One Schroeder Plaza
Boston, MA 02120-2014

      RE:   *Commonwealth v. Cowans - NO. 97-11231*

Dear Ms. Harris:

      I write to follow up on Stephan Cowans' Public Records Request, which was sent to Commissioner O'Toole on July 27, 2004. In a letter dated October 12, 2004, you stated that we would receive a full response to our request within two weeks. More than six weeks has passed, but we still have not received a response.

      Please advise me immediately when the response of the Boston Police Department will be provided.

Very truly yours,

David S. Godkin

DSG:cam
cc: Mr. Stephan Cowans
    Robert N. Feldman, Esq.
    Ryan Cunningham, Esq.

3119361

# EXHIBIT B



COPY

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

STEPHAN COWANS,

        Plaintiff,

    v.

CITY OF BOSTON; BOSTON POLICE
DEPARTMENT; DONALD L. DEVINE,
Deputy Superintendent of the Bureau of
Investigative Services of the Boston Police
Department, in his individual capacity;
ROBERT FOILB, Supervisor of the Boston
Police Department Identification Unit, in his
individual capacity; GREGORY D.
GALLAGHER, in his individual capacity;
DENNIS LEBLANC, in his individual capacity;
JOHN H. MCCARTHY, in his individual
capacity; PAUL T. MCDONOUGH, in his
individual capacity; ROSEMARY
MCLAUGHLIN, in her individual capacity;
HERBERT L. SPELLMAN, in his individual
capacity; and DOES 1–10;

        Defendants.

**05 11574 RGS**

Case No.

## COMPLAINT AND JURY DEMAND

## INTRODUCTION

1

1.      On June 30, 1998, based largely on fingerprint evidence collected, analyzed and offered into evidence at trial by various members of the Boston Police Department, Stephan Cowans was convicted of numerous crimes (including armed assault with intent to murder Police Sergeant Gregory Gallagher) and sentenced to 35–50 years in a maximum security prison. On February 2, 2004, after spending over six and a half years in prison, Mr. Cowans was exonerated, his conviction was vacated and his indictment was dismissed on the ground of actual innocence based on DNA evidence that conclusively proved that Mr. Cowans had not committed any of the crimes of which he had been convicted. The District Attorney also revealed at that time that the fingerprint evidence that had been used to convict Mr. Cowans was false, and did not in fact implicate Mr. Cowans in any crimes.

2.      As a result of his wrongful conviction, Mr. Cowans was forced to endure the deprivation of his liberty, was forced to forgo the basic enjoyments of freedom, was incarcerated in a maximum security prison and was denied basic protections granted to all citizens. Moreover, less than six months prior to his exoneration, Ophelia Cowans, Mr. Cowans' mother, died of heart failure without ever seeing her son's innocence proved. As a result of his incarceration, Mr. Cowans was prevented from caring for and regularly visiting his mother during her protracted illness and even from attending her funeral.

3.      Following Mr. Cowans' exoneration and release from prison, the Boston Police Department shut down its Latent Print Unit, which had been responsible for the collection, analysis and presentation of the fingerprint evidence used to convict Mr. Cowans, and commissioned an assessment of that unit to determine the cause of the egregious and clear

misidentification of Mr. Cowans' fingerprints. The assessment was performed by four renowned experts in latent fingerprint identification, each with more than twenty-five years of experience in the field.

4.    This team of experts produced a report on March 8, 2004, which concluded (among other things) that: (1) Boston Police Department personnel were aware of or discovered the erroneous nature of the identification of Mr. Cowans' fingerprints prior to his conviction, but concealed that misidentification through trial and Mr. Cowans' subsequent conviction and sentencing; (2) the procedures used in identifying and analyzing the fingerprints in question at Mr. Cowans' trial were inappropriate and failed to follow basic, established professional standards; (3) the identification of prints from the crime scene as belonging to Mr. Cowans was clearly and plainly erroneous, and that any competent fingerprint expert would have recognized this error; and (4) the Boston Police had failed to use basic investigatory tools at their disposal which should have eliminated Mr. Cowans as a suspect based on the fingerprint evidence that was ultimately used to convict him.

5.    Mr. Cowans' wrongful arrest, conviction and incarceration were the result of unconstitutional and tortious acts by the defendant police officers, including members of the Identification Unit and the Homicide Division, and their respective supervisors.

6.    Acting under color of law, the defendants failed to properly investigate the crime in question; failed to follow reasonable fingerprinting procedures; made an unreasonable and erroneous identification of Mr. Cowans' fingerprint as that of the perpetrator; covered up this error at all levels of the investigation and allowed Mr. Cowans to proceed to trial; failed to

3

investigate other leads implicating a different defendant; and failed to take into account other exculpatory evidence.

7.    Beyond compensating Mr. Cowans for the six and a half years of his life that have been taken from him and for his continuing injuries, this action seeks to redress the unlawful municipal policies and practices pursuant to which the defendants, acting under color of law, violated his clearly established rights as guaranteed by the Fourth, Fifth, Sixth, Eighth, Ninth, and Fourteenth Amendments to the United States Constitution.

## JURISDICTION

8.    Title 28 U.S.C. § 1331 provides federal question jurisdiction, and 28 U.S.C. § 1367 provides supplemental jurisdiction over the state law claims.

## VENUE

9.    Pursuant to 28 U.S.C. § 1391(b), venue is proper in the District of Massachusetts, the judicial district in which the claims arose and in which, upon information and belief, all defendants reside or conduct business.

## PARTIES

10.    Plaintiff STEPHAN COWANS is, and at all times relevant herein was, an individual residing in Roxbury, Massachusetts.

11.    Defendant CITY OF BOSTON is a duly organized municipal corporation under the laws of the Commonwealth of Massachusetts.

12.    At all times relevant to this action, defendant BOSTON POLICE DEPARTMENT, including its Identification Unit, was a department within the City of Boston.

4

13.    Defendant DONALD L. DEVINE, at all times relevant to this action, was a member of the Boston Police Department and Deputy Superintendent of the Bureau of Investigative Services. He had supervisory responsibility over the Latent Print Unit that collected, analyzed and provided fingerprint evidence at trial used to convict Mr. Cowans. His actions alleged in this Complaint were taken under color of the laws of the Commonwealth of Massachusetts and the City of Boston. He is sued in his individual capacity.

14.    Defendant ROBERT FOILB, at all times relevant to this action, was a member of the Boston Police Department and was the sergeant in charge of the Latent Print Room. He had supervisory responsibility over the Latent Print Unit that collected, analyzed and provided fingerprint evidence at trial used to convict Mr. Cowans. His actions alleged in this Complaint were taken under color of the laws of the Commonwealth of Massachusetts and the City of Boston. He is sued in his individual capacity.

15.    Defendant GREGORY D. GALLAGHER, at all times relevant to this action, was a member of the Boston Police Department and was the sergeant detective who misidentified Cowans as the Perpetrator who shot and wounded him. He had the responsibility of providing truthful evidence and aiding in the investigation into the identity of the perpetrator of the shooting. His actions alleged in this Complaint were taken under color of the laws of the Commonwealth of Massachusetts and the City of Boston. He is sued in his individual capacity.

16.    Defendant DENNIS LEBLANC, at all times relevant to this action, was a member of the Boston Police Department working in the Identification Unit. He was directly involved in the collection, analysis and provision of evidence regarding the latent fingerprints collected at the

5

crime scene and used at trial to convict Mr. Cowans. His actions alleged in this Complaint were taken under color of the laws of the Commonwealth of Massachusetts and the City of Boston. He is sued in his individual capacity.

17.    Defendant JOHN H. MCCARTHY, at all times relevant to this action, was a member of the Boston Police Department working in the Homicide Division. He was one of the detectives with primary responsibility over the investigation and was directly involved in the collection, analysis and provision of evidence and testimony at trial used to convict Mr. Cowans. His actions alleged in this Complaint were taken under color of the laws of the Commonwealth of Massachusetts and the City of Boston. He is sued in his individual capacity.

18.    Defendant PAUL T. MCDONOUGH, at all times relevant to this action, was a member of the Boston Police Department working in the Homicide Division. He was one of the detectives with primary responsibility over the investigation and was directly involved in the collection, analysis and provision of evidence and testimony at trial used to convict Mr. Cowans. His actions alleged in this Complaint were taken under color of the laws of the Commonwealth of Massachusetts and the City of Boston. He is sued in his individual capacity.

19.    Defendant ROSEMARY MCLAUGHLIN, at all times relevant to this action, was a member of the Boston Police Department working in the Identification Unit. She was directly involved in the collection, analysis, provision and verification of evidence regarding the latent fingerprints collected at the crime scene and used to convict Mr. Cowans. Her actions alleged in this Complaint were taken under color of the laws of the Commonwealth of Massachusetts and the City of Boston. She is sued in her individual capacity.

6

20.     Defendant HERBERT L. SPELLMAN, at all times relevant to this action, was a member of the Boston Police Department. He had supervisory responsibility over the Homicide Division investigation and oversaw the detectives who collected, analyzed and provided evidence and testimony at trial that was used to convict Mr. Cowans. His actions alleged in this Complaint were taken under color of the laws of the Commonwealth of Massachusetts and the City of Boston. He is sued in his individual capacity.

21.     Defendants DOES 1–10 are, at this time, unidentified members of the Boston Police Department and/or other government departments or agencies who participated in the collection, analysis, provision and verification of evidence regarding the latent fingerprints collected at the crime scene and used to convict Mr. Cowans and/or participated in the investigation into the Gallagher shooting and the collection, analysis and provision of testimony associated with that investigation which was provided at trial and used to convict Mr. Cowans. Their actions alleged in this Complaint were taken under color of the laws of the Commonwealth of Massachusetts, the City of Boston and/or other government departments or agencies. They are sued in their individual capacities.

## JURY TRIAL DEMAND

22.     Mr. Cowans hereby demands a trial by jury on all issues so triable.

## FACTS

### The Crime

23.     According to police reports, on the evening of May 30, 1997, Sergeant Gregory Gallagher was on duty as a patrol supervisor for the Boston Police Department ("BPD").

7

24.     According to police reports, at approximately 5:00 p.m., while driving in the area of Columbus Avenue and School Street Place in Jamaica Plain, Gallagher observed a man (hereinafter "the Perpetrator") allegedly staring at two young girls sitting on the steps of a home.

25.     According to police reports, Gallagher got out of his police cruiser, at which time the Perpetrator walked away and Sergeant Gallagher followed. Ultimately, the Perpetrator ran and Gallagher gave chase.

26.     According to police reports, Gallagher followed the Perpetrator into the backyard of one of the surrounding homes and confronted him. As Gallagher attempted to frisk the Perpetrator for weapons, a struggle ensued. During the struggle, the baseball cap that the Perpetrator was wearing fell off. There was a pause in the struggle, during which time Gallagher pulled his radio and called for back-up. Gallagher and the Perpetrator then continued to struggle, and the Perpetrator wrestled Gallagher's firearm away from him and shot Gallagher two times, once in the back and once in the buttocks.

27.     According to police reports, during the confrontation, Benjamin Pitre, a resident of 7 School Street Place, the home where Gallagher and the Perpetrator struggled in the backyard, came to his window. Upon seeing Pitre, the Perpetrator fired several shots toward Pitre and his home.

28.     According to police reports, upon fleeing the scene, the Perpetrator forced his way into the home of Bonnie Lacy and her two children, Bryant McEwen and Jacqueline McEwen.

29.     According to police reports and eyewitness accounts, the Perpetrator remained in the Lacy home and in the same room with Ms. Lacy and her children for approximately ten minutes. During this time, Bonnie Lacy, Bryant McEwen and Jacqueline McEwen were in close proximity to the Perpetrator and had the best opportunity to observe the Perpetrator for purposes of identification.

30.     While in the Lacy home, the Perpetrator removed his sweatshirt and used it to wipe his fingerprints from Gallagher's firearm.

31.     According to police reports and eyewitness accounts, also while the Perpetrator was in the Lacy home, Bryant McEwen provided the Perpetrator with a clear glass mug filled with water. The Perpetrator drank from the glass mug and left it in the Lacy home.

32.     According to police reports, the Perpetrator then escaped from the Lacy home, leaving his sweatshirt and Gallagher's firearm behind. To date, the Perpetrator has not been identified.

33.     According to police reports and trial testimony, in the initial interviews following the shooting, the Perpetrator was described by at least Lacy, Bryant McEwen and Jacqueline McEwen as a black male, skinny, and in his late teens or early twenties. On the day of the shooting, Gallagher identified the Perpetrator as in this same age range. Additionally, Pitre identified the Perpetrator as a tall, skinny, black male.

34.     At the time of the shooting, Stephan Cowans was twenty-six years old, five feet nine inches tall and weighed 170 pounds, and thus did not match the description given by Lacy, her children and Pitre.

9

## The False Identification as Stephan Cowans' Fingerprint

35.      According to police reports, the Boston Police Department's Identification Unit

gathered fingerprints from the crime scene.  There were two latent fingerprints found on the glass

mug from which the Perpetrator drank.  Officer Dennis LeBlanc of the Latent Print Unit

determined that the first latent print belonged to Bonnie Lacy.  The second latent fingerprint was

the only viable fingerprint found at the crime scene that allegedly belonged to the Perpetrator.

36.      According to police reports, Officers Rosemary McLaughlin, Dennis LeBlanc and

Doe Defendants, working under the supervision of Sergeant Robert Foilb and Doe Defendants,

collected the fingerprints at the crime scene, including those on the glass mug.

37.      According to police reports, Officer John F. Callahan collected elimination

fingerprints from the members of the Lacy household.  Elimination fingerprints are used to rule

out the fingerprints of non-suspects who would have touched the objects in question.

38.      According to police reports and trial testimony, LeBlanc searched the Automated

Fingerprint Identification System ("A.F.I.S.") fingerprint database for a match to the allegedly

unknown second latent fingerprint on the glass mug.  The search revealed no match to any prints

in the A.F.I.S. database.

39.      At the time of this search, Mr. Cowans' fingerprints were in the A.F.I.S. database and

had been in the A.F.I.S. system since at least 1990.  As a result, had Mr. Cowans' fingerprints

actually matched those taken from the mug retrieved from the Lacy residence, a match should

have been identified by the A.F.I.S. database.

10

40.    According to trial testimony, in mid-June 1997, the name "Stephan Cowans" was provided to the Latent Print Unit, including Officers LeBlanc and McLaughlin, as the name of a possible suspect in the shooting of Sergeant Gallagher.  Trial testimony and police reports provide no indication of who provided Mr. Cowans' name to the Latent Print Unit.  Cowans' name was provided based on, at best, a third-party statement responding to a physical description given by the investigating officers that did not match the description provided by Bonnie Lacy, Bryant McEwen and Jacqueline McEwen, and also did not match the description initially provided by Pitre.

41.    According to police reports, after Mr. Cowans had been suggested as a possible suspect, Officer LeBlanc compared inked impression fingerprints of Stephan Cowans to that of the second latent fingerprint on the glass mug.  In spite of the fact that the fingerprints did not match, Officer LeBlanc falsely, intentionally and/or recklessly indicated that the fingerprint on the glass mug matched that of Stephan Cowans.  To make this identification, LeBlanc asserted that he had compared the latent print from the glass mug to a known inked impression fingerprint of Mr. Cowans, one that had been taken during a prior arrest using black ink and a light-colored card to record the impression.  McLaughlin verified this false identification.

11

42.     According to police reports, Detectives John McCarthy, Paul McDonough, Doe Defendants and Sergeant Detective Herbert L. Spellman of the Homicide Division conducted and oversaw the entire investigation into the shooting of Sergeant Gallagher.  Nevertheless, despite their responsibilities, they failed to discover the intentionally and/or recklessly false evidence introduced against Mr. Cowans, and/or failed to disclose such false evidence once discovered.  In addition, they failed to investigate properly, failed to follow leads and intentionally and/or recklessly proceeded against Mr. Cowans despite evidence that exculpated him of the crimes in question.

43.     As part of the investigation into the shooting of Sergeant Gallagher, Sergeant Detective Kevin E. Waggett and others interviewed witnesses including Gallagher, Lacy and Bryant McEwen.

44.     According to police reports, on June 17, 1997, Detectives McCarthy and McDonough showed eyewitnesses, including Gallagher, Lacy, Bryant McEwen, Jacqueline McEwan and Pitre, a photo array which contained the picture of Mr. Cowans.  None of these witnesses positively identified Mr. Cowans as the Perpetrator based on this photo array.  At best, Gallagher stated that, of the photos provided, No. 7 (Mr. Cowans) "most resemble[d]" the Perpetrator.

45.     According to police reports, during the course of the investigation, Detective Paul Farrahar received a tip that an individual other than Stephan Cowans was responsible for the shooting of Gallagher.

46.     On information and belief, this tip was not investigated.

47.     According to police reports, on July 2, 1997, Detective McCarthy oversaw the line-up in which Mr. Cowans was placed. Neither Bonnie Lacy, Bryant McEwen nor Jacqueline McEwan, who had each spent approximately ten minutes with the Perpetrator, identified anyone in the line-up as the Perpetrator. Gallagher falsely identified Mr. Cowans as the Perpetrator.

48.     LeBlanc testified during Mr. Cowans' trial that the second latent print on the glass mug belonged to Stephan Cowans.

49.     On information and belief, LeBlanc, McLaughlin, McCarthy, McDonough and others actively concealed the fact that the fingerprint identified as belonging to Stephan Cowans did not, in fact, belong to Mr. Cowans and presented false evidence to the contrary at trial.

50.     On June 30, 1998, Mr. Cowans was convicted of armed assault with intent to murder, home invasion, assault by means of a dangerous weapon, assault and battery of a police officer and unlicensed possession of a firearm, and was sentenced to 35–50 years in a maximum security prison.

51.     Mr. Cowans was incarcerated in Souza Baronowski Correctional Center, the Massachusetts Correctional Institution located in Shirley, Massachusetts. During that time, Mr. Cowans was infected with Hepatitis C as a result of his duties on bio-hazard clean-up.

### Mr. Cowans' Exoneration

52.     Knowing his innocence, Mr. Cowans worked diligently to learn the law and the fingerprint identification process. Mr. Cowans' mother assisted him in his fight and saw it as her mission to have her son freed from prison. Mr. Cowans contacted the New England Innocence Project, who helped him obtain legal representation.

13

53.    In August 2003, Mr. Cowans mother, Ophelia, was hospitalized for her chronic heart problems and lapsed into a coma shortly after she was admitted. Mr. Cowans was in custody at this time and was forced to choose whether to visit his mother's bedside or attend her funeral. Rather see his mother still alive, Mr. Cowans was permitted a mere five-minute visit. No other family members were allowed in the hospital during this time. In early September 2003, Ophelia Cowans died of heart failure. Mr. Cowans was prohibited from attending her funeral.

54.    In 2003, after several times refusing to relinquish the evidence that contained the Perpetrator's DNA, the Suffolk County District Attorney finally consented to the request of the lawyers associated with the New England Innocence Project for post-conviction DNA testing on the baseball cap, sweatshirt and glass mug found at the crime scene.

55.    DNA testing conducted in December 2003 and early 2004 revealed that the DNA on the Perpetrator's baseball cap and sweatshirt, as well as DNA from the glass mug that the Perpetrator drank from at the Lacy house *did not* match the DNA of Stephan Cowans, but instead all matched a single unidentifiable person. It was thus scientifically proven that Stephan Cowans did not shoot Gallagher and did not invade the Lacy home. Following the discovery of the DNA evidence, the District Attorney's office investigated the fingerprint that was identified as that of Mr. Cowans and found that the fingerprint actually belonged to Bryant McEwan and not Stephan Cowans.

56.    On January 23, 2004, Mr. Cowans was released from prison; just over four months after his mother had passed away. On February 2, 2004, Mr. Cowans' conviction was vacated

14

and the indictment dismissed on the ground of actual innocence. Mr. Cowans had spent nearly seven years in prison for crimes he did not commit.

### The Internal Investigation of the Boston Police Department Identification Unit

57.    According to police reports, after Mr. Cowans' exoneration, James Hussey, acting Commissioner of the Boston Police Department, and William Casey, Deputy Superintendent of the Information Technology Division of the Boston Police Department, commissioned a complete technical and administrative assessment of the Latent Print Unit of the Boston Police Department to determine how such an egregious and clear misidentification could have occurred in the false identification of the second latent print. To that end, the Boston Police Department hired Ron Smith & Associates, Inc. to conduct an internal investigation.

58.    Ron Smith, President of Ron Smith & Associates, Inc. and a Certified Latent Print Examiner with over twenty-five years of experience, lead the investigation.

59.    On March 8, 2004, Mr. Smith presented a report of his findings (the "Smith Report") to the BPD.

60.    The Smith Report concluded that the testimony indicating that the fingerprints on the Lacys' mug matched Mr. Cowans' fingerprints was unquestionably false, and detailed significant irregularities in the testimony and processes used.

61.    According to the Smith Report, for example, latent prints on a glass surface are processed using a method involving superglue which reveals the print as white ridges that are then placed against a dark background. As is customary in the fingerprint identification profession, as well as within the BPD, when the print is photographed for enlargement, the color

15

is reversed so the print appears as black ridges on a light background. The color reversal allows the details of the latent fingerprint to be the same color as the known comparison print taken from an inked fingerprint card. This in turn allows the jury to see clearly the correlation of matching characteristics when pointed out by the fingerprint expert.

62.     According to the Smith Report, LeBlanc took Mr. Cowans' known print from an inked fingerprint card, which reflected black ridges on a light background. LeBlanc did not reverse the colors on the latent fingerprint taken from the glass mug — which revealed white ridges on a dark background — to match the coloring of the fingerprint card when analyzing and making enlargements of the Perpetrator's alleged print. Therefore, in the enlargements, the second latent print appeared as white on a dark background, while Cowans' comparison print was black on a light background. LeBlanc, however, did do the appropriate color reversal when identifying Bonnie Lacy's print as the first latent print present on the glass mug.

63.     Furthermore, according to the Smith Report, there were a set of handwritten instructions on the back of the enlargement of the second latent print explaining the sixteen points of comparison to make the matching identification between that print and the known  print of Stephan Cowans. Mr. Smith noted that such instructions are unnecessary when a fingerprint expert testifies truthfully because the expert views the enlargements while testifying and comparison points should be obvious.

64.     The Smith Report concluded that there is "no doubt" that the identification of the second print on the glass mug as belonging to Mr. Cowans was clearly erroneous. Mr. Smith further concluded that there were multiple points of identification marked on the enlargement of

16

the inked fingerprint that in no way coincided with the same area on the latent print. "To a trained latent print expert, these differences [were] not difficult to see."

65.    According to the Smith Report, the BPD determined that the latent print originally identified as belonging to Mr. Cowans, in fact, belonged to Bryant McEwen, Bonnie Lacy's son who had retrieved the glass mug for the Perpetrator.

66.    According to the Smith Report, Bryant McEwen's inked elimination fingerprints, taken by Callahan, were known and available to LeBlanc prior to when he made his "identification" of Mr. Cowans' fingerprint, and were known and available to McLaughlin when she verified this identification.

67.    The Smith Report also concluded that LeBlanc's testimony at trial and the information in his report were in direct conflict with the fingerprint evidence available. By way of example, LeBlanc testified at trial that he could not use Stephan Cowans' A.F.I.S. fingerprints (the fingerprints stored in the national and Boston fingerprint databases) as the known fingerprint for comparison because it was a "poor" set of prints. The Smith Report concluded that Mr. Cowans' A.F.I.S prints were "very clear indeed, with no smudging or distortion of any kind." Additionally, LeBlanc did not retrieve Mr. Cowans' A.F.I.S. print until the day before he testified at Mr. Cowans' trial and only upon the request of the prosecutor.

68.    The Smith Report went on to conclude that LeBlanc understood the latent print process and should have been able to make a proper identification in this case.

69.    According to the Smith Report, the investigatory team that examined the Latent Print Unit consisted of four individuals who are experts in the field of latent identification: James E.

17

Bush of the Mississippi Crime Laboratory, Hilbert J. Mullins of the Palm Beach County Sheriff's Office, Charles Richardson formerly of the Drug Enforcement Agency (retired) and Mr. Smith. Each of these individuals had over twenty-five years of experience in the field of forensic identification and served on the Latent Print Certification Board of the International Association for Identification.

70.      After an exhaustive inquiry, this team of experts unanimously concluded that, at some point after the erroneous identification of the latent print as that of Mr. Cowans, LeBlanc discovered his misidentification and actively concealed it throughout the trial.

71.      According to the Smith Report, McLaughlin confirmed this erroneous identification. Foilb oversaw the identification process.

## Damages

72.      As a direct result of the defendants' unconstitutional actions, Mr. Cowans sustained the following injuries and damages: personal injuries; pain and suffering; severe mental anguish; emotional distress; loss of income; infliction of physical illness; post-traumatic stress; Hepatitis C; sleeplessness; inadequate medical care; humiliation, indignities and embarrassment; degradation; injury to reputation; permanent loss of natural psychological development; and restrictions on all forms of personal freedom, such as diet, sleep, personal contact, educational opportunity, vocational opportunity, athletic opportunity, personal fulfillment, sexual activity, family relations, reading, television, movies, travel, enjoyment and expression.

## CLAIMS

### Count I—42 U.S.C. § 1983
**Due Process Claims against Defendants LeBlanc, McLaughlin, Foilb, McCarthy, McDonough, Spellman, Gallagher and Doe Defendants for Failing to Disclose Evidence; Due Process Claims against Defendants LeBlanc, McLaughlin, Foilb, Gallagher and Doe Defendants for Fabricating Evidence; and Due Process Claims Against Defendants McCarthy, McDonough, Spellman and Doe Defendants for Failure to Investigate.**

73.    Plaintiff Cowans hereby incorporates fully all of the foregoing as if set forth herein and further alleges as follows:

**A.        Fourteenth Amendment Brady Claims**

74.    LeBlanc, McLaughlin, Foilb and Doe Defendants, who were members of the Latent Print Unit and/or other government departments or agencies and composed the team that was responsible for processing all prints found at the crime scene, failed to disclose to the prosecutor and the defense attorney material information that was favorable to Mr. Cowans. This undisclosed information included the fact that the second latent fingerprint taken from the water glass did not, in fact, belong to Mr. Cowans.

75.    On information and belief, McCarthy, McDonough, Spellman and Doe Defendants, who were members of the Homicide Division and/or other government departments or agencies that conducted and oversaw the investigation into Gallagher's shooting, also failed to disclose to the prosecutor material information that was favorable to Mr. Cowans. This undisclosed information included information that an anonymous tip named someone other than Mr. Cowans as the person who shot Gallagher.

76.     On information and belief, Gallagher failed to disclose material information that was favorable to Mr. Cowans. This undisclosed information included the fact that Gallagher falsely identified Mr. Cowans as the Perpetrator.

77.     Acting with deliberate indifference by withholding this material exculpatory and impeachment evidence prior to trial, LeBlanc, McLaughlin, Foilb, McCarthy, McDonough, Spellman, Gallagher and Doe Defendants violated Mr. Cowans' clearly established Fourteenth Amendment right to due process of law as interpreted by the United States Supreme Court in Brady v. Maryland and its progeny which entitles every citizen, when charged with a crime, not to have evidence favorable to him suppressed. The suppression of evidence in this case directly and proximately caused Mr. Cowans to be wrongfully convicted and to suffer the injuries and damages described above.

**B.      Fabricating False Inculpatory Evidence**

78.     On information and belief, LeBlanc, McLaughlin, Foilb and Doe Defendants, who were members of the Latent Print Unit and/or other government departments or agencies and composed the team responsible for processing all prints found at the crime scene, fabricated the claim that the second latent fingerprint on the glass mug came from Mr. Cowans.

79.     On information and belief, Gallagher fabricated inculpatory evidence by knowingly or recklessly identifying Mr. Cowans as the Perpetrator, when, on information and belief, he knew or should have known that this was not the case.

80.     As a direct and proximate result of this fabrication of inculpatory evidence by LeBlanc, McLaughlin, Foilb, Gallagher and Doe Defendants (violating Mr. Cowans' clearly

20

established Fourteenth Amendment due process rights including the right to a fair trial and his

Fourth Amendment right to be free from unreasonable seizures), Mr. Cowans was wrongfully

convicted and suffered the injuries and damages described above.

**C.      Failure to Investigate**

81.      McCarthy, McDonough, Spellman and Doe Defendants, members of the BPD

Homicide Division and/or other government departments or agencies, who were charged with

investigating Gallagher's shooting, deliberately and/or recklessly failed to investigate adequately,

as any minimally competent officer would have, whether there was any truth to the anonymous

tip regarding the Gallagher shooting. Moreover, they prematurely ended their investigation even

though all eyewitnesses failed to identify Mr. Cowans in the initial photo array, and those

witnesses who spent the most time with Mr. Cowans (Bonnie Lacy, Bryant McEwen and

Jacqueline McEwan) failed to identify Cowans as the Perpetrator in the line-up. As a direct and

proximate result of the failure to investigate by McCarthy, McDonough, Spellman and Doe

Defendants, in violation of his clearly established Fourteenth Amendment rights, Mr. Cowans

was wrongfully convicted and suffered the injuries and damages set forth above.

### Count II—42 U.S.C. § 1983
### Claims against Defendants LeBlanc, McLaughlin, Foilb, McCarthy, McDonough, Spellman, Gallagher and Doe Defendants for Malicious Prosecution

82.      Plaintiff Cowans hereby incorporates fully all of the foregoing as if set forth

herein and further alleges as follows:

83.      When Mr. Cowans was arrested, the only inculpatory evidence was the fingerprint

that had been falsely identified as belonging to Mr. Cowans. None of the witnesses shown the

photo array, which included Mr. Cowans, could identify with certainty any of the men in the array as the Perpetrator. The alleged fingerprint identification did not provide probable cause to arrest Mr. Cowans.

84.     Defendants LeBlanc, McLaughlin, McCarthy, McDonough, Spellman, Gallagher and Doe Defendants, all key players in the investigation into Gallagher's shooting and all state actors acting under the color of law, commenced or caused to be commenced a criminal prosecution, instituted with malice and without probable cause, against Mr. Cowans. They falsely identified the key piece of evidence as a fingerprint belonging to Mr. Cowans and covered up this misidentification. They then failed to disclose material exculpatory evidence including that the identification was false and the fingerprint attributed to Mr. Cowans instead actually belonged to Bryant McEwen (contrary to the fabricated evidence presented to the prosecution). Gallagher also falsely identified Mr. Cowans as the Perpetrator and the defendants covered up this misidentification. Furthermore, defendants failed to follow up on or disclose the identification of another individual as being the Perpetrator. The defendants acted to secure a conviction of Mr. Cowans regardless of the evidence. They ignored, failed to disclose, or misrepresented the evidence that indicated Mr. Cowans' innocence.

85.     The criminal action ultimately terminated in Mr. Cowans' favor on February 2, 2004, when his conviction was vacated on the ground of his actual innocence, due to the conclusive scientific evidence that the Perpetrator's DNA did not match that of Mr. Cowans.

86.      On March 8, 2004, Ron Smith & Associates, Inc. determined that the

identification of the second latent fingerprint on the water mug as belonging to Mr. Cowans was

a clear misidentification.

87.      The defendants' conduct violated Mr. Cowans' clearly established rights under the

Fourth Amendment and the procedural due process component of the Fourteenth Amendment.

88.      As a proximate result of the defendants' conduct, Mr. Cowans was arrested, was

prosecuted, was forced to endure an unfair trial and wrongful conviction, and was wrongly

imprisoned for nearly seven years.  He suffered and continues to suffer the injuries and damages

set forth above.

**Count III—42 U.S.C. § 1983**
**Monell Claim against the City of Boston and the Boston Police Department**

89.      Plaintiff Cowans hereby incorporates fully all of the foregoing as if set forth

herein and further alleges as follows:

90.      By May 1997, the defendants City of Boston and the Boston Police Department

had a policy, custom, or practice of failing to properly discipline, supervise and train Boston

police officers including the individuals named in this case.  The City of Boston and the BPD

failed to ensure that its police officers would conduct constitutionally adequate identification

procedures; obtain probable cause to ensure that suspects would not be falsely arrested and

maliciously prosecuted; disclose to prosecutors material information favorable to criminal

defendants; follow the duties imposed by Brady v. Maryland; and never fabricate inculpatory

evidence.

23

91.     These policies, customs and practices led Boston police officers to believe that

misconduct would be tolerated and that allegations of abuse of constitutional rights would not be

investigated.  They made it foreseeable that officers would violate people's constitutional rights.

92.     The policies, customs and practices of the City of Boston and the Boston Police

Department described in this Complaint were the moving force behind Mr. Cowans' arrest,

prosecution and incarceration.

### Count IV—42 U.S.C. § 1983
### Supervisory Liability Claims against defendants Foilb, Spellman and Doe Defendants, Supervisors in the Boston Police Department

93.     Plaintiff Stephan Cowans hereby incorporates fully all of the foregoing as if set

forth herein and further alleges as follows:

94.     Defendant supervisors Foilb, supervisor of the Latent Print Unit, Donald L.

Devine, supervisor of the Bureau of Investigative Services (including the Latent Print Unit),

Herbert L. Spellman, supervisor of the Homicide Division investigation, and Doe Defendants

acting under color of law with deliberate indifference to the rights of criminal suspects, failed to

train and supervise adequately defendants LeBlanc, McLaughlin and Doe Defendants of the

Latent Print Unit, and McCarthy, McDonough and Doe Defendants of the Homicide Division.  In

so doing, Foilb, Spellman, Devine and Doe Defendants tacitly acquiesced in, condoned, or

encouraged the individual defendants' engaging in unconstitutional misconduct, including the

clearly erroneous identification of Mr. Cowans as the source of the second latent fingerprint, the

fabrication of evidence, and the suppression of exculpatory material evidence from the

prosecutor.

24

95.     The failure of these defendants to supervise and train the named individual defendants amounted to deliberate indifference, or intentional misconduct, which proximately and directly caused Mr. Cowans to suffer all of the injuries and damages set forth above.

### Count V—42 U.S.C. § 1983
### Conspiracy Claims against defendants LeBlanc, McLaughlin, Foilb, McCarthy, McDonough, Spellman, Gallagher and Doe Defendants

96.     Plaintiff Stephan Cowans hereby incorporates fully all of the foregoing as if set forth herein and further alleges as follows:

97.     Defendants LeBlanc, McLaughlin, Foilb, McCarthy, McDonough, Spellman, Gallagher and Doe Defendants acted in consort with and between the Latent Print and Homicide Units to deprive Mr. Cowans of his constitutional due process rights by failing to disclose exculpatory evidence, fabricating inculpatory evidence and failing to properly investigate the claims against Mr. Cowans.

98.     Upon information and belief, defendants LeBlanc, McLaughlin, Foilb, McCarthy, McDonough, Spellman, Gallagher and Doe Defendants affirmatively agreed to act together to conceal the misidentification of the second latent fingerprint as belonging to Mr. Cowans, in failing to investigate other exculpatory leads and in misidentifying Mr. Cowans as the Perpetrator. By doing so, defendants agreed to deprive Mr. Cowans of his clearly established rights under the Fourth Amendment and the procedural due process component of the Fourteenth Amendment.

99.     Upon information and belief, in furtherance of the conspiracy, defendants undertook overt acts, including without limitation the following:

25

A.    defendants agreed and acted intentionally to misidentify and conceal the

misidentification of the second latent fingerprint as belonging to Mr.

Cowans;

B.    defendants agreed and acted intentionally to withhold and conceal

information from the prosecutor so that it would not be disclosed to Mr.

Cowans, including that another individual had been identified in an

anonymous tip as being the Perpetrator;

C.    defendants agreed and acted intentionally to misidentify Mr. Cowans in

the line-up as the Perpetrator.

100.    Defendants' conspiracy directly caused the constitutional deprivations suffered by

Mr. Cowans' false arrest, malicious prosecution, unfair trial, wrongful conviction and unlawful

confinement, and all the other grievous permanent damages and injuries set forth above.

## Count VI—State Tort Law
### Claims against Defendants LeBlanc, McLaughlin, Foilb, McCarthy, McDonough, Spellman, Gallagher and Doe Defendants for Malicious Prosecution and Abuse of Process

101.    Plaintiff Cowans hereby incorporates fully all of the foregoing as if set forth

herein and further alleges as follows:

102.    Defendants LeBlanc, McLaughlin, Foilb and Doe Defendants, who were in charge

of the latent print identification, and McCarthy, McDonough, Spellman and Doe Defendants,

who were in charge of the Homicide Division investigation, and Gallagher, who provided

evidence regarding the identify of the shooter, all state actors acting under the color of law,

commenced or caused to be commenced a criminal prosecution, instituted with malice and

26

without probable cause, against Mr. Cowans. The Latent Print Unit falsely identified the key piece of evidence as a fingerprint belonging to Mr. Cowans and defendants covered up this misidentification. Defendants then failed to disclose material exculpatory evidence including that the identification was false and the fingerprint in question belonged to Bryant McEwen (contrary to the fabricated evidence presented to the prosecution). Gallagher also falsely identified Mr. Cowans in a line-up as the Perpetrator and defendants covered up this misidentification. Furthermore, the Homicide Division failed to follow up on or disclose the identification of another individual as being the Perpetrator.

103.    The criminal action ultimately terminated in Mr. Cowans' favor on February 2, 2004 when his conviction was vacated on the ground of actual innocence, due to the conclusive scientific evidence that the Perpetrator's DNA did not match that of Mr. Cowans.

104.    On March 8, 2004, Ron Smith & Associates, Inc. determined that the identification of the second latent fingerprint on the glass mug as belonging to Mr. Cowans was clearly erroneous.

105.    As a proximate result of the defendants' conduct, Mr. Cowans was arrested, prosecuted, forced to endure an unfair trial and wrongful conviction, and wrongly imprisoned for nearly seven years. He suffered and continues to suffer the injuries and damages set forth above.

**Count VIII—State Tort Law**
**Claims against Defendants LeBlanc, McLaughlin, Foilb, McCarthy, McDonough,**
**Spellman, Gallagher and Doe Defendants for Negligent Infliction of Emotional Distress**

106.    Plaintiff Cowans hereby incorporates fully all of the foregoing as if set forth herein and further alleges as follows:

27

107.    LeBlanc, McLaughlin, Foilb, McCarthy, McDonough, Spellman, Gallagher and Doe Defendants, as members of the team responsible for investigating Gallagher's shooting, had a duty to Mr. Cowans to properly investigate crimes put before them and refrain from fabricating evidence against Mr. Cowans.

108.    LeBlanc, McLaughlin, Foilb and Doe Defendants breached this duty by misidentifying the second latent print and, along with defendants McCarthy, McDonough, Spellman and Doe Defendants further breached this duty by concealing the misidentification.

109.    McCarthy, McDonough, Spellman and Doe Defendants further breached this duty by failing to follow up on leads indicating that another individual shot Gallagher.

110.    Gallagher breached this duty by falsely identifying Mr. Cowans as the Perpetrator and concealing the misidentification.

111.    This breach of duty inflicted great emotional distress on Mr. Cowans as a result of his imprisonment for nearly seven years with the knowledge that he had not committed the crime in question.

112.    Because of this emotional distress, Mr. Cowans has suffered numerous debilitating physical, mental and emotional conditions including sleeplessness, paranoia and post-traumatic stress.

113.    A reasonable person in Mr. Cowans' situation, having suffered wrongful arrest, prosecution and conviction would have experienced severe emotional distress as Mr. Cowans has.

## Count IX—State Tort Law
### Claims against Defendants LeBlanc, McLaughlin, Foilb, McCarthy, McDonough, Spellman, Gallagher and Doe Defendants for Intentional Infliction of Emotional Distress

114.     Plaintiff Cowans hereby incorporates fully all of the foregoing as if set forth herein and further alleges as follows:

115.     LeBlanc, McLaughlin, Foilb, McCarthy, McDonough, Spellman and Doe Defendants intended to inflict emotional distress or should have known that emotional distress would have resulted from the falsification of evidence against Mr. Cowans and the wrongful arrest, prosecution and conviction resulting from that falsification.

116.     Defendants' conduct in falsifying evidence, failing to reveal exculpatory evidence and failing to investigate was beyond all possible bounds of decency.

117.     Defendants' conduct inflicted great emotional distress on Mr. Cowans by causing him to be imprisoned for nearly seven years, knowing that he had not committed the crimes in question.

118.     Because of this emotional distress, Mr. Cowans has suffered numerous debilitating physical, mental and emotional conditions including sleeplessness, paranoia and post-traumatic stress.

119.     A reasonable person in Mr. Cowans' situation, having suffered wrongful arrest, prosecution and conviction would have experienced emotional distress and Mr. Cowans has.

29

### Count X—State Tort Law
### Claims against Defendants LeBlanc, McLaughlin, Foilb, McCarthy, McDonough, Spellman, Gallagher, Doe Defendants, the City of Boston and the Boston Police Department for False Imprisonment

120.     Plaintiff Cowans hereby incorporates fully all of the foregoing as if set forth herein and further alleges as follows:

121.     Defendants LeBlanc, McLaughlin, Foilb, McCarthy, McDonough, Spellman, Gallagher, Doe Defendants, the City of Boston and the BPD intentionally caused Mr. Cowans to be wrongfully and unjustifiably imprisoned.

122.     As a proximate result of the defendants' conduct, Mr. Cowans was arrested, prosecuted, forced to endure an unfair trial and wrongful conviction, and wrongly imprisoned for nearly seven years.  He suffered the injuries and damages set forth above.

### Count XI—State Tort Law
### Claims against Defendant City of Boston and the Boston Police Department for Negligent Training and Supervision

123.     Plaintiff Cowans hereby incorporates fully all of the foregoing as if set forth herein and further alleges as follows:

124.     Defendants City of Boston and the Boston Police Department had a duty to Mr. Cowans to train and supervise its officers in proper law enforcement techniques.

125.     Defendants breached this duty by failing to train and supervise its officers adequately with regard to conducting proper investigations of crime, disclosing exculpatory and impeachment information to the prosecutor, and not fabricating evidence to support a prosecution.

126.    Defendants' negligent training and supervision of defendants LeBlanc,

McLaughlin, Foilb, McCarthy, McDonough, Spellman, Gallagher and Doe Defendants caused

those individual defendants to fabricate evidence, fail to investigate properly the case before

them and engage in the other affirmative acts and omissions set forth above, and therefore was

the direct and proximate cause of Mr. Cowans' wrongful arrest, prosecution, conviction, false

imprisonment and wrongful conviction.  All of these events and circumstances caused Mr.

Cowans to suffer the physical, emotional and pecuniary damages set forth above.

## CLAIMS FOR DAMAGES

127.    The defendants' actions deprived Mr. Cowans of his civil rights under the Fourth,

Fifth, Sixth, Eighth, Ninth and Fourteenth Amendments to the United States Constitution and

under the laws of the Commonwealth of Massachusetts.

128.    The defendants' unlawful, intentional, willful, purposeful, deliberately indifferent,

reckless, bad-faith and malicious acts, misdeeds and omissions caused Mr. Cowans to be falsely

arrested, maliciously prosecuted, unfairly tried, wrongfully convicted and wrongfully imprisoned

for nearly seven years, together with all of the other injuries and damages set forth above.

129.    All the alleged acts, misdeeds and omissions committed by the defendants

described herein for which liability is claimed were done intentionally, willfully, purposefully,

knowingly, unlawfully, maliciously, wantonly, recklessly, or with bad faith.  The proscribed

conduct of the individual defendants meets all of the standards for imposition of punitive

damages.

31

**WHEREFORE,** Stephan Cowans respectfully prays as follows:

A.  That the Court enter judgment in favor of Mr. Cowans and against the defendants on all Counts of the Complaint;

B.  That the Court award compensatory damages to Mr. Cowans and against the defendants, jointly and severally, in an amount to be determined at trial;

C.  That the Court award punitive damages to Mr. Cowans and against the non-municipal defendants, jointly and severally, in an amount to be determined at trial, in order that such an award will deter similar proscribed conduct in the future;

D.  That the Court award to Mr. Cowans and against the defendants, jointly and severally, pre-judgment and post-judgment interest on all sums awarded him in this action;

E.  That the Court award to Mr. Cowans and against the defendants, jointly and severally, recovery of his costs concerning this action, including reasonable attorneys' fees pursuant to 42 U.S.C. § 1988; and

F.  That the Court grant Mr. Cowans any such other relief to which he may be entitled.

RESPECTFULLY SUBMITTED,

STEPHAN COWANS

By his attorneys,

Joseph Savage (BBO# 443030)
R. David Hosp (BBO# 634091)
Erin N. Jackson (BBO# 647375)
Sheryl A. Koval (BBO# 657795)
Goodwin | Procter LLP
Exchange Place
53 State Street
Boston, MA 02109
(617) 570-1000

Robert N. Feldman (BBO# 630734)
Melissa M. Longo (BBO# 647649)
Birnbaum & Godkin, LLP
280 Summer Street
Boston, MA 02210
(617) 307-6100

Dated: July 27, 2005

LIBA/1554399.3

33

# EXHIBIT C

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.  05-11574 RGS

STEPHAN COWANS.,
    Plaintiffs,

v.

CITY OF BOSTON, BOSTON POLICE
DEPARTMENT, DONALD L. DEVINE,
ROBERT FOILB, GREGORY D.
GALLAGHER, DENNIS LEBLANC,
JOHN H. MCCARTHY, PAUL T.
MCDONOUGH, ROSEMARY
MCLOUGHLIN, HERBERT L.
SPELLMAN, and DOES 1-10
    Defendants.

## DEFENDANTS CITY OF BOSTON AND BOSTON POLICE DEPARTMENT'S ANSWER TO THE PLAINTIFF'S COMPLAINT WITH AFFIRMATIVE DEFENSES AND JURY DEMAND

NOW COMES the City of Boston and Boston Police Department[1] (hereinafter "Defendant City of Boston"), and hereby answers the Plaintiff's Complaint as follows:

## COMPLAINT

## INTRODUCTION

1.    The Defendant City of Boston considers paragraph one of the Complaint as introductory only and not requiring a response. To the extent that paragraph one contains factual allegations, the Defendant admits that Stephen Cowans was convicted of numerous crimes including armed assault with intent to murder Police Sergeant Gregory Gallagher, and alleges that it is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph one of the Complaint.

---

[1] The Plaintiff named both the City of Boston and its Police Department as defendants in his Complaint. The Boston Police Department is not a separate legal entity subject to lawsuits. Accordingly, a separate answer will not be filed on behalf of the Boston Police Department. See Curran v. City of Boston, 777 F. Supp. 116, 120 (D. Mass. 1991).

2.     The Defendant City of Boston considers paragraph two of the Complaint as
       introductory only and not requiring a response. To the extent that paragraph two
       contains factual allegations, the Defendant alleges that it is without knowledge or
       information sufficient to form a belief as to the truth of the allegations contained in
       paragraph two of the Complaint.

3.     The Defendant City of Boston considers paragraph three of the Complaint as
       introductory only and not requiring a response. To the extent that paragraph three
       contains factual allegations, the Defendant admits that the Boston Police Department
       Latent Print Unit was responsible for the collection and analysis of fingerprint
       evidence in the Cowans case, and alleges that it is without knowledge or information
       sufficient to form a belief as to the truth of the remaining allegations contained in
       paragraph three of the Complaint.

4.     The Defendant City of Boston considers paragraph four of the Complaint as
       introductory only and not requiring a response. To the extent that paragraph four
       contains factual allegations, the Defendant admits that Ron Smith & Associates
       produced a report dated March 8, 2004, and alleges that it is without knowledge or
       information sufficient to form a belief as to the truth of the allegations contained in
       paragraph four of the Complaint.

5.     The Defendant City of Boston considers paragraph five of the Complaint as
       introductory only and not requiring a response. To the extent that paragraph five
       contains factual allegations against it, the Defendant denies such allegations. To the
       extent that paragraph five contains factual allegations against other Defendants, the
       City alleges that it is without knowledge or information sufficient to form a belief as
       to the truth of such allegations.

6.     The Defendant City of Boston considers paragraph six of the Complaint as
       introductory only and not requiring a response. To the extent that paragraph six
       contains factual allegations against it, the Defendant denies such allegations. To the
       extent that paragraph six contains factual allegations against other Defendants, the
       City alleges that it is without knowledge or information sufficient to form a belief as
       to the truth of such allegations.

7.     The Defendant City of Boston considers paragraph seven of the Complaint as
       introductory only and not requiring a response. To the extent that paragraph seven
       contains factual allegations against it, the Defendant denies such allegations. To the
       extent that paragraph seven contains factual allegations against other Defendants, the
       City alleges that it is without knowledge or information sufficient to form a belief as
       to the truth of such allegations.

## JURISDICTION

8.    The Defendant City of Boston considers paragraph eight as a pure conclusion of law for which no response is required.  To the extent there are factual allegations deemed inherent in the jurisdictional statement, the same are denied.

## VENUE

9.    The Defendant City of Boston considers paragraph nine as a pure conclusion of law for which no response is required.  To the extent there are factual allegations deemed inherent in paragraph nine, the same are denied.

## PARTIES

10.   The Defendant City of Boston alleges that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph ten of the Complaint.

11.   The Defendant City of Boston admits the allegations contained in paragraph eleven of the Complaint.

12.   The Defendant City of Boston admits the allegations contained in paragraph twelve of the Complaint.

13.   The Defendant City of Boston admits that beginning August 11, 1997 Donald Devine had supervisory responsibility over the Latent Print Unit, and alleges that it is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph thirteen of the Complaint.

14.   The Defendant City of Boston admits that Robert Foilb was a sergeant in the Boston Police Department, and alleges that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph fourteen of the Complaint.

15.   The Defendant City of Boston admits that Gregory Gallagher was a sergeant in the Boston Police Department, and alleges that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph fifteen of the Complaint.

16.   The Defendant City of Boston admits that Dennis LeBlanc was a member of the Boston Police Department Identification Unit and was involved in the collection and analysis of evidence regarding latent fingerprints collected at the crime scene, and alleges that it is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph sixteen of the Complaint.

3

17.    The Defendant City of Boston admits that John McCarthy was a member of the Boston Police Department working in the Homicide Division and was involved in the investigation of the Cowans case, and alleges that it is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph seventeen of the Complaint.

18.    The Defendant City of Boston admits that Paul McDonough was a member of the Boston Police Department working in the Homicide Division and was involved in the investigation of the Cowans case, and alleges that it is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph eighteen of the Complaint.

19.    The Defendant City of Boston admits that Rosemary McLaughlin was a member of the Boston Police Department Identification Unit and was involved in the collection and analysis of evidence regarding latent fingerprints collected at the crime scene, and alleges that it is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph nineteen of the Complaint.

20.    The Defendant City of Boston admits that Herbert Spellman was a member of the Boston Police Department and had supervisory responsibility over the Homicide Division investigation and detectives who investigated the Cowans case, and alleges that it without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph twenty of the Complaint.

21.    The Defendant City of Boston alleges that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph twenty-one of the Complaint.

### JURY TRIAL AND DEMAND

22.    The Defendant City of Boston considers paragraph twenty-two as one for which no response is required.  To the extent there are factual allegations deemed inherent in paragraph twenty-two, the same are denied.

### FACTS

#### The Crime

23.    The Defendant City of Boston alleges that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph twenty-three of the Complaint.

24.    The Defendant City of Boston alleges that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph twenty-four of the Complaint.

25.    The Defendant City of Boston alleges that it is without knowledge or information
       sufficient to form a belief as to the truth of the allegations contained in paragraph
       twenty-five of the Complaint.

26.    The Defendant City of Boston alleges that it is without knowledge or information
       sufficient to form a belief as to the truth of the allegations contained in paragraph
       twenty-six of the Complaint.

27.    The Defendant City of Boston alleges that it is without knowledge or information
       sufficient to form a belief as to the truth of the allegations contained in paragraph
       twenty-seven of the Complaint.

28.    The Defendant City of Boston alleges that it is without knowledge or information
       sufficient to form a belief as to the truth of the allegations contained in paragraph
       twenty-eight of the Complaint.

29.    The Defendant City of Boston alleges that it is without knowledge or information
       sufficient to form a belief as to the truth of the allegations contained in paragraph
       twenty-nine of the Complaint.

30.    The Defendant City of Boston alleges that it is without knowledge or information
       sufficient to form a belief as to the truth of the allegations contained in paragraph
       thirty of the Complaint.

31.    The Defendant City of Boston alleges that it is without knowledge or information
       sufficient to form a belief as to the truth of the allegations contained in paragraph
       thirty-one of the Complaint.

32.    The Defendant City of Boston alleges that it is without knowledge or information
       sufficient to form a belief as to the truth of the allegations contained in paragraph
       thirty-two of the Complaint.

33.    The Defendant City of Boston alleges that it is without knowledge or information
       sufficient to form a belief as to the truth of the allegations contained in paragraph
       thirty-three of the Complaint.

34.    The Defendant City of Boston alleges that it is without knowledge or information
       sufficient to form a belief as to the truth of the allegations contained in paragraph
       thirty-four of the Complaint.

### The False Identification as Stephan Cowans' Fingerprint

35.    The Defendant City of Boston alleges that it is without knowledge or information
       sufficient to form a belief as to the truth of the allegations contained in paragraph
       thirty-five of the Complaint.

36.   The Defendant City of Boston alleges that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph thirty-six of the Complaint.

37.   The Defendant City of Boston alleges that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph thirty-seven of the Complaint.

38.   The Defendant City of Boston alleges that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph thirty-eight of the Complaint.

39.   The Defendant City of Boston alleges that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph thirty-nine of the Complaint.

40.   The Defendant City of Boston alleges that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph forty of the Complaint.

41.   The Defendant City of Boston alleges that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph forty-one of the Complaint.

42.   The Defendant City of Boston admits that Detectives John McCarthy, Paul McDonough, and Sergeant Detective Herbert L. Spellman investigated the shooting of Gregory Gallagher, but alleges that it is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph forty-two of the Complaint.

43.   The Defendant City of Boston admits that as part of the investigation into Gregory Gallagher's shooting, he interviewed with Sergeant Detective Kevin E. Waggett, but alleges that it is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph forty-three of the Complaint.

44.   The Defendant City of Boston alleges that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph forty-four of the Complaint.

45.   The Defendant City of Boston alleges that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph forty-five of the Complaint.

46.    The Defendant City of Boston alleges that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph forty-six of the Complaint.

47.    The Defendant City of Boston alleges that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph forty-seven of the Complaint.

48.    The Defendant City of Boston alleges that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph forty-eight of the Complaint.

49.    To the extent that paragraph forty-nine contains factual allegations against it, the Defendant City of Boston denies such allegations.  To the extent that paragraph forty-nine contains factual allegations against other Defendants, the City alleges that it is without knowledge or information sufficient to form a belief as to the truth of such allegations.

50.    The Defendant City of Boston alleges that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph fifty of the Complaint.

51.    The Defendant City of Boston alleges that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph fifty-one of the Complaint.

**Mr. Cowans' Exoneration**

52.    The Defendant City of Boston alleges that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph fifty-two of the Complaint.

53.    The Defendant City of Boston alleges that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph fifty-three of the Complaint.

54.    The Defendant City of Boston alleges that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph fifty-four of the Complaint.

55.    The Defendant City of Boston alleges that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph fifty-five of the Complaint.

56.     The Defendant City of Boston alleges that it is without knowledge or information
        sufficient to form a belief as to the truth of the allegations contained in paragraph
        fifty-six of the Complaint.

**The Internal Investigation of the Boston Police Department Identification Unit**

57.     The Defendant City of Boston admits that it hired Ron Smith & Associates to conduct
        and internal investigation, and alleges that it is without knowledge or information
        sufficient to form a belief as to the truth of the allegations contained in paragraph
        fifty-seven of the Complaint.

58.     The Defendant City of Boston alleges that it is without knowledge or information
        sufficient to form a belief as to the truth of the allegations contained in paragraph
        fifty-eight of the Complaint.

59.     The Defendant City of Boston admits that it received a report from Ron Smith &
        Associates dated March 8, 2004, and alleges that it is without knowledge or
        information sufficient to form a belief as to the truth of the allegations contained in
        paragraph fifty-nine of the Complaint.

60.     The Defendant City of Boston alleges that it is without knowledge or information
        sufficient to form a belief as to the truth of the allegations contained in paragraph
        sixty of the Complaint.

61.     The Defendant City of Boston alleges that it is without knowledge or information
        sufficient to form a belief as to the truth of the allegations contained in paragraph
        sixty-one of the Complaint.

62.     The Defendant City of Boston alleges that it is without knowledge or information
        sufficient to form a belief as to the truth of the allegations contained in paragraph
        sixty-two of the Complaint.

63.     The Defendant City of Boston alleges that it is without knowledge or information
        sufficient to form a belief as to the truth of the allegations contained in paragraph
        sixty-three of the Complaint.

64.     The Defendant City of Boston alleges that it is without knowledge or information
        sufficient to form a belief as to the truth of the allegations contained in paragraph
        sixty-four of the Complaint.

65.     The Defendant City of Boston alleges that it is without knowledge or information
        sufficient to form a belief as to the truth of the allegations contained in paragraph
        sixty-five of the Complaint.

66.     The Defendant City of Boston alleges that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph sixty-six of the Complaint.

67.     The Defendant City of Boston alleges that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph sixty-seven of the Complaint.

68.     The Defendant City of Boston alleges that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph sixty-eight of the Complaint.

69.     The Defendant City of Boston alleges that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph sixty-nine of the Complaint.

70.     The Defendant City of Boston alleges that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph seventy of the Complaint.

71.     The Defendant City of Boston alleges that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph seventy-one of the Complaint.

**Damages**

72.     The Defendant City of Boston denies that it acted in an unconstitutional manner, and alleges that it is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph seventy-two of the Complaint.

## CLAIMS

### Count I – 42 U.S.C. §1983

73-81. Paragraphs seventy-three through eighty-one contain allegations against Defendants other than the City of Boston, and therefore no response from the City of Boston is required. To the extent paragraphs seventy-three through eighty-one are construed to allege facts, Defendant City of Boston denies the same.

### Count II – 42 U.S.C. §1983
### Malicious Prosecution

82-88. Paragraphs eighty-two through eighty-eight contain allegations against Defendants other than the City of Boston, and therefore no response from the City of Boston is required. To the extent paragraphs eighty-two through eighty-eight are construed to allege facts, Defendant City of Boston denies the same.

### Count III – 42 U.S.C. §1983
### Monell Claim

89. The Defendant City of Boston repeats and incorporates its answers to paragraphs one through eighty-eight.

90. The Defendant City of Boston denies the allegations contained in paragraph ninety of the Complaint.

91. The Defendant City of Boston denies the allegations contained in paragraph ninety-one of the Complaint.

92. The Defendant City of Boston denies the allegations contained in paragraph ninety-two of the Complaint.

### Count IV – 42 U.S.C. §1983
### Supervisory Liability Claims

93-95. Paragraphs ninety-three through ninety-five contain allegations against Defendants other than City of Boston, and therefore no response from City of Boston is required. To the extent that paragraphs ninety-three through ninety-five are construed to allege facts, Defendant City of Boston denies the same.

### Count V – 42 U.S.C. §1983
### Conspiracy Claims

96-100. Paragraphs ninety-six through one hundred contain allegations against Defendants other than City of Boston, and therefore no response from City of Boston is required. To the extent that paragraphs ninety-three through ninety-five are construed to allege facts, Defendant City of Boston denies the same.

### Count VI – State Tort Law
### Malicious Prosecution and Abuse of Process

101-105. Paragraphs one hundred one through one hundred five contain allegations against Defendants other than City of Boston, and therefore no response from City of Boston is required. To the extent that paragraphs one hundred one through one hundred five are construed to allege facts, Defendant City of Boston denies the same.

## Count VIII – State Tort Law
### Negligent Infliction of Emotional Distress

106-113. Paragraphs one hundred six through one hundred thirteen contain allegations against Defendants other than the City of Boston, and therefore no response from the City of Boston is required. To the extent that paragraphs one hundred six through one hundred thirteen are construed to allege facts, Defendant City of Boston denies the same.

## Count IX – State Tort Law
### Intentional Infliction of Emotional Distress

114-119. Paragraphs one hundred fourteen through one hundred nineteen contain allegations against Defendants other than City of Boston, and therefore no response from City of Boston is required. To the extent that paragraphs one hundred fourteen through one hundred nineteen are construed to allege facts, Defendant City of Boston denies the same.

## Count X – State Tort Law
### False Imprisonment

120.    The Defendant City of Boston repeats and incorporates its answers to paragraphs one through one-hundred nineteen and states that it cannot be held liable for the intentional torts of its employees.

121.    The Defendant City of Boston denies the allegations contained in paragraph one-hundred and twenty-one of the Complaint.

122.    The Defendant City of Boston denies the allegations contained in paragraph one-hundred and twenty-two of the Complaint.

## Count XI – State Tort Law
### Negligent Training and Supervision

123.    The Defendant City of Boston repeats and incorporates its answers to paragraphs one through one-hundred twenty-three.

124.    The Defendant City of Boston denies the allegations contained in paragraph one-hundred and twenty-four of the Complaint.

125.    The Defendant City of Boston denies the allegations contained in paragraph one-hundred and twenty-five of the Complaint.

126.    The Defendant City of Boston denies the allegations contained in paragraph one-hundred and twenty-six of the Complaint.

## CLAIMS FOR DAMAGES

127.    The Defendant City of Boston denies the allegations contained in paragraph one-hundred and twenty-seven of the Complaint.

128.    The Defendant City of Boston denies the allegations contained in paragraph one-hundred and twenty-eight of the Complaint.

129.    The Defendant City of Boston denies the allegations contained in paragraph one-hundred and twenty-nine of the Complaint.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

The Defendant City of Boston states that the injury or damage alleged in Plaintiff's Complaint was neither caused nor proximately caused by the Defendant City of Boston.

### Second Affirmative Defense

The Defendant City of Boston states that the Plaintiff's Complaint fails to state a claim upon which relief may be granted.

### Third Affirmative Defense

The Defendant City of Boston states that the injuries and damages alleged were caused by a person or entity over whom the Defendant City of Boston has no responsibility or control.

### Fourth Affirmative Defense

The Defendant City of Boston states that the injuries and damages alleged were caused by the Plaintiff's own intentional conduct and not the conduct of the Defendant City of Boston.

### Fifth Affirmative Defense

The Defendant City of Boston states that the Plaintiff has not been deprived of any rights secured by either the Constitution or the laws of the United States or Commonwealth of Massachusetts.

<u>Sixth Affirmative Defense</u>

The Defendant City of Boston states that the complaint fails to state a claim upon which relief can be granted pursuant to 42 U.S.C. §1983 because it fails to show any factual connection between alleged, unconstitutional custom, policy or practice of the City and the violation of the Plaintiff's constitutional rights.

<u>Seventh Affirmative Defense</u>

The Defendant City of Boston states that at all times relevant hereto, the City of Boston acted in accordance with all relevant laws of the United States and the Commonwealth of Massachusetts.

<u>Eighth Affirmative Defense</u>

The Defendant City of Boston states that it is a municipality against which punitive damages may not be assessed.

<u>Ninth Affirmative Defense</u>

The Defendant City of Boston states that it cannot be held liable for the intentional torts of its employees pursuant to M.G.L.A. ch. 258.

**<u>Jury Claim</u>**

The Defendant City of Boston hereby demands a trial by jury on all counts and causes of action.

DEFENDANT, CITY OF BOSTON
Merita A. Hopkins
Corporation Counsel
By its attorneys,


/s/ Thomas R. Donohue

Stephen G. Cox - BBO# 566943
Thomas R. Donohue - BBO# 643483
Assistant Corporation Counsel
City of Boston Law Department
Room 615, City Hall
Boston, MA 02201
(617) 635-4064 - Cox
(617) 635-4039 - Donohue

# EXHIBIT D

**GOODWIN | PROCTER**

R. David Hosp
617.570.1089
rhosp@
goodwinprocter.com

Goodwin Procter LLP
Counsellors at Law
Exchange Place
Boston, MA 02109
T: 617.570.1000
F: 617.523.1231

October 21, 2005

**By Facsimile**

Thomas Donahue, Esq.
Stephen Cox, Esq.
City of Boston Law Department
City Hall Plaza
Boston, MA 02201

Re:    **Stephan Cowans v. City of Boston, et. al.**
         **(D. Mass. Civ. No. 05-11574-RGS)**

Dear Mr. Donahue and Mr. Cox:

I write in regard to the City of Boston ("City") and the Boston Police Department ("BPD")'s Answer to Mr. Cowan's Complaint, which was filed on September 22, 2005. The Answer provided by the City is grossly deficient and we request that you supplement your answers no later than November 4, 2005.

Under Fed. R. Civ. P. 11, in presenting information to the court in the form of a pleading, the attorney certifying the pleading is required to make a reasonable inquiry into all circumstances of the case and provide information based on that inquiry. More specifically, the attorney is certifying that denials of factual contentions are warranted on the evidence or are reasonably based on a lack of information or belief.

It does not appear that a reasonable inquiry was made in this case. The repeated response that they City "is without knowledge or information sufficient to form a belief as to the truth of the allegations" contained in the Complaint is, at points, not credible. For example, in response to Mr. Cowan's allegations regarding the parties to this lawsuit, while the City acknowledges that the various defendants have been employed by the BPD, it cannot "form a belief as to the truth" of the role of any of these individuals in the investigation into the shooting of Sergeant Gallagher. The City's claim that it has no information in its possession that would reveal the responsibilities of their officers on an investigation into the attempted murder of a police officer seems illogical in light of the fact that it employed and supervised these officers.

Furthermore, with regard to the factual allegations, the City makes equally startling assertions that it is without knowledge or information to form a belief regarding the truth or falsity of the allegations. The following are just a few of the many examples of the City's deficient responses:

First, the City claims to have no information upon which to form a belief about allegations concerning the basic circumstances surrounding the shooting of Sergeant Gallagher, alleged in

# GOODWIN | PROCTER

Thomas Donahue
October 21, 2005
Page 2

paragraphs 23 through 34 of the Complaint. This information was obtained by Mr. Cowans directly from BPD police reports, yet the City claims it cannot comment on its own records.

Second, the City claims to have no knowledge or information concerning the identification of Mr. Cowans' fingerprint as that of the perpetrator, alleged in paragraphs 35 through 51 of the Complaint.[1] The City conducted this analysis and investigation, yet the City fails to even admit that Mr. Cowans was identified as the source of the fingerprint on the glass mug, that witnesses were interviewed or even what Mr. Cowans sentence was and where he was incarcerated.

Third, the City states it is without knowledge or information regarding the circumstances of Mr. Cowan's exoneration, alleged in paragraphs 52 through 71 of the Complaint. These allegations are based on findings contained in the March 8, 2004 report of Ron Smith & Associates – a report which was created for and as a result of an investigation commenced at the direction of the BPD. The City admits it received this report, but cannot "form a belief" as to its contents. The City and the BPD shut down the Identification and Latent Print Units of the BPD as a result of Ron Smith & Associates findings, but somehow feels it is reasonable to claim it is "without information or belief" as to any of the findings of that report. These statements are unrealistic and unjustifiable in light of the fact that the City is in possession and control of extensive information relevant to the Gallagher investigation, the identification of the perpetrator's fingerprint and the investigation by Ron Smith & Associates.

The above are mere examples of the many ways in which the City's answer fails to satisfy the reasonable inquiry requirements of Fed. R. Civ. P. 11. Therefore, we ask that the City supplement its answer by November 4, 2005.

Thank you for your attention to this matter.

Very Truly Yours,

R. David Hosp

cc:    Joseph F. Savage Jr.
       Sheryl A. Koval

---

[1] The City attempts to admit part of Paragraph 43 of the Complaint, but the answer is completely unintelligible.

# EXHIBIT E

## Hosp, R David

| | |
|---|---|
| **From:** | Donohue, Thomas [Thomas.Donohue@cityofboston.gov] |
| **Sent:** | Thursday, November 03, 2005 12:19 PM |
| **To:** | Hosp, R David |
| **Cc:** | Cox, Stephen |
| **Subject:** | Cowans v. COB et al |

Mr. Hosp,

I'm writing in response to your fax dated October 21, 2005, requesting that the City amend its answer to Mr. Cowans' complaint. Steve Cox and I reviewed the issue and agree that the City's answer should be amended. However, in order to provide a meaningful amended answer, maybe it is necessary for us to first review the many documents in our possession. Further, we rely on the police department to provide us with documents and anticipate receiving more. As we have begun to respond to Mr. Cownas' discovery requests, I suggest that the City amend its answer at the time it responds to discovery.

I attempted to contact you earlier today regarding this issue. Please call me when you have a chance - I have deposition at 2:00 this afternoon.

Best,
Tom Donohue
(617) 635-4039

# EXHIBIT F

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-11574 RGS

STEPHAN COWANS.,
        Plaintiffs,

v.

CITY OF BOSTON, BOSTON POLICE
DEPARTMENT, DONALD L. DEVINE,
ROBERT FOILB, GREGORY D.
GALLAGHER, DENNIS LEBLANC,
JOHN H. MCCARTHY, PAUL T.
MCDONOUGH, ROSEMARY
MCLOUGHLIN, HERBERT L.
SPELLMAN, and DOES 1-10
        Defendants.

## AMENDED ANSWER

## FILED ON BEHALF OF DEFENDANT CITY OF BOSTON

   NOW COMES the City of Boston and hereby files the following AMENDED
ANSWER to the Plaintiff's Complaint as follows:

## INTRODUCTION

1.   The Defendant City of Boston considers paragraph one of the Complaint as
     introductory only and not requiring a response. To the extent that paragraph one
     contains factual allegations, the Defendant admits that Stephen Cowans was
     convicted of numerous crimes including armed assault with intent to murder Police
     Sergeant Gregory Gallagher, and alleges that it is without knowledge or information
     sufficient to form a belief as to the truth of the remaining allegations contained in
     paragraph one of the Complaint.

AMENDED ANSWER ¶ 1

     Defendant incorporates the substance of its initial answer, and further answering,
     admits that plaintiff's conviction was vacated on the grounds of actual innocence, and
     that the District Attorney stated that the fingerprint evidence presented against him at
     trial falsely implicated plaintiff.

2.     The Defendant City of Boston considers paragraph two of the Complaint as
       introductory only and not requiring a response. To the extent that paragraph two
       contains factual allegations, the Defendant alleges that it is without knowledge or
       information sufficient to form a belief as to the truth of the allegations contained in
       paragraph two of the Complaint.

3.     The Defendant City of Boston considers paragraph three of the Complaint as
       introductory only and not requiring a response. To the extent that paragraph three
       contains factual allegations, the Defendant admits that the Boston Police Department
       Latent Print Unit was responsible for the collection and analysis of fingerprint
       evidence in the Cowans case, and alleges that it is without knowledge or information
       sufficient to form a belief as to the truth of the remaining allegations contained in
       paragraph three of the Complaint.

AMENDED ANSWER ¶ 3

       Defendant incorporates the substance of its initial answer, and further answering,
       admits that it commissioned an assessment of the Latent Print unit by fingerprint
       experts subsequent to learning that the fingerprint evidence presented against plaintiff
       was false.

4.     The Defendant City of Boston considers paragraph four of the Complaint as
       introductory only and not requiring a response.  To the extent that paragraph four
       contains factual allegations, the Defendant admits that Ron Smith & Associates
       produced a report dated March 8, 2004, and alleges that it is without knowledge or
       information sufficient to form a belief as to the truth of the allegations contained in
       paragraph four of the Complaint.

AMENDED ANSWER ¶ 4

       Defendant incorporates the substance of its initial answer, and further answering,
       states that the report issued by Ron Smith and Associates speaks for itself.

5.     The Defendant City of Boston considers paragraph five of the Complaint as
       introductory only and not requiring a response.  To the extent that paragraph five
       contains factual allegations against it, the Defendant denies such allegations.  To the
       extent that paragraph five contains factual allegations against other Defendants, the
       City alleges that it is without knowledge or information sufficient to form a belief as
       to the truth of such allegations.

AMENDED ANSWER ¶ 5

The allegations of this paragraph contain conclusions of law to which no responsive pleading is required. To the extent the allegations contained therein purport to state a claim against the municipal defendant, those allegations are denied.

6.     The Defendant City of Boston considers paragraph six of the Complaint as introductory only and not requiring a response. To the extent that paragraph six contains factual allegations against it, the Defendant denies such allegations. To the extent that paragraph six contains factual allegations against other Defendants, the City alleges that it is without knowledge or information sufficient to form a belief as to the truth of such allegations.

AMENDED ANSWER ¶ 6

Defendant incorporates the substance of its initial answer, and further answering, admits that all officers investigating the attempted murder of Sergeant Gallagher did so under color of law. Defendant further admits that the fingerprint procedures and identification utilized in the investigation were erroneous. Defendant denies the remaining allegations of this paragraph.

7.     The Defendant City of Boston considers paragraph seven of the Complaint as introductory only and not requiring a response. To the extent that paragraph seven contains factual allegations against it, the Defendant denies such allegations. To the extent that paragraph seven contains factual allegations against other Defendants, the City alleges that it is without knowledge or information sufficient to form a belief as to the truth of such allegations.


**JURISDICTION**

8.     The Defendant City of Boston considers paragraph eight as a pure conclusion of law for which no response is required. To the extent there are factual allegations deemed inherent in the jurisdictional statement, the same are denied.

**VENUE**

9.     The Defendant City of Boston considers paragraph nine as a pure conclusion of law for which no response is required. To the extent there are factual allegations deemed inherent in paragraph nine, the same are denied.

## PARTIES

10.  The Defendant City of Boston alleges that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph ten of the Complaint.

11.  The Defendant City of Boston admits the allegations contained in paragraph eleven of the Complaint.

12.  The Defendant City of Boston admits the allegations contained in paragraph twelve of the Complaint.

13.  The Defendant City of Boston admits that beginning August 11, 1997 Donald Devine had supervisory responsibility over the Latent Print Unit, and alleges that it is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph thirteen of the Complaint.

AMENDED ANSWER ¶ 13

Defendant denies that Donald Devine had supervisory authority over the Bureau of Investigative Services (hereafter "BIS") at all times relevant to this action, and denies that Devine was a "Deputy Superintendent" of the BIS at any time. Further answering, defendant states that Devine was named Superintendent of BIS on August 11, 1997 and remained in this position until January 24, 2000. Defendant admits that during the period Devine was the Superintendent of BIS, he was the commander of the BIS, and admits that the Latent Print Unit fell within this Bureau's responsibilities. To the extent this paragraph purports to allege that Devine had direct supervisory responsibility over the Unit, those allegations are denied.

14.  The Defendant City of Boston admits that Robert Foilb was a sergeant in the Boston Police Department, and alleges that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph fourteen of the Complaint.

AMENDED ANSWER ¶ 14

Defendant adopts the substance of its initial answer, and further answering, states that to the extent the allegations of paragraph 14 purport to allege that Foilb was the direct supervisor of the Latent Print Unit, those allegations are denied.

15.  The Defendant City of Boston admits that Gregory Gallagher was a sergeant in the Boston Police Department, and alleges that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph fifteen of the Complaint.

4

AMENDED ANSWER ¶ 15

>    Defendant adopts the substance of its initial answer, and further answering states that
>    to the extent the allegations of this paragraph purport to allege that, as a result of his
>    position as a Boston Police Sergeant, Gallagher had a legal duty to investigate the
>    identity of the perpetrator who shot him, those allegations are denied. Further
>    answering, to the extent the allegations of this paragraph suggest or imply that
>    Gallagher willfully misidentified Cowans, those allegations are denied.

16.    The Defendant City of Boston admits that Dennis LeBlanc was a member of the
        Boston Police Department Identification Unit and was involved in the collection and
        analysis of evidence regarding latent fingerprints collected at the crime scene, and
        alleges that it is without knowledge or information sufficient to form a belief as to the
        truth of the remaining allegations contained in paragraph sixteen of the Complaint.

AMENDED ANSWER ¶ 16

>    Defendant adopts the substance of its initial answer, and further answering admits
>    that LeBlanc testified in the criminal case brought against Cowans. Defendant is
>    without knowledge or information sufficient to form a belief as to the remaining
>    allegations in this paragraph.

17.    The Defendant City of Boston admits that John McCarthy was a member of the
        Boston Police Department working in the Homicide Division and was involved in the
        investigation of the Cowans case, and alleges that it is without knowledge or
        information sufficient to form a belief as to the truth of the remaining allegations
        contained in paragraph seventeen of the Complaint.

AMENDED ANSWER ¶ 17

>    Defendant adopts the substance of its initial answer, and further answering states that
>    the terms "primary responsibility" and "directly involved" are undefined and too
>    vague to admit an intelligent response. Defendant denies that McCarthy was
>    "directly involved in the collection, analysis and provision of evidence and testimony
>    at trial that was used to convict Mr. Cowans."

18.    The Defendant City of Boston admits that Paul McDonough was a member of the
        Boston Police Department working in the Homicide Division and was involved in the
        investigation of the Cowans case, and alleges that it is without knowledge or
        information sufficient to form a belief as to the truth of the remaining allegations
        contained in paragraph eighteen of the Complaint.

AMENDED ANSWER ¶ 18

Defendant adopts the substance of its initial answer, and further answering states that the terms "primary responsibility" and "directly involved" are undefined and too vague to admit an intelligent response. Defendant denies that McDonough was "directly involved in the collection, analysis and provision of evidence and testimony at trial that was used to convict Mr. Cowans."

19.    The Defendant City of Boston admits that Rosemary McLaughlin was a member of the Boston Police Department Identification Unit and was involved in the collection and analysis of evidence regarding latent fingerprints collected at the crime scene, and alleges that it is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph nineteen of the Complaint.

AMENDED ANSWER ¶ 19

Defendant adopts the substance of its initial answer, and further answering admits that McLaughlin testified in the criminal case brought against Cowans. Defendant is without knowledge or information sufficient to form a belief as to the remaining allegations in this paragraph.

20.    The Defendant City of Boston admits that Herbert Spellman was a member of the Boston Police Department and had supervisory responsibility over the Homicide Division investigation and detectives who investigated the Cowans case, and alleges that it without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph twenty of the Complaint.

AMENDED ANSWER ¶ 20

Defendant adopts the substance of its initial answer, and further answering denies that Spellman "oversaw the detectives who collected, analyzed and provided evidence and testimony at trial that was used to convict Mr. Cowans."

21.    The Defendant City of Boston alleges that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph twenty-one of the Complaint.

## JURY TRIAL AND DEMAND

22.    The Defendant City of Boston considers paragraph twenty-two as one for which no response is required. To the extent there are factual allegations deemed inherent in paragraph twenty-two, the same are denied.

6

## FACTS

### The Crime

23.    The Defendant City of Boston alleges that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph twenty-three of the Complaint.

24.    The Defendant City of Boston alleges that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph twenty-four of the Complaint.

25.    The Defendant City of Boston alleges that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph twenty-five of the Complaint.

26.    The Defendant City of Boston alleges that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph twenty-six of the Complaint.

27.    The Defendant City of Boston alleges that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph twenty-seven of the Complaint.

28.    The Defendant City of Boston alleges that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph twenty-eight of the Complaint.

29.    The Defendant City of Boston alleges that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph twenty-nine of the Complaint.

AMENDED ANSWER, ¶¶ 23 – 29

Defendant states that the police reports referenced speak for themselves.

30.    The Defendant City of Boston alleges that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph thirty of the Complaint.

31.    The Defendant City of Boston alleges that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph thirty-one of the Complaint.

AMENDED ANSWER ¶ 31

    Defendant states that the police reports referenced speak for themselves.

32.    The Defendant City of Boston alleges that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph thirty-two of the Complaint.

AMENDED ANSWER ¶ 32

    Defendant states that the police reports referenced speak for themselves, and further answering, admits that the perpetrator has not been identified.

33.    The Defendant City of Boston alleges that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph thirty-three of the Complaint.

AMENDED ANSWER ¶ 33

    Defendant states that the police reports referenced speak for themselves.

34.    The Defendant City of Boston alleges that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph thirty-four of the Complaint.

**The False Identification as Stephan Cowans' Fingerprint**

35.    The Defendant City of Boston alleges that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph thirty-five of the Complaint.

AMENDED ANSWER ¶ 35

    Defendant states that the police reports referenced speak for themselves.

36.    The Defendant City of Boston alleges that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph thirty-six of the Complaint.

AMENDED ANSWER ¶ 36

    Defendant admits that McLaughlin, LeBlanc collected fingerprint evidence at the crime scene and admits that a glass mug was collected as evidence. Defendant admits

that Foilb was a supervisor in the Latent Print Unit, but to the extent the allegations in this paragraph purport to allege that Foilb supervised the physical collection of the fingerprint evidence at the scene, those allegations are denied.

37.    The Defendant City of Boston alleges that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph thirty-seven of the Complaint.

AMENDED ANSWER ¶ 37

Defendant admits that Callahan collected fingerprints from members of the Lacy household, and admits that "elimination prints" are generally understood to be prints taken of known donors for comparison to fingerprint evidence taken from a crime scene.

38.    The Defendant City of Boston alleges that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph thirty-eight of the Complaint.

AMENDED ANSWER ¶ 38

Defendant states that the police reports and transcripts referenced speak for themselves.

39.    The Defendant City of Boston alleges that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph thirty-nine of the Complaint.

40.    The Defendant City of Boston alleges that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph forty of the Complaint.

AMENDED ANSWER ¶ 40

Defendant states that the police reports and transcripts referenced speak for themselves.  Further answering, defendant states that the remaining allegations in this paragraph are too vague and conjectural to allow for intelligent response.

41.    The Defendant City of Boston alleges that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph forty-one of the Complaint.

AMENDED ANSWER ¶ 41

> Defendant states that the police reports speak for themselves. Further answering, defendant states that subsequent review of the fingerprint evidence establishes that the identification of Cowans as the source for the fingerprints recovered in the Lacy home was erroneous. Defendant admits that LeBlanc indicated that the recovered print was Cowans', and that McLaughlin confirmed this. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.

42.    The Defendant City of Boston admits that Detectives John McCarthy, Paul McDonough, and Sergeant Detective Herbert L. Spellman investigated the shooting of Gregory Gallagher, but alleges that it is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph forty-two of the Complaint.

AMENDED ANSWER ¶ 42

> Defendant states that the police reports referenced speak for themselves. Further answering, defendant states that the allegations contained in the second sentence of paragraph 42 are too vague to allow an intelligent response; to the extent these allegations suggest that McCarthy, McDonough, Spellman and /or unnamed officers had either the duty to discover that the fingerprint identification was erroneous or knew or should have known of same, those allegations are denied. Defendant denies the allegations contained in the third sentence of this paragraph.

43.    The Defendant City of Boston admits that as part of the investigation into Gregory Gallagher's shooting, he interviewed with Sergeant Detective Kevin E. Waggett, but alleges that it is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph forty-three of the Complaint.

AMENDED ANSWER ¶ 43

> Defendant admits that a number of individuals were interviewed regarding the shooting of Sergeant Gallagher, including Gallagher, Lacy and Bryant McEwen; defendant admits that Sergeant Detective Kevin Waggett was among those interviewing witnesses.

44.    The Defendant City of Boston alleges that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph forty-four of the Complaint.

AMENDED ANSWER ¶ 44

    Defendant states that the police reports referenced speak for themselves. Further answering, defendant states that a photo array was shown to witnesses, and that Lacy, McEwens, and Pitre did not make an identification; Gallagher made a partial identification.

45.    The Defendant City of Boston alleges that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph forty-five of the Complaint.

AMENDED ANSWER ¶ 45

    Defendant states the police reports referenced speak for themselves.

46.    The Defendant City of Boston alleges that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph forty-six of the Complaint.

AMENDED ANSWER ¶ 46

    Denied.

47.    The Defendant City of Boston alleges that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph forty-seven of the Complaint.

AMENDED ANSWER ¶ 47

    Defendant states that the police reports referenced speak for themselves; further answering, defendant admits that neither Lacy nor the McEwens identified Cowans as the perpetrator. The remaining allegations in this paragraph are denied.

48.    The Defendant City of Boston alleges that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph forty-eight of the Complaint.

AMENDED ANSWER ¶ 48

    Admitted.

49.     To the extent that paragraph forty-nine contains factual allegations against it, the Defendant City of Boston denies such allegations.  To the extent that paragraph forty-nine contains factual allegations against other Defendants, the City alleges that it is without knowledge or information sufficient to form a belief as to the truth of such allegations.

## AMENDED ANSWER ¶ 49

Defendant denies that McCarthy and McDonough "actively concealed the fact that the fingerprint identified as belonging to Stephan Cowans did not, in fact, belong to Mr. Cowans and presented false evidence to the contrary at trial." Defendant is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 49.

50.     The Defendant City of Boston alleges that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph fifty of the Complaint.

## AMENDED ANSWER ¶ 50

Admitted.

51.     The Defendant City of Boston alleges that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph fifty-one of the Complaint.

### Mr. Cowans' Exoneration

52.     The Defendant City of Boston alleges that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph fifty-two of the Complaint.

53.     The Defendant City of Boston alleges that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph fifty-three of the Complaint.

54.     The Defendant City of Boston alleges that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph fifty-four of the Complaint.

55.     The Defendant City of Boston alleges that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph fifty-five of the Complaint.

AMENDED ANSWER ¶ 55

    Defendant admits that DNA testing performed on the sweatshirt and cap left by the perpetrator, and on the glass mug, do not match Cowans. Defendant also admits that the fingerprint on the mug actually belonged to Bryant McEwen and not Stephan Cowans.

56.    The Defendant City of Boston alleges that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph fifty-six of the Complaint.

AMENDED ANSWER ¶ 56

    Defendant admits that Cowans was released from prison and his conviction vacated on grounds of actual innocence, and that he had been in prison for crimes he did not commit. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

**The Internal Investigation of the Boston Police Department Identification Unit**

57.    The Defendant City of Boston admits that it hired Ron Smith & Associates to conduct and internal investigation, and alleges that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph fifty-seven of the Complaint.

AMENDED ANSWER ¶ 57

    Defendant admits that the City hired Ron Smith & Associates to conduct a review of the Latent Print Unit. Defendant denies that this review was an "internal investigation."

58.    The Defendant City of Boston alleges that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph fifty-eight of the Complaint.

59.    The Defendant City of Boston admits that it received a report from Ron Smith & Associates dated March 8, 2004, and alleges that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph fifty-nine of the Complaint.

13

AMENDED ANSWER ¶ 59

      Admitted.

60.    The Defendant City of Boston alleges that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph sixty of the Complaint.

61.    The Defendant City of Boston alleges that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph sixty-one of the Complaint.

62.    The Defendant City of Boston alleges that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph sixty-two of the Complaint.

63.    The Defendant City of Boston alleges that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph sixty-three of the Complaint.

64.    The Defendant City of Boston alleges that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph sixty-four of the Complaint.

65.    The Defendant City of Boston alleges that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph sixty-five of the Complaint.

66.    The Defendant City of Boston alleges that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph sixty-six of the Complaint.

67.    The Defendant City of Boston alleges that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph sixty-seven of the Complaint.

68.    The Defendant City of Boston alleges that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph sixty-eight of the Complaint.

69.    The Defendant City of Boston alleges that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph sixty-nine of the Complaint.

70.     The Defendant City of Boston alleges that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph seventy of the Complaint.

71.     The Defendant City of Boston alleges that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph seventy-one of the Complaint.

AMENDED ANSWER ¶ ¶ 60 – 71

      Defendant states that the March 8, 2004 Smith & Associates Report speaks for itself.

### Damages

72.     The Defendant City of Boston denies that it acted in an unconstitutional manner, and alleges that it is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph seventy-two of the Complaint.

## CLAIMS

### Count I – 42 U.S.C. §1983

73-81. Paragraphs seventy-three through eighty-one contain allegations against Defendants other than the City of Boston, and therefore no response from the City of Boston is required. To the extent paragraphs seventy-three through eighty-one are construed to allege facts, Defendant City of Boston denies the same.

### Count II – 42 U.S.C. §1983
### Malicious Prosecution

82-88. Paragraphs eighty-two through eighty-eight contain allegations against Defendants other than the City of Boston, and therefore no response from the City of Boston is required. To the extent paragraphs eighty-two through eighty-eight are construed to allege facts, Defendant City of Boston denies the same.

### Count III – 42 U.S.C. §1983
### Monell Claim

89.     The Defendant City of Boston repeats and incorporates its answers to paragraphs one through eighty-eight.

90.     The Defendant City of Boston denies the allegations contained in paragraph ninety of the Complaint.

91.     The Defendant City of Boston denies the allegations contained in paragraph ninety-one of the Complaint.

92.     The Defendant City of Boston denies the allegations contained in paragraph ninety-two of the Complaint.

### Count IV – 42 U.S.C. §1983
### Supervisory Liability Claims

93-95.   Paragraphs ninety-three through ninety-five contain allegations against Defendants other than City of Boston, and therefore no response from City of Boston is required. To the extent that paragraphs ninety-three through ninety-five are construed to allege facts, Defendant City of Boston denies the same.

### Count V – 42 U.S.C. §1983
### Conspiracy Claims

96-100.   Paragraphs ninety-six through one hundred contain allegations against Defendants other than City of Boston, and therefore no response from City of Boston is required. To the extent that paragraphs ninety-three through ninety-five are construed to allege facts, Defendant City of Boston denies the same.

### Count VI – State Tort Law
### Malicious Prosecution and Abuse of Process

101-105.   Paragraphs one hundred one through one hundred five contain allegations against Defendants other than City of Boston, and therefore no response from City of Boston is required. To the extent that paragraphs one hundred one through one hundred five are construed to allege facts, Defendant City of Boston denies the same.

### Count VIII – State Tort Law
### Negligent Infliction of Emotional Distress

106-113.   Paragraphs one hundred six through one hundred thirteen contain allegations against Defendants other than the City of Boston, and therefore no response from the City of Boston is required. To the extent that paragraphs one hundred six through one hundred thirteen are construed to allege facts, Defendant City of Boston denies the same.

### Count IX – State Tort Law
### Intentional Infliction of Emotional Distress

114-119.   Paragraphs one hundred fourteen through one hundred nineteen contain allegations against Defendants other than City of Boston, and therefore no response from City of Boston is required. To the extent that paragraphs one hundred fourteen through one hundred nineteen are construed to allege facts, Defendant City of Boston denies the same.

**Count X – State Tort Law**
**False Imprisonment**

120.   The Defendant City of Boston repeats and incorporates its answers to paragraphs one through one-hundred nineteen and states that it cannot be held liable for the intentional torts of its employees.

121.   The Defendant City of Boston denies the allegations contained in paragraph one-hundred and twenty-one of the Complaint.

122.   The Defendant City of Boston denies the allegations contained in paragraph one-hundred and twenty-two of the Complaint.

**Count XI – State Tort Law**
**Negligent Training and Supervision**

123.   The Defendant City of Boston repeats and incorporates its answers to paragraphs one through one-hundred twenty-three.

124.   The Defendant City of Boston denies the allegations contained in paragraph one-hundred and twenty-four of the Complaint.

125.   The Defendant City of Boston denies the allegations contained in paragraph one-hundred and twenty-five of the Complaint.

126.   The Defendant City of Boston denies the allegations contained in paragraph one-hundred and twenty-six of the Complaint.

**CLAIMS FOR DAMAGES**

127.   The Defendant City of Boston denies the allegations contained in paragraph one-hundred and twenty-seven of the Complaint.

128.   The Defendant City of Boston denies the allegations contained in paragraph one-hundred and twenty-eight of the Complaint.

129.   The Defendant City of Boston denies the allegations contained in paragraph one-hundred and twenty-nine of the Complaint.

17

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

The Defendant City of Boston states that the injury or damage alleged in Plaintiff's Complaint was neither caused nor proximately caused by the Defendant City of Boston.

### Second Affirmative Defense

The Defendant City of Boston states that the Plaintiff's Complaint fails to state a claim upon which relief may be granted.

### Third Affirmative Defense

The Defendant City of Boston states that the injuries and damages alleged were caused by a person or entity over whom the Defendant City of Boston has no responsibility or control.

### Fourth Affirmative Defense

The Defendant City of Boston states that the injuries and damages alleged were caused by the Plaintiff's own intentional conduct and not the conduct of the Defendant City of Boston.

### Fifth Affirmative Defense

The Defendant City of Boston states that the Plaintiff has not been deprived of any rights secured by either the Constitution or the laws of the United States or Commonwealth of Massachusetts.

### Sixth Affirmative Defense

The Defendant City of Boston states that the complaint fails to state a claim upon which relief can be granted pursuant to 42 U.S.C. §1983 because it fails to show any factual connection between alleged, unconstitutional custom, policy or practice of the City and the violation of the Plaintiff's constitutional rights.

### Seventh Affirmative Defense

The Defendant City of Boston states that at all times relevant hereto, the City of Boston acted in accordance with all relevant laws of the United States and the Commonwealth of Massachusetts.

<u>Eighth Affirmative Defense</u>

The Defendant City of Boston states that it is a municipality against which punitive damages may not be assessed.

<u>Ninth Affirmative Defense</u>

The Defendant City of Boston states that it cannot be held liable for the intentional torts of its employees pursuant to M.G.L.A. ch. 258.

<u>**Jury Claim**</u>

The Defendant City of Boston hereby demands a trial by jury on all counts and causes of action.

DEFENDANT, CITY OF BOSTON
William F. Sinnott
Corporation Counsel
By its attorneys,

_/s/ Mary Jo Harris_____
Mary Jo Harris – BBO # 561484
MORGAN BROWN & JOY, LLP
200 State Street
Boston, MA 02109-2605
(617) 523-6666

**Certificate of Service**

I, Mary Jo Harris, hereby certify that this document was filed through the ECF system on May 9, 2006, and that a true paper copy of this document will be sent to those indicated as non registered participants on the Notice of Electronic Filing on May 9, 2006 by first class mail.

DATED:  May 9, 2006            _/s/  Mary Jo Harris_____

19