**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| STEPHAN COWANS,                )<br>                                          )<br>     Plaintiff,                          )<br>                                          )<br>     v.                                   )<br>                                          )<br> CITY OF BOSTON; BOSTON POLICE )<br> DEPARTMENT; DONALD L. DEVINE, Deputy )<br> Superintendent of the Bureau of Investigative )<br> Services of the Boston Police Department, in his )<br> individual capacity; ROBERT FOILB, Supervisor )<br> of the Boston Police Department Identification )<br> Unit, in his individual capacity; GREGORY D. )<br> GALLAGHER, in his individual capacity; DENNIS )<br> LEBLANC, in his individual capacity; JOHN H. )<br> MCCARTHY, in his individual capacity; PAUL T. )<br> MCDONOUGH, in his individual capacity; )<br> ROSEMARY MCLAUGHLIN, in her individual )<br> capacity; HERBERT L. SPELLMAN, in his )<br> individual capacity; and DOES 1–10; )<br>                                          )<br>     Defendants.                      )<br>                                          ) | Civil Action No: 05-11574 (RGS) |

**PLAINTIFF'S MOTION TO COMPEL DOCUMENTS, INFORMATION OR
AFFIDAVIT CONTAINING FINANCIAL INFORMATION OF DEFENDANT
ROSEMARY MCLAUGHLIN**

Plaintiff Stephan Cowans ("Mr. Cowans") asks this Court to compel defendant Rosemary McLaughlin ("Officer McLaughlin") to produce to Mr. Cowans documents and information directly bearing on his damages claims in this case that were withheld by the defendant on the basis of irrelevance. Because Officer McLaughlin's financial information is directly and timely relevant to the issue of punitive damages under § 1983, Mr. Cowans asks that this Court compel the production of such financial information.

LIBA/1736599.1

## PRELIMINARY STATEMENT

In this action, Mr. Cowans sued officers Rosemary McLaughlin, Dennis LeBlanc, the City of Boston and several other Boston police officers for his wrongful conviction based on a fraudulent fingerprint identification. In 1998, Mr. Cowans was wrongfully convicted of shooting Boston Police Department ("BPD") Sergeant Gregory Gallagher. The primary evidence against Mr. Cowans was a fingerprint allegedly left behind at the scene of the crime by the perpetrator. This fingerprint was identified by Officer LeBlanc and verified by Officer McLaughlin as belonging to Mr. Cowans. In 2004, when Mr. Cowans was exonerated based on his actual innocence, which was determined by DNA testing, the BPD reviewed the fingerprint evidence. Based on this review, the BPD conclusively determined that the fingerprint found at the scene did not match that of Mr. Cowans. Independent fingerprint experts hired by the City of Boston audited the Latent Print Unit of the BPD and the fingerprint identification that resulted in Mr. Cowans conviction. As a result of this audit, these experts determined that Officer LeBlanc's identification and Officer McLaughlin's verification were clearly erroneous, known to be erroneous, and this error was intentionally concealed throughout Mr. Cowans trial and conviction. Mr. Cowans spent nearly seven years in prison as a result of this fraudulent misidentification.

## FACTUAL BACKGROUND

On October 3, 2006, counsel for Mr. Cowans deposed Officer McLaughlin. During that deposition, counsel for Officer McLaughlin refused to allow Officer McLaughlin to answer questions regarding her financial information, stating: "It's not relevant at this time. If you succeed in getting a judgment against her, I will produce forthwith her and she will answer questions about her financial status, but right now it's just not relevant." (Deposition of

Rosemary McLaughlin, taken October 3, 2006 ("McLaughlin Depo."), attached hereto as Exhibit A, 176:8-12). Counsel for Officer McLaughlin instructed her not to answer a line of questioning involving Officer McLaughlin's assets and liabilities. (McLaughlin Depo., 172:4–174:12). In telephone conferences since the deposition, Officer McLaughlin's counsel has repeated her refusal to allow her client to disclose her financial information.

## ARGUMENT

Defendant's counsel has inaccurately, improperly, and unjustifiably refused to allow Officer McLaughlin to testify at deposition to relevant information about her financial position, on the purported basis of "irrelevance." Mr. Cowans seeks relevant information, which should have been disclosed even subject to objections, in litigation that militates for a consolidate trial on liability and damages.

    **1.**    **The opposing counsel acted improperly under Fed. R. Civ. P. 30(d) in refusing to allow her client testify upon a relevancy objection.**

In violation of Fed. R. Civ. P. 30(d), opposing counsel refused to allow Officer McLaughlin to answer questions that were objected to as "irrelevant." Rule 30(d)(1) forbids an instruction not to answer a question *unless* "such an instruction is necessary to protect a privilege, to enforce a limitation on evidence imposed by the court, or to permit the making of a motion under Rule 30(d)(4)." *8A* Wright, Miller and Marcus, *Federal Practice and Procedure: Civil* § 2113, p. 98.

Officer McLaughlin asserts no privilege or limitation imposed by the court. She has not sought a protective order related to her financial information, nor made any motion for a protective order under Rule 30(d)(4). The questions asked of Officer McLaughlin sought information that was relevant to the issue of punitive damages, and were not asked in "bad faith or . . . to annoy, embarrass, or oppress." Fed. R. Civ. P. 30(d)(4).

Absent the assertion of a privilege, counsel for a deponent has only two proper methods for dealing relevance objections at deposition: (1) to allow the witness to answer, making the objection clearly and concisely known, or (2) to suspend the deposition to seek a protective order. *8A* Wright, Miller and Marcus at § 2113. Counsel neither allowed her client to testify nor sought a protective order. She has steadfastly refused since the deposition to produce the information sought.

2. **The information Mr. Cowans seeks satisfies the "relevancy" requirement under Fed. R. Civ. P. 26 (b), and has been specifically recognized as admissible evidence.**
3.

Because Officer McLaughlin's financial assets are relevant to the issue of punitive damages, for which claims and facts are sufficiently alleged in the complaint with respect to the § 1983 claims, this Court should compel Officer McLaughlin to produce information related to her financial assets. Officer McLaughlin's financial assets will be directly relevant, admissible evidence at trial with respect to the punitive damages properly alleged.

Discovery, as a procedural matter, is governed under rule Fed. R. Civ. P. 26(b)(1), wherein parties are entitled to discovery "regarding any matter, not privileged that is relevant to" any claim or defense of either party. Relevance is to be construed extremely broadly to include even evidence that would be inadmissible at trial, so long as it is reasonably calculated to lead to the discovery of admissible evidence. *Gagne v. Reddy*, 104 F.RD. 454, 456 (D. Mass. 1984). Admissible evidence is necessarily discoverable, and has been improperly withheld.

The Supreme Court has acknowledged that juries are accorded "broad discretion" in assessing punitive damages, and therefore in actions where punitive damages are alleged "evidence of a tortfeasor's wealth is traditionally admissible." *City of Newport v. Fact Concerts, Inc.* 453 U.S. 247, 270 (1981). *See also Pacific Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 21-22

-4-

(1991) (finding the "financial position" of a defendant both relevant and sufficiently definite to be considered by a jury). While Massachusetts courts have been silent on the issue, a majority of federal courts find that when punitive damages are in issue, evidence of a defendant's net worth should be disclosed before trial, as it is sufficiently likely to be admissible evidence. *See Collens v. City of New York*, 222 F.R.D. 249 (S.D. N.Y. 2004) (where plaintiff sought defendant police officer's home address in a § 1983 action, court ordered affidavit of financial assets as less intrusive means of collecting pre-trial disclosure of financial worth), *and Mid Continent Cabinetry, Inc., v. George Koch Sons, Inc.* 130 F.R.D. 149, 151 (D.Kan., 1990) (holding that where punitive damages are alleged, defendant's assets are discoverable before trial under Federal Rules of Civil Procedure), *and CEH, Inc. v. FV Seafarer*, 153 F.R.D. 491, 498 (D.R.I. 1994) (holding that the requisite for pre-trial discovery of defendant's assets is merely sufficient allegation of punitive damages). Pre-trial disclosure of all relevant and admissible evidence is necessary for Mr. Cowans to adequately prepare for trial. Because Mr. Cowans seeks evidence that is both "relevant" under Fed. R. Civ. P. 26(b) and almost certainly admissible at trial, production should be compelled.

## CONCLUSION

Here, Mr. Cowans requests directly admissible evidence, which has been unreasonably denied by opposing counsel. Evidence of financial worth, which might otherwise be undiscoverable, is both discoverable and admissible when punitive damages are at issue. The pretrial disclosure of such information is required by the Federal Rules of Civil Procedure and supported by case law and concerns of economy and efficiency. Mr. Cowans is entitled to pre-trial discovery of Officer McLaughlin's financial status, and Officer McLaughlin has no basis for

withholding such information. Mr. Cowans respectfully requests that this Court order disclosure of Officer McLaughlin's financial information as requested in deposition.

Respectfully submitted,

STEPHAN COWANS

By his attorneys,

/s/ Sheryl A. Koval_____
Joseph Savage (BBO# 443030)
R. David Hosp (BBO# 634091)
Sheryl A. Koval (BBO# 657795)
Goodwin | Procter LLP
Exchange Place
53 State Street
Boston, MA 02109
(617) 570-1000

Robert N. Feldman (BBO# 630734)
Melissa M. Longo (BBO# 647649)
Birnbaum & Godkin, LLP
280 Summer Street
Boston, MA 02210
(617) 307-6100

Dated: November 27, 2006

## CERTIFICATION PURSUANT TO LOCAL RULE 7.1(A)(2) AND FED. R. CIV. P. 37.1

I certify that I conferred with counsel for the defendants in a good faith attempt to resolve or narrow the issues presented by this motion through negotiation at deposition with counsel for the Officer McLaughlin.

I further certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on November 27, 2006.

/s/ Sheryl A. Koval_____
Sheryl A. Koval

LIBA/1736599.1

# EXHIBIT A

```
 1                              Volume 1, Pages 1-181
 2                                   Exhibits: 25-36
 3           UNITED STATES DISTRICT COURT
 4         FOR THE DISTRICT OF MASSACHUSETTS
 5        -----------------------------
 6   STEPHAN COWANS,
 7             Plaintiff
 8   v.                      Docket No. 05-11576 (RGS)
 9   CITY OF BOSTON, et al.
10             Defendants
11   (Full caption on Page 2)
12        -----------------------------
13
14          DEPOSITION OF ROSEMARY B. McLAUGHLIN
15          Tuesday, October 3, 2006, 9:41 a.m.
16                    Goodwin Procter LLP
17                      53 State Street
18                    Boston, Massachusetts
19   ----Reporter:  Kathleen Mullen Silva, RPR, CRR----
20      ksilva@fabreporters.com   www.fabreporters.com
21                 Farmer Arsenault Brock LLC
22              50 Congress Street, Suite 415
23                Boston, Massachusetts 02109
24            617.728.4404   fax 617.728.4403
```

**Page 170**

1 evidence that would be presented at trial to
2 prosecute Mr. Cowans, other than the fingerprint
3 evidence?
4    A. Well, I processed evidence that was
5 submitted at trial.
6        THE WITNESS: Can I clarify?
7        MS. ROBINSON: Sure.
8    A. I remember that the planks from the wooden
9 fence and everything were in court. I don't know
10 whether they were eventually admitted as exhibits
11 that went back or not. But they were present in the
12 courtroom.
13   Q. And those planks were to be admitted as
14 evidence or they were present in the courtroom as
15 evidence against Mr. Cowans?
16   A. Yes, ma'am. Evidence in the case.
17   Q. Are you aware of any other evidence,
18 outside of that, in the latent print unit that was
19 used against Mr. Cowans?
20   A. The evidence that I processed in the mug.
21 I don't know what else was submitted.
22   Q. Ms. McLaughlin, do you own your own home?
23   A. Yes, ma'am, I do.
24   Q. Do you know what the current value of that

**Page 171**

1 house is?
2        MS. ROBINSON: Objection. Don't answer
3 it.
4        MS. KOVAL: On what basis?
5        MS. ROBINSON: She's not going to answer
6 questions about her assets.
7        MS. KOVAL: Why not?
8        MS. ROBINSON: Because there's no issue
9 of your getting to them right now. If you want to
10 bring her back if you are successful, I'll be happy
11 to produce her for that, but she's not going to
12 answer that right now.
13        MS. KOVAL: It's directly relative to
14 the issue of whether she can afford to pay a
15 judgment.
16        MS. ROBINSON: She doesn't have to
17 answer now.
18        MS. KOVAL: I disagree.
19        MS. ROBINSON: You can disagree, but
20 she's --
21        MS. KOVAL: If you're going to refuse to
22 answer, we'll move to compel.
23        MS. ROBINSON: Go ahead.
24        MS. KOVAL: Okay. I understand you're

**Page 172**

1 probably going to object to these, but I'm going to
2 ask them all anyway and get them on the record.
3        MS. ROBINSON: Okay.
4    Q. I think the last question I got interrupted
5 with was, what was the value of the home. Is there
6 a mortgage on the house?
7        MS. ROBINSON: Objection.
8        MS. KOVAL: Are you instructing her not
9 to answer?
10        MS. ROBINSON: Yes.
11   Q. Do you own any other property, other than
12 your home?
13        MS. ROBINSON: Objection. Don't answer.
14   Q. Do you know the value of that other
15 property?
16        MS. ROBINSON: Objection. Don't answer.
17   Q. Is there a mortgage on any of that other
18 property?
19        MS. ROBINSON: Objection. Don't answer.
20   Q. Do you own a car?
21        MS. ROBINSON: Objection. Don't answer.
22   Q. Do you know the value of that car?
23        MS. ROBINSON: Objection. Don't answer.
24   Q. Is there any lien, lease or other

**Page 173**

1 encumbrance on that vehicle?
2        MS. ROBINSON: Objection. Don't answer.
3    Q. Do you own any other vehicles?
4        MS. ROBINSON: Objection. Don't answer.
5    Q. Do you have a savings account?
6        MS. ROBINSON: Objection. Don't answer.
7    Q. Do you have a checking account?
8        MS. ROBINSON: Objection. Don't answer.
9    Q. How much is currently held in the savings
10 account?
11        MS. ROBINSON: Objection. Don't answer.
12   Q. How much is currently held in the checking
13 account?
14        MS. ROBINSON: Objection. Don't answer.
15   Q. Do you have any other bank accounts?
16        MS. ROBINSON: Objection. Don't answer.
17   Q. Do you own any stocks, bonds, mutual funds
18 or other investments?
19        MS. ROBINSON: Objection. Don't answer.
20   Q. Do you know the value of those other
21 investments?
22        MS. ROBINSON: Objection. Don't answer.
23   Q. Do you have any other investments, business
24 investments?

Rosemary B. McLaughlin
Volume 1 - October 3, 2006

**Page 174**

1  MS. ROBINSON: Objection. Don't answer.
2  Q. Do you know the value of those investments?
3  MS. ROBINSON: Objection. Don't answer.
4  Q. Do you have any debt other than the
5  mortgage on your house?
6  MS. ROBINSON: Objection. Don't answer.
7  Q. What's the current amount of that debt?
8  MS. ROBINSON: Objection. Don't answer.
9  Q. What is your current source of income?
10 MS. ROBINSON: Objection. Don't answer.
11 Q. Do you have any other sources of income?
12 MS. ROBINSON: Objection. Don't answer.
13 Q. Do you have any insurance policies?
14 MS. ROBINSON: Objection. Don't --
15 well, wait a minute. That one you can answer.
16 A. I have a life insurance policy, and I have
17 disability insurance policies. I think that's all.
18 I don't know of any other insurance, outside of the
19 homeowner's insurance.
20 MS. ROBINSON: You've got a homeowner's
21 policy?
22 THE WITNESS: Yes.
23 MS. ROBINSON: Who carries that?
24 THE WITNESS: Commonwealth Mutual.

**Page 175**

1  MS. ROBINSON: How much is it, do you
2  know?
3  THE WITNESS: I'd have to look at the
4  policy. I don't know.
5  MS. ROBINSON: Okay.
6  THE WITNESS: Two.
7  MS. ROBINSON: There are two policies?
8  THE WITNESS: Yes.
9  Q. You have two homeowner's policies?
10 A. Yes, ma'am.
11 Q. Are you familiar with what those policies
12 cover?
13 A. I'd have to read it. To my knowledge,
14 they're just standard policies, but...
15 Q. Do you know if you have any insurance that
16 would cover your liability in a civil lawsuit such
17 as this?
18 A. I don't know.
19 MS. ROBINSON: I'll get those and turn
20 them over to you, but I don't think they cover this.
21 MS. KOVAL: We just request copies of
22 the policies that she's mentioned.
23 MS. ROBINSON: They should have been
24 turned over to you before by Leonard Kesten.

**Page 176**

1  MS. KOVAL: I didn't see them.
2  MS. ROBINSON: He didn't turn them over?
3  THE WITNESS: I don't remember them
4  asking for them.
5  MS. ROBINSON: No. It's an automatic --
6  MS. KOVAL: Fran, just to confirm the
7  basis of the objections on the asset information.
8  MS. ROBINSON: It's not relevant at this
9  time. If you succeed in getting a judgment against
10 her, I will produce her forthwith and she will
11 answer questions about her financial status, but
12 right now it's just not relevant.
13 MS. GONNAM: Do you have any authority
14 for that proposition?
15 MS. ROBINSON: Yes.
16 MS. GONNAM: What is it?
17 MS. ROBINSON: I don't have it with me
18 right now. I don't carry it around with me, but
19 I've done it before and I've been successful with it
20 before.
21 MS. KOVAL: Well, we disagree with that
22 issue and we'll compel on that point. Can we have
23 five minutes to break. We'll be quick.
24 (A recess was taken.)

**Page 177**

1  MS. KOVAL: I don't have any more
2  questions at this point, but I'm not going to agree
3  to conclude pending the resolution of the issue on
4  the assets.
5  MS. ROBINSON: I understand.
6  MS. KOVAL: So we're done here for
7  today.
8  MS. ROBINSON: So you're going to
9  suspend?
10 MS. KOVAL: Yes, I am going to suspend.
11 MS. ROBINSON: And the reason for the
12 suspension is the assets?
13 MS. KOVAL: Yes. I'd also like to
14 reserve the option, though, to go back and look at
15 the record and see if there's any other issues that
16 we think need to be brought before the judge on
17 questions she was not allowed to answer.
18 MS. ROBINSON: Okay.
19 MS. KOVAL: All set.
20 (Discussion held off the record.)
21 MS. KOVAL: Back on the record. On the
22 insurance policies, we would like to request that
23 those be produced to us. We're happy to send a
24 formal document request if you want it.