UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DOCKET NO. 2005-11574 RGS

| | |
|---|---|
| STEPHAN COWANS, <br>     Plaintiff <br> <br> v. <br> <br> CITY OF BOSTON, BOSTON POLICE <br> DEPARTMENT, DONALD L. DEVINE, <br> DEPUTY SUPERINTENDENT OF THE <br> BUREAU OF INVESTIGATIVE SERVICES <br> OF THE BOSTON POLICE DEPARTMENT, <br> IN HIS INDIVIDUAL CAPACITY, ROBERT <br> FOILB, SUPERVISOR OF THE BOSTON <br> POLICE DEPARTMENT IDENTIFICATION <br> UNIT, IN HIS INDIVIDUAL CAPACITY, <br> GREGORY D. GALLAGHER, IN HIS <br> INDIVIDUAL CAPACITY, DENNIS LEBLANC, <br> IN HIS INDIVIDUAL CAPACITY, <br> JOHN H. MCCARTHY, IN HIS INDIVIDUAL <br> CAPACITY, PAUL T. MCDONOUGH, <br> IN HIS INDIVIDUAL CAPACITY, <br> ROSEMARY MCLAUGHLIN, IN HER <br> INDIVIDUAL CAPACITY, HERBERT L. <br> SPELLMAN, IN HIS INDIVIDUAL CAPACITY; <br> AND DOES 1-10, <br>     Defendants | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**DEFENDANT DENNIS LEBLANC'S OPPOSITION AND MEMORANDUM
OF LAW IN SUPPORT OF OPPOSITION TO PLAINTIFF'S MOTION TO
<u>COMPEL DEPOSITION OF DENNIS LEBLANC AND FOR COSTS</u>**

Now comes the defendant, Dennis LeBlanc, and respectfully moves this Honorable Court to deny the plaintiff's motion to compel the continuation of the defendant's deposition, and to further deny the plaintiff's motion for costs. As reasons herefore, the defendant states the following.

BACKGROUND

A. Litigation Background

The plaintiff has brought this action as the result of the alleged wrongful imprisonment of the plaintiff due, in part, to the alleged misidentification of a crime scene fingerprint made by defendant Dennis LeBlanc. The defendant was incarcerated for over six years in Massachusetts State Prison after a jury convicted him of shooting Boston Police Officer Gregory Gallagher. In this prosecution, the Commonwealth alleged after struggling with and shooting Officer Gallagher, Stephan Cowans commandeered a home at gunpoint, during which time he was given a glass of water by one of the residents therein. Defendant LeBlanc, then a Boston Police Officer assigned to the latent print section of the identification unit, identified a finger print on this glass as belonging to Mr. Cowans in 1997, and later testified to his identification of the fingerprint during the trial of this case on June 24, 1998. In February of 2004, it was learned that this fingerprint had been misidentified by LeBlanc and actually belonged to a resident of this home.

The plaintiff filed the instant lawsuit alleging, *inter alia*, violation of his civil rights under 42 U.S.C. §1983, malicious prosecution, conspiracy, and other torts. This claim was originally filed against the City of Boston and seven other Boston Police Officers. In the litigation, the City of Boston chose to represent six of the police officers, but declined to represent defendant LeBlanc and defendant McLaughlin, who was also assigned to the Identification Unit. After some discovery was conducted, the City of Boston settled this lawsuit on its own behalf and on behalf of six police officers in the amount of $3.2 million. Additionally, according to a Lawyer's Weekly article of December 4, 2006, the plaintiff obtained an additional $500,000 in compensation from a state fund created to compensate victims of wrongful conviction. See *Massachusetts Lawyer's Weekly*:

"Lawyers: Wrongful Conviction statute mired in bureaucracy: Process to recover compensation seen as slow," David E. Frank, December 4, 2006.

After the City of Boston's settlement with the plaintiff, the defendant submitted a financial disclosure affidavit to plaintiff's counsel attesting to his penury.[1] The defendant, who is fifty-five years old, resigned from the Boston Police Department (with disciplinary charges pending) and has been unable to find other employment. In short, the defendant is judgment proof.

### B. Attorney General's Grand Jury Investigation and Ron Smith Investigation

Upon learning of the mistaken identification of the fingerprint and the alleged wrongful conviction of the plaintiff, Massachusetts Attorney General Tom Reilly commenced a grand jury investigation into this matter, seeking an indictment against the defendant. Attorney General Reilly ultimately granted immunity to co-defendant Rosemary McLaughlin and compelled her to testify before the grand jury against defendant LeBlanc. Although the grand jury ultimately returned no indictments, Attorney General Reilly was quoted in the Boston-Bay State Banner as stating: "No criminal charges resulted but that is not the end of the story. This absolutely should not have happened, and it is an inexcusable failure. It identified systemic and personal problems that will be and continued to be addressed." See *Boston-Bay State Banner*, July 10, 2004, Jeremy Schwab, attached hereto as Exhibit 1.

After the mistaken identification of the fingerprint came to light, the Boston Police Department hired Ron Smith & Associates, Inc., a fingerprint consultant corporation to review the

---

[1] The defendant and his wife jointly own (as tenants by the entirety) a home mortgaged to within $20,000 of its assessed value, they own two vehicles (three and four years old) for which they owe monies to credit unions, they have a checking account with a negligible balance, and they have accumulated credit card debt greatly in excess of the equity in their home.

identification procedure in this case and to assist with the overall dismantling and re-creation of the Identification Unit. According to Ron Smith's investigation, "it [was] the unanimous opinion of the Ron Smith & Associates, Inc. review team that at some point after the erroneous identification was made, but prior to his testimony in the 'Stephan Cowans' trial, Officer LeBlanc discovered the mistake and concealed it all they way through the trial." See Ron Smith report dated March 8, 2004, p. 26, ¶9.

### C. Deposition of the Defendant

Prior to the defendant's December 4, 2006 deposition, defense counsel wrote to plaintiff's counsel on November 30, 2006 advising counsel that it was the defendant's intention to assert his Fifth Amendment and Article 12 rights against self-incrimination at his deposition and to decline to answer questions. See Exhibit 2. Counsel queried (1) if the plaintiff intended to challenge this assertion of rights, and (2) if the letter from counsel would suffice as an invocation of LeBlanc's rights or if the defendant needed to physically attend the deposition to assert his rights on the record. Plaintiff's counsel responded in writing that she did not intend to challenge the defendant's invocation of his rights, but that she wanted the defendant to attend the deposition to invoke his rights on the record. See Exhibit 3.

On December 4, 2006, the defendant properly attended his deposition. The defendant was sworn in, answered his name, and thereafter declined to answer all further questions. See LeBlanc deposition transcript attached hereto as Exhibit 4. Despite the unequivocal assertion of the defendant's rights, plaintiff's counsel insisted that she had a right to repeatedly ask the defendant questions about the incident, wanting him to repeatedly assert his Fifth Amendment and Article 12 rights throughout two hours of questioning in order to create a record for summary judgment. See

Ex. 4, p. 10. Thereafter, counsel agreed to disagree and the deposition came to an end after six minutes and with a transcript consisting of ten and one half pages of testimony.

## ARGUMENT

A. The Defendant Properly Asserted His Privilege Against Self-Incrimination Under the Fifth Amendment to the United States Constitution and Under Article 12 of the Massachusetts Declaration of Rights.

Although plaintiff's counsel reserved her right to challenge the defendant's invocation of his rights against self-incrimination, see Exhibit 4, p. 11, the plaintiff can not and does not now claim that the defendant's invocation of these rights, in and of itself, was improper.[2] The plaintiff concedes in his motion that the Massachusetts Attorney General convened a grand jury in the spring of 2004 to investigate defendant LeBlanc's actions in this matter. See plaintiff's motion, p. 3. The plaintiff also concedes that experts retained by the Boston Police Department to audit the Identification Unit "determined that LeBlanc's identification and McLaughlin's verification [of the fingerprint in question] were clearly erroneous, known to be erroneous, and his error was intentionally concealed throughout Mr. Cowans (sic) trial and conviction." (See plaintiff's motion, p. 3.) In this context, where Attorney General Reilly voiced his displeasure about the grand jury's failure to indict LeBlanc by stating that the situation "absolutely should not have happened," was an "inexcusable failure," and that the lack of criminal charges was "not the end of the story," it cannot be disputed that defendant has legitimate concerns of future prosecution in this matter, whether by the Massachusetts Attorney General or any other law enforcement agency. As such, the defendant's authentic assertion of his Fifth Amendment and Article 12 rights cannot seriously be challenged. *United States* v.

---

[2] The plaintiff contests the manner in which these rights were asserted, but does not contest the defendant's ability to assert these rights. LeBlanc depo at 7.

*Castro*, 129 F.3d 226, 229 (1st Cir. 1997) ("While chimerical fears will not suffice, the prospective witness need only limn some reasonable possibility that, by testifying, he may open himself to prosecution.") Additionally, it is clear that an answer to a question need not directly incriminate a defendant, for "[i]f a reply to a seemingly innocuous question reasonably will tend to sculpt a rung in the ladder of evidence leading to prosecution, the privilege appropriately may be invoked." *Ibid.*, citing *Kaufman* v. *United States*, 341 U.S. 479, 486, 71 S. Ct. 814, 818 (1951); *United States* v. *Johnson*, 488 F.2d 1206, 1209 (1st Cir. 1973). "In other words, testimony which might lead indirectly to evidence that then could be used in a future criminal prosecution is eligible for Fifth Amendment protection. See *Murphy* v. *Waterfront Comm'n*, 378 U.S. 52, 79, 84 S. Ct. 1594, 1609-1610 (1964)." *Id*. at 230. In this context, where the plaintiff has not challenged the defendant's ability to assert Fifth Amendment and Article 12 rights, where the defendant was a target of a grand jury investigation, and where fingerprint experts opine that the defendant knew the fingerprint was not Stephan Cowans' fingerprint at the time of Cowans' criminal trial, yet testified that it was Cowans' fingerprint trial, it is absolutely certain that, on advise of counsel, the defendant will assert his Fifth Amendment and Article 12 rights at any further proceeding and decline to answer <u>any</u> questions whatsoever that pertain to the defendant's employment with the Boston Police Department Identification Unit, as well as <u>any</u> questions pertaining to his employment within the Boston Police Department. Certainly, the fact that the defendant may have worked with other police officers involved in the investigation at various locations in his career, the fact that he may have been involved in other incidents with other officers during his career, the fact that he may have received certain training or acted in a certain manner on other cases, the fact that he may have handled evidence differently in other cases, or the fact that the defendant even had familiarity with certain

police officers in any other context could be construed as incriminating. Therefore, to give the Fifth Amendment its full effect, a line in the sand must be drawn declaring any involvement the defendant had with the Boston Police Department as off-limits at his deposition. *Counselman* v. *Hitchcock*, 142 U.S. 547, 562, 12 S.Ct. 195, 197 (1892)(Fifth Amendment must be accorded liberal construction in favor of right it was intended to secure).

      B.      Since the Plaintiff Does Not Dispute that the Defendant has a Valid Claim to Assert his Right Against Self-Incrimination, Repetitive Questioning in the Face of this Valid Assertion of Rights Amounts to Harassment.

It would amount to harassment and only serve to unreasonably annoy and embarrass the defendant within the meaning of Fed. R. Civ. P. 30(d)(4) should the defendant be subjected to two hours (or more) of questions to which the defendant would be validly asserting his rights against self-incrimination. The plaintiff's primary concern in his motion seems to be an ill-founded fear that no adverse inference would be drawn against the defendant due to the fact that the defendant did not repeatedly assert his Fifth Amendment and Article 12 rights to (likely repetitive and marginally rephrased) questions regarding the defendant's involvement in the investigation into the shooting of Officer Gallagher and his involvement in Cowans' trial. Where, as here, the defendant will assert his rights to any questions pertaining to his employment with the Boston Police Department, the defendant concedes that the plaintiff would be entitled to seek an adverse inference against the defendant based upon the defendant's invocation of his rights. A blanket invocation of rights seemingly invites a blanket adverse inference against the defendant. Moreover, the defendant is mindful of the fact that his invocation of his Fifth Amendment and Article 12 rights will almost

certainly preclude the defendant from testifying at a later trial.[3]  See *Gutierrez-Rodriguez* v. *Cartagena*, 882 F.2d 553, 556 (1st Cir. 1989)("The court would not tolerate nor indulge a practice whereby a defendant by asserting the privilege against self-incrimination during pre-trial examination and then voluntarily waiving the privilege at the main trial surprised or prejudiced the opposing party.")  As such, the defendant accepts the consequence of an adverse inference and the preclusion of subsequent testimony as a consequence of asserting his constitutional rights.

If the plaintiff's concern is that because certain questions were not asked that an adverse inference would not be drawn against the defendant, the defendant would concede that an adverse inference may be drawn against him on all matters pertaining to his involvement in this case.  However, to sit through hour upon hour of deposition testimony when the defendant's response to any relevant question would be an invocation of his Fifth Amendment and Article 12 rights can only be viewed as unreasonable, oppressive, and designed to embarrass the defendant within the meaning of Fed.R.Civ.P. 30(d)(4).

---

[3]  As noted above, the plaintiff has already recovered $3.7 million in this case.  The defendants would receive an off-set of this amount after trial because all of the defendants are jointly and severally liable for the plaintiff's injury.  See *Watts* v. *Laurent*, 774 F.2d 168, 179 (7th Cir. 1985), *cert. denied*, 475 U.S. 1085, 106 S.Ct. 1466 (1986)("once the plaintiff has been fully compensated for his injuries by one or more of the tortfeasors, he may not thereafter recover any additional compensation from any of the remaining tortfeasors"); *Bosco* v. *Serhant*, 836 F.2d 271, 281 (7th Cir. 1988), *cert. denied*, 486 U.S. 1056, 108 S.Ct. 2824 (1988)("the verdict rendered must be considered as the full amount of damages suffered by the plaintiff.  Furthermore, it is the court's duty . . . to credit the judgment by any settlements"); *Restatement (Second) of Torts*, § 885(3) and comment e, § 886 and comment a (the very nature of damages as compensation for injury suffered requires, he may not recover any compensation from the remaining tortfeasors).  Since, as noted above, the defendant is judgment proof, any trial in this matter would seem to be a pointless exercise for all involved.

  C.  Reconvening the Deposition of Defendant LeBlanc to Create a
    <u>Record for Summary Judgment Would Be an Exercise in Futility</u>.

As noted above, defense counsel advised plaintiff's counsel four days prior to this deposition that it was the defendant's intention to assert his rights and to decline to answer questions. See. Ex. 2. Therefore, after answering his name to the first question, the defendant asserted his rights when asked if he had taken medication on that day which could impair his ability to testify. See LeBlanc deposition, p. 5-6. After that question, the defendant reiterated that it was his intention to answer all further questions in that same manner. Although the answer to the question of whether or not the defendant was taking medication may not be incriminating, as noted by Gibbons, J., while concurring and dissenting in the case of *National Life Ins. Co. v. Hartford Accident & Indemnity Co.*, 615 F.2d 595, 600 (3rd Cir. 1980), the answering of benign and preliminary questions "would be totally useless to the party seeking them." In *National Life Ins. Co. v. Hartford Accident & Indemnity Co.*, a certified public accountant was scheduled to be deposed. After supplying his name and business address, the deponent left the deposition proceeding. In absentia, counsel asked a number of questions including the following:

  Q.  How long have you been a Certified Public Accountant?

  A.  (No response)[4]

  Q.  Of what professional associates are you a member?

  A.  (No response)

The majority of the Third Circuit Court of Appeals reversed the lower court ruling that denied National Life Insurance Company's motion to compel the accountant to re-appear for the taking of

---

  4  As noted, the deponent had left the deposition.

his deposition and requiring him to assert his privilege to specific questions. However, in a concurring and dissenting opinion, Justice Gibbons noted the following:

> The majority has selected two [questions] which, they say, the witness could probably have answered without incriminating himself. Those questions, however, were entirely preliminary and the answers would be totally useless to the party seeking them. Since the district court reviewed the questions asking for substantive information, and those sought information likely to incriminate, the procedural error on which the majority relies appears to me to be harmless. ***The result on remand is in all probability going to be an exercise in futility***. I would affirm [the decision of the lower court denying the motion to compel]. (Emphasis added.)

While the defendant may be able to answer preliminary questions such as the name and age of his spouse, the names and ages of children, where he attended high school, and other perfunctory questions, it cannot be disputed that the defendant has a valid right to assert his Fifth Amendment and Article 12 privilege against self-incrimination to any questions pertaining to his employment within the Boston Police Department, and therefore the reconvening of his deposition would be "an exercise in futility." *Ibid*. Moreover, to subject the defendant to the oppression and embarrassment of multiple hours of repeated questioning wherein his rights against self-incrimination would be repeatedly asserted is unwarranted and an abuse of the discovery process. As the plaintiff is entitled to an adverse inference on all matters regarding the defendant's involvement in this case, it is pointless to inconvenience the defendant and counsel where not substantive questions will be answered.

## CONCLUSION

For the foregoing reasons, the court should deny the plaintiff's motion to compel the deposition of Dennis LeBlanc and deny the plaintiff's claim for costs.

<u>REQUEST FOR ORAL ARGUMENT</u>

Since the plaintiff has requested oral argument pursuant to Local Rule 7.1(d), the defendant likewise requests oral argument as to the plaintiff's motion.

        Respectfully submitted,

        Defendant,
        DENNIS LEBLANC
        By his Attorney,

        <u>*/s/ Kenneth H. Anderson*</u>
        Kenneth H. Anderson, Esq.
        B.B.O. #556844
        FINNERAN, BYRNE & DRECHSLER, L.L.P.
        Eastern Harbor Office Park
        50 Redfield Street
        Boston, MA  02122
        (617) 265-3900

DATED: December 15, 2006

**Certificate of Service**

I, Kenneth H. Anderson, Esq., hereby certify that a true copy of the foregoing document has been served the above date, electronically through the ECF system, upon:

Sheryl A. Koval, Esq.
Goodwin, Procter LLP
Exchange Place
53 State Street
Boston, MA 02109

Frances Robinson, Esq.
Davis, Robinson & White
One Faneuil Hall Marketplace, 3rd Floor
Boston, MA 02109

/s/ *Kenneth H. Anderson, Esq.*
Kenneth H. Anderson, Esq.

**THE BOSTON – BAY STATE**
# Banner

# ARCHIVES OF LEAD STORIES

July 1, 2004

## Wrongful convictions spur calls for reform

**Jeremy Schwab**

Stephan Cowans of Mattapan walked from prison in January a free man after six-and-a-half years behind bars. His 35- to 50-year sentence for allegedly shooting a police officer in the buttox was cut short after information surfaced that another man's fingerprint was used to convict him.

The wrongful conviction was just one more in a long list of convictions that have been overturned in Massachusetts recently. Activists say the wrongful convictions show the criminal justice system needs repair.

Boston Police Commissioner Kathleen O'Toole said she had added three officers and two supervisors to her department's fingerprinting unit, reviewed its policies and asked for more money from the state in an effort to increase the unit's professionalism. The unit has been a dumping ground for officers who have been disciplined for misconduct.

"The Cowans case is just one of several wrongful convictions," said O'Toole during a press conference last week at the Massachusetts attorney general's office. "While I am somewhat relieved that no criminal charges will be filed against the Boston Police Department, I still am seriously troubled by this case."

Attorney General Tom Reilly said that a months-long investigation conducted by his office had found no evidence to prove that fingerprint technicians Dennis LeBlanc and Rosemary McLaughlin were guilty of intentionally framing Cowans.

"No criminal charges resulted but that is not the end of the story," said Reilly. "This absolutely should not have happened, and it is an inexcusable failure. It identified systemic and personal problems that will be and continue to be addressed."

The grand jury's failure to find sufficient evidence of conspiracy in the Cowans case has civil rights activists up in arms.

"I just think the justice department needs to look at that case and see whether or not there was any criminal conspiracy by any Boston Police Officer and the fingerprint division to convict an innocent person," said Leonard Alkins, president of the Boston Branch of the NAACP.

Alkins said there should be an independent commission established, composed of legal scholars and prosecutors, to look for other wrongful convictions over the past 25 years.

"I think they haven't really seriously looked at the problem of wrongful convictions," he said. "I think that there have been too many wrongful convictions overturned recently, especially involving the policies and procedures of the Boston Police."

In May, the Boston Herald reported that at least 22 men had been wrongfully convicted in Massachusetts over the past two decades. Most of the men were black, and most were investigated by the Boston Police.

The Boston Police homicide unit has been criticized for over-aggressive interrogations and for focusing their investigations too narrowly on one suspect once a suspect is found.

The men found to be wrongfully convicted served as many as 19 and a half years behind bars before being released.

Activists say that too often Boston police officers arrest suspects despite weak evidence, and then the courts take the cases before suspects can sue for false arrest.

"Even if they know the arrest is shoddy, they will go forward on the slimmest evidence, knowing the defendant doesn't have the resources for proper representation in a circumstantial case."

Police officers should be held accountable for shoddy investigations that lead to wrongful convictions, according to Kazi Toure, co-director of the Criminal Justice Program at the American Friends Service Committee.

"I think if they prosecuted those officers whose work led to the wrongful convictions, and started looking into prosecuting misconduct, that would deter other cops from doing it in the future," said Toure. "They are just sending a statement that it is ok for cops to do this."

Activists also blame underfunding of the public defender system which they say leads to overworked and underpaid defense attorneys eager to convince their clients to go in for a plea bargain even if the clients know they did not commit the crime.

Back to Lead Story Archives

Home Page

# Finneran, Byrne & Drechsler, L.L.P.

Attorneys at Law

Eastern Harbor Office Park
50 Redfield Street
Boston, Massachusetts 02122

Telephone (617) 265-3900
Telefax (617) 265-3627

James E. Byrne
Thomas Drechsler

Of Counsel
Thomas M. Finneran

Kenneth H. Anderson
Richard P. Mazzocca
Eric S. Goldman
Jonathan E. Tobin
Susan E. Devlin

November 30, 2006

*Via Fax To: (617) 523 - 1231*

Sheryl A. Koval, Esq.
Goodwin, Procter LLP
Exchange Place
53 State Street
Boston, MA 02109

RE:   Stephan Cowans
VS:   City of Boston, Dennis LeBlanc, Rosemary McLaughlin, et al.
       United States District Court, Docket No. 2005 - 11574 RGS
       Our File No. 04-5668

Dear Attorney Koval:

    Please be advised that it is Dennis LeBlanc's intention to assert his Fifth Amendment and Article 12 rights against self incrimination and to decline to answer questions at the deposition currently scheduled for Monday, December 4, 2006. Kindly advise me if you intend to challenge this assertion of his rights. Also please advise if this letter will suffice as invocation of these rights. Since he will be declining to answer questions, I would prefer not to have to come in person to this deposition. However, if you would like to have him assert his rights on the record, we will do so on Monday.

    Thank you for your attention to this correspondence.

Very truly yours,

Kenneth H. Anderson

KHA: kk
cc:   Frances Robinson, Esq.
       Via Fax To: (617) 723 - 7731
cc:   Dennis LeBlanc

GOODWIN | PROCTER

Sheryl A. Koval
617.570.1147
skoval@
goodwinprocter.com

Goodwin Procter LLP
Counsellors at Law
Exchange Place
Boston, MA 02109
T: 617.570.1000
F: 617.523.1231

December 1, 2006

Kenneth H. Anderson, Esq.
Finneran, Byrne & Drechler, L.L.P.
Eastern Harbor Office Park
50 Redfield Street
Boston, MA 02122

Re:   *Cowans v. City of Boston, et al.*, Civ. A. No. 05-11574 (D. Mass.)

Dear Attorney Anderson:

I am in receipt of your letter dated November 30, 2006 regarding Dennis' LeBlanc's intended invocation of his 5th Amendment rights. While, at this time, we do not intend to challenge that invocation, we will need to have Mr. LeBlanc attend the deposition, as scheduled, and invoke his rights on the record in response to our questions.

Therefore, this letter will serve to confirm that Mr. LeBlanc's deposition will take place at 10:00 a.m. on Monday, December 4, 2006 in our offices.

Please let me know if you have any questions.

Very Truly Yours,

*Sheryl Koval*
Sheryl A. Koval

cc: Frances Robinson, Esq.

Dennis E. LeBlanc
Volume 1 - December 4, 2006

Page 2

```
 1        UNITED STATES DISTRICT COURT
 2       FOR THE DISTRICT OF MASSACHUSETTS
 3    ---------------------------
 4    STEPHAN COWANS,
 5          Plaintiff
 6    v.         Docket No. 05-11576 (RGS)
 7    CITY OF BOSTON; BOSTON POLICE DEPARTMENT; DONALD
 8    L. DEVINE, Deputy Superintendent of the Bureau
 9    of Investigative Services of the Boston Police
10    Department, in his individual capacity; ROBERT
11    FOILB, Supervisor of the Boston Police
12    Department Identification Unit, in his
13    individual capacity; GREGORY D. GALLAGHER, in
14    his individual capacity; DENNIS LEBLANC, in his
15    individual capacity; JOHN H. MCCARTHY, in his
16    individual capacity; PAUL T. MCDONOUGH, in his
17    individual capacity; ROSEMARY MCLAUGHLIN, in her
18    individual capacity; HERBERT L. SPELLMAN, in his
19    individual capacity; and DOES 1-10,
20          Defendants
```

Page 3

```
 1    APPEARANCES:
 2       Goodwin Procter LLP
 3       Sheryl A. Koval, Esq.
 4       Michelle Gonnam, Esq.
 5       Exchange Place
 6       53 State Street
 7       Boston, Massachusetts 02109
 8       617.570.1000  Fax: 617.523.1231
 9       skoval@goodwinprocter.com
10       mgonnam@goodwinprocter.com
11       for the Plaintiff
12
13       Finneran, Byrne & Drechsler, L.L.P.
14       Kenneth H. Anderson, Esq.
15       Eastern Harbor Office Park
16       50 Redfield Street
17       Boston, Massachusetts 02122
18       617.723-7339  Fax: 617.265.3627
19       kanderson@fbdlegal.com
20       for Defendant LeBlanc
```

Page 4

```
 1       Davis, Robinson & White, L.L.P.
 2       Frances L. Robinson, Esq.
 3       One Faneuil Hall Market Place
 4       Boston, Massachusetts 02109
 5       617.723-7339  Fax: 617.723.7731
 6       for Defendant McLaughlin
```

Page 5

```
 1          December 4, 2006    10:21 a.m.
 2          P R O C E E D I N G S
 3          DENNIS E. LeBLANC, Sworn
 4          EXAMINATION
 5    BY MS. KOVAL:
 6       Q. Would you please state your name for the
 7    record.
 8       A. Dennis E. LeBlanc.
 9          MS. KOVAL: Just as to preliminary
10    stipulations, we'll proceed in the way that we've
11    been proceeding in the past: Federal Rules of Civil
12    Procedure, objections except as to form waived until
13    trial?
14          MR. ANDERSON: That's fine.
15          MS. KOVAL: Would you like him to read
16    and sign?
17          MR. ANDERSON: No, we'll waive the
18    reading and signing.
19       Q. Mr. LeBlanc, have you taken any medication
20    today that would impair your ability to testify?
21       A. On advice of counsel, I hereby invoke my
22    rights guaranteed by the Fifth Amendment of the
23    United States Constitution and Article XII of the
24    Massachusetts Declaration of Rights and decline to
```

Dennis E. LeBlanc
Volume 1 - December 4, 2006

### Page 6

1  answer.
2  Q. It's our understanding today that you plan
3  to invoke your Fifth Amendment rights in response to
4  my questions?
5      MR. ANDERSON: That's correct. And just
6  to kind of recap or put on the record what we
7  discussed out in the hallway beforehand: I faxed a
8  letter over on Thursday indicating that it was our
9  intention, based upon advice of counsel, after
10 meeting with Mr. LeBlanc, that he was going to
11 assert his Fifth Amendment and Article XII rights to
12 each and every question you asked him. We asked if
13 we needed to produce him or not. You said you
14 needed him here to create a record, which I
15 understand, and we're here in person.
16      I don't think anyone can contest the
17 fact that he does have these rights. He was the
18 target of grand jury investigation by the
19 Massachusetts Attorney General. They went so far as
20 to immunize Rosemary McLaughlin, and that grand jury
21 did not return any indictment. But I have not heard
22 that he has been cleared, that anything has ceased.
23 And given that posture, he will be asserting Fifth
24 Amendment and Article XII rights to each and every

### Page 7

1  question asked hereafter.
2      MS. KOVAL: While we are not challenging
3  Dennis LeBlanc's assertion of his rights at this
4  point, we understand that he will answer each
5  question in kind, similar to what he just said. If
6  we want to create a shortcut for that statement in
7  response to my questions -- because, as I said, I do
8  have a number of questions to go through with him --
9  if we want to make this a little bit easier, we can
10 agree on some shortcut version of it.
11     MR. ANDERSON: Would you agree that he
12 can just say "same answer"?
13     MS. KOVAL: I'd rather have him say
14 something more to the effect of "I assert my rights"
15 or "I invoke the Fifth Amendment," something to that
16 effect, instead of "same answer."
17     MR. ANDERSON: I know we discussed it
18 before: In every other case I've seen done this
19 way, after four or five questions it was asked, "Is
20 it your intention to continue asserting your
21 rights?"
22     MS. ROBINSON: I don't understand, for
23 the record, why the letter from Mr. Anderson doesn't
24 suffice.

### Page 8

1      MS. KOVAL: This is to recap our
2  conversation we had off the record, Ken: We have
3  the right to ask him whatever questions we choose,
4  and he can choose to invoke his Fifth Amendment. I
5  need a clean record, which includes my questions,
6  his answers. If it's going to be the same answer,
7  that's fine. But he needs to say that answer in
8  response to all of my questions.
9      MS. ROBINSON: Again, just from my
10 client's point of view, if you would be so kind when
11 you ask these questions as to let us know on the
12 record why the letter doesn't suffice to make a
13 record, because it's costing my client money for me
14 to be here. I've got to sit here through this.
15     He sent you a letter. Every case I've
16 ever been involved in -- there have been several --
17 where my client has taken the Fifth or somebody else
18 has, a representation, even when you go in to get
19 immunity, a representation from the attorney that
20 the client will take the Fifth in regard to that
21 matter suffices as a showing.
22     MS. KOVAL: Well, it's my position that
23 there is an adverse inference drawn in civil cases
24 where a Fifth Amendment is invoked. I need to ask

### Page 9

1  the question to have the inference drawn. There
2  can't just be hypothetical questions out there that
3  I don't get to ask. I actually need to ask these
4  questions so this we can have the adverse inference
5  drawn against these questions.
6      MS. ROBINSON: And his assertion that
7  he's going to take the Fifth as to each and every
8  question that deals with the Stephan Cowans matter
9  is insufficient for your purposes?
10     MS. KOVAL: It is, because the questions
11 aren't on the record.
12     MR. ANDERSON: I suggest at this point
13 that we suspend, and if you want to go get an order
14 compelling us to come back and have him read that
15 same script for each and every question thereafter,
16 we'll come back. But I just think it's a pointless
17 exercise at this point.
18     MS. KOVAL: My position is -- this is
19 going to take about maybe two hours at the most. We
20 can just do it and get through it, instead of
21 involving the Court, because we think we have a
22 right to ask these questions. We think the Court is
23 going to agree with us, particularly with seven
24 hours of deposition of him to ask him whatever is

Dennis E. LeBlanc
Volume 1 - December 4, 2006

### Page 10

1  nonharassment.
2       This isn't harassment. This is us
3  establishing a record that's appropriate for summary
4  judgment. We can keep him for two hours and get
5  through it, or we can involve the Court
6  unnecessarily.
7       MR. ANDERSON: I think we're going to
8  involve the Court, because we're not going to have
9  him sit here for two hours when he's going to give
10 the same answer to every single question.
11      Is that correct, Mr. LeBlanc?
12      THE WITNESS: Yes.
13      MS. KOVAL: We'll have to move to compel
14 him. I understand he's going to take the Fifth
15 Amendment to ask every question, but the questions
16 are floating out there nebulously, that are
17 undefined. I need to ask the questions and go
18 through them.
19      MR. ANDERSON: We'll come back if we
20 have to do that.
21      MS. KOVAL: We want to reserve all of
22 our rights to a full day of deposition with him,
23 reserve all rights to challenge his immunity in the
24 future if we deem appropriate.

### Page 11

1       MS. ROBINSON: Challenge his what?
2       MS. KOVAL: I'm sorry, challenge his
3  invocation of his Fifth Amendment rights if we deem
4  that to be appropriate. But I think our positions
5  are clear on the record, and we just will agree to
6  disagree on this point, and we'll move to compel
7  with Judge Stearns.
8       (10:27 a.m.)

### Page 12

1       CERTIFICATE OF COURT REPORTER
2       I, Alan H. Brock, Registered Diplomate
3  Reporter and Certified Realtime Reporter, do certify
4  that the deposition of Dennis E. LeBlanc, in the
5  matter of Stephen Cowans v. City of Boston, et al.,
6  on December 4, 2006, was stenographically recorded
7  by me; that the witness provided satisfactory
8  evidence of identification, as prescribed by
9  Executive Order 455 (03-13) issued by the Governor
10 of the Commonwealth of Massachusetts, before being
11 sworn by me, a Notary Public in and for the
12 Commonwealth of Massachusetts; that the transcript
13 produced by me is a true and accurate record of the
14 proceedings to the best of my ability; that I am
15 neither counsel for, related to, nor employed by any
16 of the parties to the above action; and further that
17 I am not a relative or employee of any attorney or
18 counsel employed by the parties thereto, nor
19 financially or otherwise interested in the outcome
20 of the action.
21
22 December 4, 2006 _____
23      Alan H. Brock, RDR, CRR
24