UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


CIVIL ACTION NO. 05-CV-11574-RGS


STEPHAN COWANS

v.

CITY OF BOSTON; BOSTON POLICE DEPARTMENT;
DONALD L. DEVINE, Deputy Superintendent of the Bureau of
Investigative Services of the Boston Police Department, in his
individual capacity; ROBERT FOILB, Supervisor of the Boston Police Department
Identification Unit, in his individual capacity; GREGORY D. GALLAGHER, in his
individual capacity; DENNIS LEBLANC, in his individual capacity; JOHN H.
MCCARTHY, in his individual capacity; PAUL T. MCDONOUGH, in his individual
capacity; ROSEMARY MCLAUGHLIN, in her individual capacity;
HERBERT L. SPELLMAN, in his individual capacity, and DOES 1-10


MEMORANDUM AND ORDER ON PLAINTIFF'S
MOTION TO COMPEL DEPOSITION AND FOR COSTS


January 4, 2007

STEARNS, D.J.

Dennis LeBlanc is a defendant in this action seeking damages resulting from a

wrongful conviction.  The essential allegations of the Complaint are as follows.  In 1998,

plaintiff Stephan Cowans was convicted of the shooting of a Boston police officer.  He

subsequently received a lengthy prison sentence.  A significant item of evidence offered

against Cowans at trial was a fingerprint left at the scene of the shooting.  The print was

identified by LeBlanc, a latent fingerprint identification examiner for the Boston Police

Department, as belonging to Cowans.  In 2004, Cowans was exonerated and released

from prison.  Among the structural errors framing Cowans' conviction was LeBlanc's

fingerprint identification, which was later determined by an independent auditor to have been "clearly erroneous, known to be erroneous, and [that the error] was intentionally concealed [by LeBlanc and others] throughout [Cowans'] trial and conviction." Plaintiff's Brief, at 3. A grand jury convened in 2004 by the Massachusetts Attorney General investigated LeBlanc's role in Cowans' prosecution, but declined to return an indictment.[1]

On July 27, 2005, Cowans sued the City of Boston and the police supervisors and line officers who had been responsible for or involved in his prosecution.[2] On December 4, 2006, LeBlanc appeared for a duly noticed deposition. At the onset, LeBlanc stated through counsel his intention to invoke a blanket Fifth Amendment privilege. He refused to answer any questions (beyond confirming his identity) regarding his involvement in Cowans' case. When Cowans' attorney insisted that he assert the privilege on a question-by-question basis, LeBlanc refused and left the room. Cowans now seeks an order of the court compelling LeBlanc to appear at a second deposition. Cowans argues that "[w]ithout an adequate record, including specific questions and responses, [he] is unfairly deprived of the opportunity to have adverse inferences drawn as to each specific question of importance." Plaintiff's Brief, at 7.

The Fifth Amendment privilege against self-incrimination "applies alike to civil and criminal proceedings, wherever the answer might tend to subject to criminal responsibility him who gives it." McCarthy v. Arndstein, 266 U.S. 34, 40 (1924). The privilege "not only

---

[1]LeBlanc has since resigned from the Boston Police Department.

[2]The City eventually settled the suit on its own behalf and on behalf of most of the officer defendants, but not on behalf of LeBlanc or co-defendant Rosemary McLaughlin.

extends to answers that would in themselves support a conviction under a . . . criminal statute but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant for a . . . crime." Hoffman v. United States, 341 U.S. 479, 486 (1951). However, unlike in a criminal proceeding, an adverse inference may be drawn in a civil action from the refusal of a party to testify on grounds of possible self-incrimination. Mitchell v. United States, 526 U.S. 314, 328 (1999); Baxter v. Palmigiano, 425 U.S. 308, 318 (1976); Serafino v. Hasbro, Inc., 82 F.3d 515, 518 (1st Cir. 1996).

The invocation of the privilege does not, however, have talismanic effect. A witness may refuse to testify only if he or she has reason to believe that truthful answers could result in his or her criminal prosecution. Kastigar v. United States, 406 U.S. 441, 444-445 (1972). The witness's belief must be supported by reason or cause, and not by fanciful imaginings. Marchetti v. United States, 390 U.S. 39, 53-54 (1968). See In the Matter of the Enforcement of a Subpoena, 435 Mass. 1, 4-5 (2001) (respondent had no plausible justification for his asserted belief that he could be prosecuted for violating a noncriminal statute). Cf. United States v. Castro, 129 F.3d 226, 229 (1st Cir. 1997) ("While chimerical fears will not suffice, the prospective witness need only limn some reasonable possibility that, by testifying, he may open himself to prosecution.").

A party seeking the relevant and probative testimony of a witness may challenge an improper assertion of the privilege and seek to compel the witness to answer. In deciding whether to order a witness to answer questions notwithstanding a claim of privilege, the judge must make a determination whether the witness might conceivably be prosecuted on the basis of his or her testimony. In re Morganroth, 718 F.2d 161, 167 (6th

3

Cir. 1983). To exercise this discretion meaningfully, and to insure the protection of the rights of both the witness and the party seeking the witness's testimony, the court must ordinarily (as Cowans correctly notes) consider the validity of an invocation of the privilege on a question-by-question basis.[3]

A party in a civil case, however, has a second recourse: he or she may petition the court for an instruction to the jurors that they may draw an adverse inference against the opposing party because of his or her refusal to testify. It is apparent from the pleadings that Cowans is pursuing this alternate (and arguably more powerful) remedy: he is not seeking to compel LeBlanc to testify, but rather seeks to establish a firm ground upon which an adverse inference instruction request can be based. As stated in his brief:

> Mr. Cowans is entitled to establish a record that will enable the Court to draw adverse inferences with respect to specific questions, appropriately offsetting the disadvantage to Mr. Cowans' ability to gather evidence and present his case created by LeBlanc's assertion of the privilege. . . . Without an adequate record including specific questions and responses, Mr. Cowans is unfairly deprived of the opportunity to have adverse inferences drawn as to each specific question of importance. . . . As the record stands, Mr. Cowans would be forced to ask the Court to draw an adverse inference as to a floating, hypothetical question that could have been, but was not, asked of the witness.

Plaintiff's Brief, at 6-7.

As the record stands, Cowans has achieved his objective. The court is prepared to give an adverse inference instruction based on LeBlanc's refusal to give deposition testimony. The court is also persuaded that the instruction may include factual references

---

[3]Challenges to assertions of privilege most typically arise in the defense or prosecution of criminal cases or in grand jury or administrative enforcement settings. See, e.g., United States v. Castro, supra; In re Grand Jury Matters, 751 F.2d 13 (1st Cir. 1984).

to the specific subject areas that were proper matters of inquiry at LeBlanc's deposition. The court, on the other hand, is also persuaded that LeBlanc has shown a reasonable fear that his answers to questions regarding his role in Cowans' prosecution might be used against him in a criminal prosecution by state or federal authorities.[4]  The court further agrees, particularly in light of LeBlanc's concession that an adverse inference instruction is appropriate, that "[i]t would amount to harassment and only serve to unreasonably annoy and embarrass the defendant . . . should the defendant be subjected to two hours (or more) of questions to which the defendant would be validly asserting his rights against self-incrimination."  Defendant's Brief, at 7.[5]  LeBlanc finally accepts the fact that by asserting a blanket claim of privilege now he will not be permitted to gain strategic advantage later by waiving the privilege and testifying at trial.  See Gutierrez-Rodriguez v. Cartagena, 882 F.2d 553, 577 (1st Cir. 1989).

ORDER

For the foregoing reasons, the motion to compel a further deposition and to impose costs is DENIED.  Plaintiff will file within ten (10) days with the court the specific adverse

---

[4]LeBlanc notes among other concerns a public statement by the Attorney General that the failure of the 2004 grand jury to return an indictment "is not the end of the story." Cowans does not, at least for present purposes, challenge the propriety of LeBlanc's assertion of a claim of privilege.

[5]To not overstate the matter, the court agrees to the extent that this would be the effect of an order compelling a second deposition.  The court does not imply that plaintiff's intent in seeking the order is to harass or embarrass LeBlanc.

inference instruction that he intends to seek at trial.  The defendant will have ten (10) days

thereafter to file an objection, if any, prior to the court's ruling.[6]

SO ORDERED.

/s/ Richard G. Stearns

_____

UNITED STATES DISTRICT JUDGE

---

[6]Plaintiff's argument in his reply brief that a claim of privilege by LeBlanc with respect to certain questions would permit an adverse inference to be drawn against other defendants in the case is incorrect at least on the present record.  The argument is based on a somewhat unusual case,  LiButti v. United States, 107 F.3d 110 (2d Cir. 1997). LiButti dealt with an assertion of privilege by a non-party witness and its possibly adverse implications for a party to a civil tax proceeding.  Without directly ruling on the issue, the Second Circuit indicated that an adverse inference might be drawn even outside of the employer-employee context where the relationship between a party and a non-party witness is so close by degree or control that it amounts to the equivalent of a conspiracy, joint venture, or a de facto agency relationship.  See Lentz v. Metro. Prop. & Cas. Ins. Co., 437 Mass. 23, 27-28, 31 (2002).  No such showing has been made in this case with respect to the relationship of LeBlanc with any other defendant, including Rosemary McLaughlin.