IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STEPHAN COWANS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No: 05-11574 (RGS) |
| ) | |
| CITY OF BOSTON, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT McLAUGHLIN'S
MOTION TO DISMISS**

Plaintiff Stephan Cowans ("Mr. Cowans") hereby opposes Defendant Rosemary McLaughlin's ("McLaughlin") Motion to Dismiss. The sole basis for the Motion to Dismiss is McLaughlin's claim that Mr. Cowans has "failed to make himself available for deposition." Motion to Dismiss at 1. McLaughlin's Motion to Dismiss must be denied because Mr. Cowans has not violated any Court Order. Rather, Mr. Cowans has moved to extend discovery based on ongoing medical treatment and rehabilitation. Notwithstanding the fact that Mr. Cowans has violated <u>no</u> court order, McLaughlin has moved for <u>sanctions</u> without acknowledging nor meeting the legal standard for imposition of sanctions pursuant to Federal Rule of Civil Procedure 37. Moreover, McLaughlin wholly misstates the factual circumstances surrounding Mr. Cowans' unavailability for deposition.

McLaughlin fails to cite a single case from any jurisdiction to support her argument that this Court should dismiss this case. This is not surprising, because under the federal rules and the case law applying them, there is no basis for dismissal here. To the contrary, First Circuit law is clear that dismissal pursuant to Rule 37 is only

appropriate where a plaintiff has violated a court order <u>and</u> (i) the plaintiff's misconduct has been extreme <u>and</u> (ii) no lesser sanctions would be appropriate. None of these requirements exist here. Mr. Cowans has not violated any discovery order in this matter and has provided notice to Mclaughlin's counsel in advance of the requested deposition dates that he would not be able to appear.

Not only does McLaughlin fail to even attempt to meet the applicable legal standard, what she does rely on – a transparently self-serving version of the facts – is simply incorrect. Moreover, McLaughlin could have discovered that her assumptions regarding Mr. Cowans' unavailability were unfounded – and thus provided no basis for the filing of a motion to dismiss – had she conducted even a basic investigation into the available public information concerning Mr. Cowans' legal status. Alternatively, counsel for Mr. Cowans could easily have informed counsel for McLaughlin of the correct factual circumstances had counsel conferred with Mr. Cowans' counsel prior to filing this motion, as she is required to do pursuant to Local Rule 7.1(A)(2).

## I.   **Factual Background**

In this action, Mr. Cowans sued officers McLaughlin, Dennis LeBlanc ("LeBlanc"), the City of Boston and several other Boston police officers for his wrongful conviction based on a fraudulent fingerprint identification. In 1998, Mr. Cowans was wrongfully convicted of shooting Boston Police Department ("BPD") Sergeant Gregory Gallagher. The primary evidence against Mr. Cowans was a fingerprint allegedly left behind at the scene of the crime by the perpetrator. This fingerprint was identified by LeBlanc and verified by McLaughlin as belonging to Mr. Cowans. In 2004, when Mr. Cowans was exonerated based on his actual innocence, which was determined by DNA testing, the BPD reviewed the fingerprint evidence. Based on this review, the BPD

conclusively determined that the fingerprint found at the scene did not match that of Mr. Cowans.  Independent fingerprint experts hired by the City of Boston audited the Latent Print Unit of the BPD and the fingerprint identification that resulted in Mr. Cowans conviction.  As a result of this audit, these experts determined that LeBlanc's identification and McLaughlin's verification were clearly erroneous, known to be erroneous, and this error was intentionally concealed throughout Mr. Cowans trial and conviction.  Mr. Cowans spent nearly seven years in prison as a result of this fraudulent misidentification.

The City and Mr. Cowans engaged in settlement discussions and mediation in the summer of 2006, during which time fact and expert discovery were put on hold.  In July 2006, Mr. Cowans settled with the City of Boston.  In November and December of 2006, the remaining parties engaged in motion practice regarding discovery matters, which further impeded the progress of discovery.  *See* Docket No. 71:  Motion to Compel Documents, Information, or Affidavit Containing Financial Information of Defendant Rosemary McLaughlin (filed November 27, 2006); Docket No. 73:  Motion to Compel Deposition of Dennis LeBlanc and For Costs  (filed December 11, 2006).  These delays in the discovery process resulted in the filing of two assented-to motions to extend the discovery deadlines, both of which were granted by this Court.  *See* Docket Nos. 69, 70.

Since his release from his six-and a half year wrongful incarceration, Mr. Cowans has been struggling with post-traumatic stress, which led to several recent arrests.  Counsel for Mr. Cowans kept defendants apprised of these matters, which conflicted with the proposed dates for Mr. Cowans' deposition.  *See e.g.,* Exs. 5, 9 to Defendant's Motion to Dismiss.

In order to resolve some of the charges pending against him, and in light of his history of trauma, both the Roxbury and Dorchester District Courts ordered Mr. Cowans to attend a seven-month rehabilitation and psychological treatment facility in Arizona. Mr. Cowans appeared in Roxbury District Court on January 24, 2007 and in Dorchester District Court on February 1, 2007. On January 30, 2007, Mr. Cowans filed a motion to extend deadlines by three months. Docket No. 84. Defendants LeBlanc and McLaughlin opposed the motion. Docket No. 85. This Court granted the motion "based on the representations of plaintiff's counsel that the plaintiff will be produced for his deposition at the earliest possible date." *See* Electronic Order entered February 5, 2007.

Unfortunately, Mr. Cowans' transfer was caught up in bureaucratic red tape for an extended period of time. During that time, Mr. Cowans was not permitted to leave the Commonwealth, and remained in Massachusetts without any effective counseling or rehabilitation. During this time, Mr. Cowans was without a permanent address or residence. As soon as Arizona accepted supervision of Mr. Cowans' probation, thus permitting him to meet the terms of his probation, Mr. Cowans entered the Circle Tree Ranch program – on May 17, 2007. However, because Mr. Cowans has only just begun the rehabilitation process, any attempt to depose him at this time would likely be fruitless and potentially detrimental to his rehabilitation program. Counsel for Mr. Cowans has reaffirmed that once Mr. Cowans' recovery is sufficiently under way, Mr. Cowans will be made available for deposition at the earliest date possible. On May 31, 2007, Mr. Cowans filed for an extension of time due to the facts set forth above. Defendants have not opposed Mr. Cowans' motion for an extension of time at the time of the filing of this opposition.

Despite Mr. Cowans' representations that he would be made available for deposition at the earliest date possible – and without conferring with counsel for Mr. Cowans – McLaughlin filed this motion to dismiss on May 29, 2007. The Motion has no basis in fact or law and should be denied.

## II.     Argument

### A.     McLaughlin's Motion Has No Basis in Law.

Federal Rule of Civil Procedure 37 allows a district court in its discretion to impose sanctions for failure to comply with discovery orders. Inherent in that discretion, however, is the necessity that a party has actually violated a court order. Moreover, the First Circuit has held that dismissal is a uniquely "harsh sanction," which should be employed: (1) "only when a plaintiff's misconduct has been extreme" and (2) "only after the district court has determined that none of the lesser sanctions available to it would truly be appropriate." *Malot v. Dorado Beach Cottages Associates S. En C. Por A.*, 478 F.3d 40, 44 (1st Cir. 2007) (quoting *Estate of Solis-Rivera*, 993 F.2d 1, 2 (1st Cir. 1993) (emphasis added). *See also Benitez-Garcia v. Gonzalez-Vega*, 468 F.3d 1, 5 (1st Cir. 2006) ("a case should not be dismissed with prejudice except 'when a plaintiff's misconduct is particularly egregious or extreme'") (citation omitted).

Here, Mr. Cowans has not failed to comply with any discovery orders. Given the psychological and substance abuse problems Mr. Cowans has faced as a result of his wrongful imprisonment – which resulted from the misconduct of the defendants in this case – Mr. Cowans has sought medical and psychological treatment that has interfered with his ability to respond effectively at a deposition. Mr. Cowans has filed appropriate motions notifying the Court of the reasons for the delay. At no time has Mr. Cowans suggested that McLaughlin will not be entitled to appropriate discovery. As a result, Mr.

Cowans has violated no order for which sanctions could appropriately be levied. Furthermore, this Motion to Dismiss is McLaughlin's first attempt at recourse against Mr. Cowans for his alleged failure to appear. McLaughlin did not even attempt to file a motion to compel Mr. Cowans' appearance before filing this Motion.

Moreover, Mr. Cowans' conduct cannot be described as extreme or egregious, and McLaughlin has not even attempted to show that no lesser sanctions would be appropriate. The First Circuit has provided a non-exhaustive list of substantive factors that ought to be considered before imposing any sanctions under rule 37(b), including (1) the severity of the violation, (2) the legitimacy of the party's excuse, (3) repetition of violations, (4) the deliberateness *vel non* of the misconduct, (5) mitigating excuses, (6) prejudice to the other side and to the operations of the court, and (7) the adequacy of lesser sanctions. *Malot*, 478 F.3d at 44. *Malot* involved facts far more egregious than those here. There, the First Circuit reversed a district court's dismissal for abuse of discretion, despite the Plaintiffs' repeated failure to comply with the discovery deadlines, either set by the Court or self-imposed by Plaintiffs, Plaintiffs' excusing their conduct on "the very tight schedule in their personal lives," and Plaintiffs' persistent "fail[ure] to heed to Courts orders *even after receiving a forewarning as to sanctions.*" *Id.* at 42-43 (emphasis added).

Here, as discussed above, Mr. Cowans has not violated any court order. The discovery deadlines in this case have been extended only three times, two of which were the result of assented to motions. The total extension of time that has been granted by this Court amounts to eight months. There is no reasonable argument that any sanction is appropriate, and the suggestion that dismissal is justified is specious. Indeed, the First Circuit has explicitly stated that dismissal with prejudice is reserved "for delays measured

in years," while dismissals for conduct resulting in delays of merely a few months have consistently been reversed by the First Circuit. *Id.* at 44 (citing cases).

Perhaps most importantly, the delay in Mr. Cowans' ability to make himself available for deposition has been due to genuine and legitimate reasons, including incarceration stemming from his severe emotional and psychological damage suffered as a result of his wrongful incarceration, and the protracted bureaucratic process of searching for and gaining admittance to an appropriate rehabilitation facility. *See id.* at 44-45. Further, both plaintiffs and defendants have contributed to the delays, as extensions of time were granted due to settlement negotiations and motions practice pertaining to discovery matters. *Id.* at 45 (reversing dismissal where "both sides contributed to the contentiousness and lethargic pace of the discovery process").

The only prejudice to defendants is their loss of time, which would be grossly disproportionate were dismissal imposed as a sanction. *Id.* McLaughlin has not pointed to any reason why the relatively short delay would affect defendants' ability to litigate the case. *See Benitez-Garcia*, 468 F.3d at 6.

Finally, Mr. Cowans has received *no* warning as to *any* sanctions, let alone dismissal. *Malot*, 478 F.3d at 45 (reversing dismissal where "[t]he court did not attempt to exhaust its milder options, nor did it first warn Plaintiffs that they might face dismissal with prejudice"). *See also Robson v. Hallenbeck,* 81 F.3d 1, 3 (1st Cir. 1996) ("[C]ounsel's disregard of a prior warning from the court exacerbates the offense, and the lack of warning sometimes mitigates it."); *HMG Property Investors, Inc. v. Parque Indus. Rio Canas, Inc.*, 847 F.2d 908, 918 (1st Cir. 1988) ("[T]he law is well established in this circuit that where a noncompliant litigant has manifested a disregard for orders of the court *and been suitably forewarned of the consequences of continued intransigence*, a

trial judge need not first exhaust milder sanctions before resorting to dismissal.") (emphasis added).

### B.  McLaughlin's Motion Has No Basis in Fact.

Not only does McLaughlin completely fail to analyze or even set forth the factors that should be considered by the court on a motion for sanctions, the facts set forth in McLaughlin's Motion are simply incorrect.

Had McLaughlin or her representatives (1) conducted even a basic inquiry into Mr. Cowans' legal circumstances, or (2) conferred with Mr. Cowans' counsel as required under this Court's local rules prior to filing this Motion, McLaughlin would have discovered that there was no factual basis to bring this Motion. Instead, McLaughlin constructs a conspiracy theory, alleging that "Plaintiff's counsel had orchestrated a plan for the Plaintiff to leave the state . . . [and] waited until his departure was imminent and moved for an extension of the discovery deadlines." As explained below, Plaintiff's counsel in no way "orchestrated" a plan to avoid Mr. Cowans' deposition. To the contrary, Plaintiff's counsel worked many hours toward helping Mr. Cowans resolve his recent arrests and assisting the Office of the Commissioner of Probation for Massachusetts in procuring a transfer of Mr. Cowans' probation to Arizona so that he could attend the rehabilitation program that he was ordered to by the Roxbury and Dorchester District Courts, and has kept defendants apprised of these issues.

In November 2006, counsel for Mr. Cowans at Goodwin Procter LLP and at Birnbaum & Godkin, P.C. began making arrangements for Mr. Cowans to enter a drug rehabilitation facility. *See* Decl. of Sheryl Koval, ¶ 2. Based on extensive research, counsel for Mr. Cowans determined that the facility best suited to Mr. Cowans'

particularized needs was the Circle Tree Ranch rehabilitation center in Tucson, Arizona ("Circle Tree Ranch"). *Id*.

In December 2006, Mr. Cowans was accepted at Circle Tree Ranch, however, Mr. Cowans was at the time incarcerated on drug possession and related charges stemming from his emotional and psychological issues that resulted from his wrongful conviction. *Id*. at ¶ 3. (*See* Exhibit 1 to Decl. of Sheryl Koval).

In late January and early February 2007, counsel for Mr. Cowans resolved all outstanding criminal matters pending against him in the Roxbury and Dorchester criminal courts. *Id*. at ¶ 4. As part of the resolution of those matters, Mr. Cowans was ordered by both the Dorchester and Roxbury District Courts to attend the Circle Tree Ranch rehabilitation program in Tucson, Arizona. *Id*. at ¶ 4. Because Circle Tree Ranch is located outside of the state of Massachusetts, however, a transfer of his probation under the governing Interstate Compact was required. *Id*. at ¶ 5. A transfer is predicated upon the transferee state agreeing to supervise of the individual on probation. *Id*. at ¶ 5.

Mr. Cowans' probation officer in Roxbury District Court, Donald Mumford, initiated the paperwork necessary to obtain a transfer. *Id*. at ¶ 6. This request was made to the Office of the Commissioner of Probation in Massachusetts. *Id*. at ¶ 6. In mid-February, John Craven at the Office of the Commissioner of Probation began working to secure Mr. Cowans' transfer to Arizona. *Id*. at ¶ 7.

The transfer application was sent to Arizona in mid-to-late February, at which time the Probation Commissioner in Arizona informed Massachusetts that it would make a decision on whether to accept Mr. Cowans into its probation program by April 29, 2007. *Id*. at ¶ 8. During that time there was ongoing communication between Massachusetts Probation, Arizona Probation, counsel for Mr. Cowans and individuals at

Circle Tree Ranch. *Id.* Because he was not permitted to leave the Commonwealth and because he was struggling with psychological and substance abuse problems without the appropriate therapy, during this time Mr. Cowans did not have a permanent residence, and was often difficult to contact. *Id.*

The Arizona Probation Commissioner's Office did not issue a decision until on or about the week of May 7, 2007, when it finally agreed to accept Mr. Cowans. *Id.* at ¶ 9.

On May 17, 2007, all outstanding probation issues and warrants against Mr. Cowans for probation violations were cancelled by the Roxbury and Dorchester District Courts. *Id.* at ¶ 10. (*See* Exhibit 2 to Decl. of Sheryl Koval).

Mr. Cowans arrived at Circle Tree Ranch on May 17, 2007 and is currently attending the rehabilitation program at that facility. *Id.* at ¶ 11.

McLaughlin's accusation that "the only probation official working on the Cowans case was seeking to have him arrested," Motion to Dismiss at 5, is completely unfounded and wrong.[1] All outstanding probation issues and warrants against Mr. Cowans had been dropped prior to the filing of McLaughlin's motion. Furthermore, counsel for McLaughlin seems to have confused Mr. Cowans' probation officers, Donald Mumford and Michael Micharelli, who oversee individual probation cases that come from within their respective districts, with the Office of the Commissioner of Probation, the administrative office with oversight over state court probation matters in Massachusetts.

Moreover, despite Local Rule 7.1(A)(2)'s requirement that that counsel confer with opposing counsel prior to filing a motion, McLaughlin's counsel made no attempt to

---

[1] Immediately upon receiving Mclaughlin's Motion to Dismiss, counsel for Mr. Cowans wrote a letter to John Craven in the Office of the Commissioner of Probation requesting that he provide documentation concerning his work to obtain a transfer of Stephan Cowans' probation to Arizona through the Interstate Compact. Decl. of Sheryl Koval, ¶ 12. (*See* Exhibit 3 to Decl. of Sheryl Koval). The Office of the Commissioner of Probation has indicated that it will expedite this request. *Id.* Once received, the documentation will be produced in a supplemental declaration. *Id.*

confer with counsel for Mr. Cowans prior to filing this motion. Had McLaughlin's counsel done so, counsel for Mr. Cowans would have been able to explain in detail the circumstances surrounding Mr. Cowans' legal circumstances.

### Conclusion

As set forth above, McLaughlin's Motion is factually incorrect and legally unfounded, and for these reasons Plaintiff's Motion to Dismiss should be denied.

> RESPECTFULLY SUBMITTED,
>
> STEPHAN COWANS
>
> By his attorneys,
>
> /s/ Sheryl A. Koval
> Joseph Savage (BBO# 443030)
> R. David Hosp (BBO# 634091)
> Sheryl A. Koval (BBO# 657795)
> Goodwin | Procter LLP
> Exchange Place
> 53 State Street
> Boston, MA 02109
> (617) 570-1000
>
> Robert N. Feldman (BBO# 630734)
> Melissa M. Longo (BBO# 647649)
> Birnbaum & Godkin, LLP
> 280 Summer Street
> Boston, MA 02210
> (617) 307-6100

Dated: June 12, 2007

### CERTIFICATE OF SERVICE

I, Sheryl A. Koval, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on June 12, 2007.

/s/ Sheryl A. Koval
Sheryl A. Koval

LIBA/1795639.3